The Honorable Ricardo S. Martinez

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASHINGTON STATE ASSOCIATION OF HEAD START AND EARLY CHILDHOOD ASSISTANCE AND EDUCATION PROGRAM, ILLINOIS HEAD START ASSOCIATION, PENNSYLVANIA HEAD START ASSOCIATION, WISCONSIN HEAD START ASSOCIATION, FAMILY FORWARD OREGON, and PARENT VOICES OAKLAND,<br><br>*Plaintiffs*,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ANDREW GRADISON, in his official capacity as Acting Assistant Secretary of the Administration for Children and Families; ADMINISTRATION FOR CHILDREN AND FAMILIES; OFFICE OF HEAD START; and TALA HOOBAN, in her official capacity as Acting Director of the Office of Head Start,<br><br>*Defendants*. | Case No. 2:25-cv-00781-RSM<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER / TO POSTPONE EFFECTIVE DATE OF AGENCY ACTION** |

This matter came before the Court on Plaintiffs' Motion for Temporary Restraining Order/to Postpone Effective Date of Agency Action ("Motion"). The Court has considered the Motion, supporting declarations, and any responses thereto, the other pleadings and papers filed in this action, and arguments at the hearing on this Motion, and now rules that Plaintiffs' Motion is GRANTED. The Court makes the following Findings of Fact and Conclusions of Law.

## I. FINDINGS OF FACT

1. On July 14, 2025, HHS issued a directive, effective immediately, that reinterprets the phrase "federal public benefit" in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 8 U.S.C. § 1611, to exclude all "unqualified" immigrants from Head Start programs. U.S. Dep't of Health & Hum. Servs., Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA); Interpretation of "Federal Public Benefit," 90 Fed. Reg. 31232 (July 14, 2025) ("Immigrant Exclusion Directive" or "Directive").

2. Head Start is an education program created by Congress through the Head Start Act, 42 U.S.C. § 9831, and is designed to serve communities that otherwise would not have access to early childhood education programming and to prepare young children to succeed in school.

3. The Immigrant Exclusion Directive seeks to exclude large numbers of children from Head Start programs based on immigration status. Defendants anticipate that approximately 115,000 Head Start children could be impacted, and that approximately 500,000 children would no longer be eligible to attend Head Start. *See* Exec. Secretariat, Immediate Off. of the Sec'y, Dep't of Health & Hum. Servs., *Final Regulatory Impact Analysis*, Docket No. AHRQ-2025-0002, at 7-8 (2025).

4. Because of the Directive's ambiguity and Defendants' public statements, including that "Head Start is reserved for American citizens from now on,"[1] many more immigrant children and families will be chilled from enrolling or participating in Head Start programs.

---

[1] U.S. Dep't of Health & Hum. Servs., *HHS Bans Illegal Aliens from Accessing its Taxpayer-Funded Programs* (July 10, 2025), https://www.hhs.gov/press-room/prwora-hhs-bans-illegal-aliens-accessing-taxpayer-funded-programs.html

5. As a result of the Directive, Plaintiffs Washington State Association of Head Start and Early Childhood Assistance and Education Program, Illinois Head Start Association, Pennsylvania Head Start Association, and Wisconsin Head Start Association (collectively, "HSA Plaintiffs") and their members will experience declines in enrollment and attendant loss of funding, layoffs of teachers and staff, and program closures; damaged relationships with community members and partners and resulting impairment of recruitment and retention activities; increased costs of adopting, implementing, and training on new eligibility policies and procedures; profound uncertainty as to the Directive's enforcement standards and threat of legal consequences; and frustration of mission, impairment of core activities, and diversion of resources toward responding to the Directive's impacts.

6. As a result of the Directive, Plaintiffs Family Forward Oregon and Parent Voices Oakland (collectively, "Parent Plaintiffs") have members who will lose access to Head Start's early childhood education and care because of the Directive's restrictions on eligibility based on immigration status, as well as the chilling effect on participation and enrollment in Head Start. Loss of access to Head Start will result in major disruptions in the early childhood education and care for members' children, and interfere with members' ability to work, attend school, and otherwise support their families. For Parent Plaintiffs, the Directive will frustrate their mission to advance access to early education and care, require them to divert limited staff time and resources away from existing activities toward responding to the Directive's impacts, and directly interfere with their ability to carry out their core activities.

7. Defendant HHS issued the Immigrant Exclusion Directive without notice and comment.

8. Defendant HHS issued the Immigrant Exclusion Directive without meaningfully considering important aspects of the issue, including the significant reliance interests of Head Start agencies, Parent Plaintiffs, and Head Start children and families. Defendants also did not meaningfully consider the significant costs and burdens the Directive imposes on Head Start

agencies, and failed entirely to quantify or acknowledge the educational, economic, social, and health costs for impacted children and families.

9. Defendants did not change eligibility criteria for the program by regulation and did not publish the regulation in the Federal Register at least 30 days before it was to take effect.

10. Before issuing the Directive, Defendants did not consult a range of stakeholders, including experts in early childhood education and American Indian and Alaska Native programs; assess the educational impacts based on considerations enumerated in 42 U.S.C. §§ 9836a(a)(1)–(2); or ensure that revisions in the standards will not result in the elimination of or reduction in quality, scope, or types of Head Start services.

11. The Directive imposes restrictions on participation in Head Start programs without providing guidance or enforceable standards on how to comply with requirements, including whether eligibility is based on the immigration status of the child, parents and guardians, or household members.

## II. CONCLUSIONS OF LAW

12. The Court concludes that Plaintiffs have carried their burden of showing (1) likelihood of success on the merits of their claims under the Administrative Procedure Act ("APA") (2) that the Directive will cause irreparable harm to Plaintiffs and their members absent postponement of the effective date of the Directive and/or a temporary restraining order enjoining the implementation and enforcement of the Directive; and (3) that the balance of the equities and the public interest weigh in Plaintiffs' favor. Accordingly, a postponement of agency action pursuant to 5 U.S.C. § 705 of the APA and/or a temporary restraining order is warranted.

13. This Court has subject matter jurisdiction to hear Plaintiffs' claims, including because Plaintiffs have demonstrated Article III standing.

14. The Immigrant Exclusion Directive is a final agency action because it is a formal directive that reflects the consummation of a decision-making process from which obligations and consequences flow.

15. The Directive violates the Administrative Procedures Act, 5 U.S.C. §§ 706(2)(A), (B), because it conflicts with the text of the Head Start Act, 42 U.S.C. §§ 9840(a)(1)(B)(i)–(ii); Pub. L. No. 118-47, Div. D, Title II, §§ 238-39, 138 Stat. 460, 681 (2024), and PRWORA, 8 U.S.C. § 1611(c)(1)(B).

16. Head Start is a non-postsecondary education program that is not a "federal public benefit" under PRWORA, 8 U.S.C. § 1611(c)(1)(B).

17. The Directive's interpretation of 8 U.S.C. § 1611(c)(1)(B) conflicts with the Head Start Act's eligibility criteria, which list categories of children eligible for Head Start without excluding "unqualified" immigrants. *See* 42 U.S.C. §§ 9840(a)(1)(B)(i)–(ii); §§ 238–39, 138 Stat. at 681.

18. The Immigrant Exclusion Directive is arbitrary and capricious because Defendants relied on improper factors, failed to consider important aspects of the issue, offered an explanation counter to the evidence, and based their decision on implausible reasoning. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1984).

19. The Immigrant Exclusion Directive abandons decades of existing policy without considering important aspects of the issue, including the significant reliance interests of Head Start agencies, Parent Plaintiffs, and Head Start children and families. Defendants did not meaningfully consider the costs and burdens the Directive imposes on Head Start agencies, and failed entirely to quantify or acknowledge the economic, social, and health costs for impacted children and families.

20. The Directive fails to provide clear guidance and enforceable standards on how to comply with its requirements, leaving HSA Plaintiffs' members at "unfettered discretion" of HHS, with "no method by which the [programs] can gauge their performance" or compliance. *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1250 (9th Cir. 2001).

21. The Directive also violates the APA because Defendants failed to observe the necessary procedures required by law. 5 U.S.C. § 706(2)(D).

[PROPOSED] ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER 2:25-CV-00781-RSM    - 5 -    A.C.L.U. OF WASHINGTON PO BOX 2728 SEATTLE, WA 98111-2728 (206) 624-2184

22. Defendants failed to prescribe eligibility or the participation in Head Start programs "by regulation," 42 U.S.C. § 9840(a)(1)(A), and failed to publish the regulation in the Federal Register at least 30 days before it was to take effect, 42 U.S.C. § 9839(d). Defendants additionally failed to consult necessary stakeholders before modifying Head Start performance standards. *See* 42 U.S.C. §§ 9836a(a)(1)–(2).

23. The Directive is a legislative rule, which must be published in the Federal Register before taking effect to allow the public to provide comments under the APA. Defendants failed to comply with the notice and comment requirements of 5 U.S.C. § 553(c).

24. As discussed above, Plaintiffs and their members face irreparable injuries, including disruption to early childhood education and care, loss of professional and educational opportunities, decreased enrollment and attendant financial and programmatic consequences for Head Start programs, profound uncertainty about the Directive's enforcement standards and threat of legal consequences, frustration of mission, diversion of resources, and impairment of core activities. The balance of equities and public interest favor a temporary restraining order because Defendants will suffer no harm if the Court grants the requested relief, Plaintiffs face irreparable harm, and the public interest is served.

### III.  ORDER

It is now, therefore, ORDERED as follows:

1. Plaintiffs' Motion for Temporary Restraining Order/To Postpone Effective Date of Agency Action is GRANTED;

2. The effective date of implementation and/or enforcement of U.S. Dep't of Health & Hum. Servs., Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA); Interpretation of "Federal Public Benefit," 90 Fed. Reg. 31232 (July 14, 2025) is hereby immediately postponed and stayed until such time as the Court can resolve the Second Amended Complaint on the merits.

3. Defendants and their officers, agents, servants, employees, contractors,

representatives, and attorneys, and any other persons who are in active concert or participation with them, are enjoined from implementing and/or enforcing the Directive, U.S. Dep't of Health & Hum. Servs., Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA); Interpretation of "Federal Public Benefit," 90 Fed. Reg. 31232 (July 14, 2025).

4. Defendants shall provide written notice of this Order within 24 hours of entry to all Defendants, their officers, agents, servants, employees, contractors, representatives, and attorneys, and any other persons who are in active concert or participation with them, and to all Head Start agencies.

5. Within two (2) business days, Defendants shall serve and file a declaration(s) verifying that they have complied with this Order and detailing what steps, if any, they have taken to do so.

6. This Order shall remain in effect until the close of this case, unless otherwise ordered by the Court.

7. Plaintiffs are not required to post a bond under Federal Rule 65(c).

8. IT IS FURTHER ORDERED that Plaintiffs' moving papers for a preliminary injunction shall be filed no later than _____, 2025; opposition papers to Plaintiffs' request for a preliminary injunction shall be filed by TRO Defendants no later than _____, 2025; Plaintiffs may file a reply in support of their motion for preliminary injunction no later than _____, 2025; and a hearing on Plaintiffs' request for a preliminary injunction will be held on _____, 2025 at _____.

IT IS SO ORDERED.

Dated this ____ day of July 2025

_____
Judge Ricardo S. Martinez

Presented by:

**Attorneys for Plaintiffs**

Ming-Qi Chu (*pro hac vice*)
Jennesa Calvo-Friedman (*pro hac vice*)
Linda S. Morris* (*pro hac vice*)
*admitted in State of Maryland
Sania Chandrani
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
mchu@aclu.org

Michelle Fraling (*pro hac vice*)
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
915 15th Street NW, 6th Floor
Washington DC, 20005
Tel: (917) 710-3245
michelle.fraling@aclu.org

Laboni A. Hoq (*pro hac vice*)
HOQ LAW APC
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
    (Cooperating Attorney)
P.O. Box 753
South Pasadena, CA 91030
Tel: (213) 977-9004
laboni@hoqlaw.com

S. Starling Marshall (*pro hac vice*)
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212)223-4000
Smarshall@crowell.com

Skye Mathieson (*pro hac vice*)
Lucy Hendrix (*pro hac vice*

By:    /s/   La Rond Baker
La Rond Baker (WSBA No. 43610)
Brent Low (WSBA No. 61795)
David Montes (WSBA No. 45205)
AMERICAN CIVIL LIBERTIES
  UNION OF WASHINGTON
P.O. BOX 2728
Seattle, Washington 98111-2728
Tel: (206) 624-2184
baker@aclu-wa.org

Kevin M. Fee (*pro hac vice*)
Allison Siebeneck (*pro hac vice*)
ROGER BALDWIN FOUNDATION OF
  ACLU, INC.
150 N. Michigan Ave, Suite 600
Chicago, IL 60601
Tel: (312) 201-9740
kfee@aclu-il.org

Lindsay Nako (*pro hac vice*)
Lori Rifkin (*pro hac vice*)
Fawn Rajbhandari-Korr (*pro hac vice*)
Meredith Dixon (*pro hac vice*)
Megan Flynn (*pro hac vice*)
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Tel: (510) 845-3473
lrifkin@impactfund.org

Edward T. Waters (*pro hac vice*)
FELDESMAN LEIFER LLP
1129 20th Street NW, 4th Floor
Washington, DC 20036
Tel: (202) 466-8960
ewaters@feldesman.com

| | |
|---|---|
| forthcoming)<br>Emily P. Golchini (*pro hac vice*)<br>CROWELL & MORING LLP<br>1001 Pennsylvania Ave NW<br>Washington, DC 20004<br>Tel: (202)624-2500<br>Smatheison@crowell.com | |

[PROPOSED] ORDER GRANTING MOTION
FOR TEMPORARY RESTRAINING ORDER
2:25-CV-00781-RSM

- 9 -

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184