The Honorable Ricardo S. Martinez

1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
8                            AT SEATTLE

9

WASHINGTON STATE ASSOCIATION OF            Case No. 2:25-cv-00781-RSM
10  HEAD START AND EARLY CHILDHOOD
    ASSISTANCE AND EDUCATION                   DEFENDANTS' OPPOSITION TO
11  PROGRAM; ILLINOIS HEAD START              PLAINTIFFS' MOTION FOR A
    ASSOCIATION; PENNSYLVANIA HEAD            TEMPORARY RESTRAINING ORDER
12  START ASSOCIATION; WISCONSIN HEAD
    START ASSOCIATION; FAMILY
13  FORWARD OREGON; and PARENT
    VOICES OAKLAND,
14
                        Plaintiffs,
15
              v.
16
    ROBERT F. KENNEDY, JR., in his official
17  capacity as Secretary of Health and Human
    Services; U.S. DEPARTMENT OF HEALTH
18  AND HUMAN SERVICES; ANDREW
    GRADISON, in his official capacity as Acting
19  Assistant Secretary of the Administration for
    Children and Families; ADMINISTRATION
20  FOR CHILDREN AND FAMILIES; OFFICE
    OF HEAD START; and TALA HOOBAN, in
21  her official capacity as Acting Director of the
    Office of Head Start,
22
                        Defendants.
23

24

**INTRODUCTION**

The U.S. Department of Health and Human Services (HHS) has taken a change in position to restore compliance with federal law and ensure that taxpayer-funded program benefits intended for the American people are not diverted to subsidize unqualified aliens. *See* Declaration of Kristin B. Johnson (Johnson Decl.), Ex. A (the press release) & Ex. B (the Notice). HHS has formally rescinded a 1998 interpretation of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), which improperly extended certain federal public benefits to unqualified aliens. With this update, HHS is complying with the law—ensuring that federal benefits are administered with transparency, legal integrity, and fairness to the American people.

The new Notice of interpretation applies PRWORA's plain-language definition of "Federal public benefit," reverses outdated exclusions, affirms that programs serving individuals, households, or families are subject to eligibility restrictions, and clarifies that no HHS programs have been formally exempted under PRWORA's limited exceptions. Head Start is among the programs included in the updated and expanded list of classified programs providing "Federal public benefits" under PRWORA to ensure enrollment in Head Start properly serves American citizens.

This change in position aligns with long-standing Congressional intent and recent Executive Orders by President Trump, including Executive Order 14218 of February 19, 2025, "Ending Taxpayer Subsidization of Open Borders," prioritizing legal compliance and the protection of public benefits for eligible Americans. While the updated interpretation does not alter funding levels, it ensures that public resources are no longer used to incentivize illegal immigration.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[2:25-cv-00781-RSM] - 2

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

HHS has acted lawfully in issuing this revised policy and this Court should deny Plaintiffs' request for an emergency temporary restraining order (TRO) for several reasons. First, Plaintiffs' request for a TRO should be denied because they are seeking intermediate relief beyond the claims in the operative complaint. Second, even if the these new claims were properly before the Court, Plaintiffs have failed to show that they are likely to prevail on the merits. HHS's Notice complies with the Head Start Act and APA procedures for interpretive rules governing grant programs. HHS accurately described Head Start as "another similar benefit" under PRWORA. And HHS accurately determined that Head Start provides services to individuals' children and their families and thus fits into the definition of "Federal Public Benefit." The Notice also does not conflict with the Head Start Act since PRWORA's mandate applies notwithstanding all other laws.

Furthermore, the Notice is not arbitrary or capricious because HHS has met all the APA requirements when an agency makes a change in position such as this - it has displayed awareness that it is changing position, it has shown the new interpretation is permissible under the statute, HHS believes the new interpretation is better than the old interpretation, and HHS has provided good reasons, including a detailed and reasoned explanation, for the new interpretation. Plaintiffs' motion for a TRO should also be denied because they have failed to show a likelihood of irreparable harm and the equities and public interest weigh against emergency relief.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 65(b) governs the issuance of a TRO. "The legal standard for a TRO is substantially identical to the standard for a preliminary injunction." *Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d 720, 732 (N.D. Cal. 2020). To obtain injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[2:25-cv-00781-RSM] - 3

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Generally, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "The first factor under *Winter* is the most important—likely success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). "The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418 (2009).

## ARGUMENT

**I.      Plaintiffs' request for a TRO should be denied because they are seeking intermediate relief beyond the claims in the operative complaint.**

The operative complaint in this case, Plaintiffs' Amended Complaint (Dkt. 31), contains no claim alleging that HHS acted unlawfully in issuing this change in position. Accordingly, in a separate motion that is now pending before the Court, Plaintiffs have requested the permission of the Court to amend and supplement the operative complaint to add such a claim. However, because permission has not been granted, Plaintiffs' Amended Complaint remains the operative complaint in this case. Thus, in moving the Court to grant it preliminary relief with respect to a claim that only appears in a proposed amended complaint that has not received the Court's approval, Plaintiffs' application seeks intermediate relief that is unrelated to the claims alleged in the operative complaint in this lawsuit. Accordingly, Plaintiffs' motion should be denied.

In order to obtain a preliminary relief, it is necessary for Plaintiffs to show a sufficient likelihood of success on the merits of the claims alleged in the operative complaint. *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134-35 (11th Cir. 2005) (district court abused its discretion by issuing preliminary injunction based on a showing that the plaintiffs were likely to

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[2:25-cv-00781-RSM] - 4

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

succeed in establishing a violation of an ancillary court order rather than being based on a showing

that they were likely to succeed on the merits of any of their claims).  Conversely, a court may not

grant a preliminary relief on claims that are not raised in the operative complaint because the

necessary showing of a likelihood of success cannot be based on claims that are not at issue in the

lawsuit. *Id.; see also McGuire v. Carey*, 2020 WL 4353174, at *4 (D. Nev. July 29, 2020); *Lystn,*

*LLC v. Food & Drug Admin.*, 2019 WL 6038072, at *1 (D. Colo. Nov. 14, 2019) ("When the

movant seeks intermediate relief beyond the claims in the complaint, the court is powerless to enter

a preliminary injunction.").

The applicable rule was succinctly stated in *Pac. Radiation Oncology, LLC v. Queen's*

*Med. Ctr.*, 810 F.3d 631 (9th Cir. 2015):

> A court's equitable power lies only over the merits of the case or controversy before it.
> When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the
> court does not have the authority to issue an injunction.

*Id.* at 633.

Plaintiffs have moved this Court for an order allowing them to file a supplemental

complaint in order to assert a claim alleging that HHS violated the APA in issuing this change in

position. Dkt. 78. This is necessary because Plaintiffs' proposed new claim is distinct from the

existing claims in this case and involves facts and circumstances that arose after the operative

complaint was filed. Plaintiffs' operative complaint does not include a claim challenging HHS's

announcement of the new notice of interpretation because the notice was issued after their

operative complaint was filed.

These uncontroverted facts require the denial of Plaintiffs' motion for a TRO because the

extent to which Plaintiffs' motion meets the standard for the issuance of such relief must be

measured against the allegations set forth in the operative complaint - not those found only in the

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[2:25-cv-00781-RSM] - 5

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    proposed new complaint that Plaintiffs are seeking leave to file as its replacement.  Thus, in

2    *Integrative Health Inst. PLLC v. Schaffner*, 2021 WL 4953061 (W.D. Wash. June 21, 2021), *report*

3    *and recommendation adopted*, 2021 WL 4948164 (W.D. Wash. Oct. 25, 2021), where the plaintiff

4    filed its preliminary injunction motion before the Court granted its motion to amend its complaint

5    to add the claim for which plaintiff sought preliminary relief, the Court denied the motion without

6    prejudice, noting that "Plaintiffs' second amended complaint was not the operative complaint

7    when Plaintiffs' Motion was filed." *Id.* at *3.

8        Similarly, in *Churyumov v. Amazon Corp. LLC*, 2019 WL 2409605 (W.D. Wash. June 7,

9    2019), where the plaintiff sought a preliminary injunction as to events occurring after the filing of

10   the operative complaint, and plaintiff's motions to amend the complaint had not been granted, his

11   motion for a preliminary injunction was denied because "he seeks relief different from that sought

12   in his Complaint." *Id.* at *2; *and see Sifuentes v. Nautilus, Inc.*, 2022 WL 1316476, at *3 (W.D.

13   Wash. May 3, 2022) (preliminary injunction motion denied with respect to events occurring after

14   the filing of the operative complaint because the Court only has jurisdiction over operative claims

15   and the plaintiff's requested relief "would not remedy the wrongs alleged [in the operative

16   complaint].")

17       Because Plaintiffs' motion for injunctive relief is not reasonably related to, and seeks relief

18   that is wholly separate from, the claims alleged in its operative complaint, the motion should be

19   denied.

20   **II.    Plaintiffs' motion for a TRO should be denied because they have failed to show
            that they are likely to prevail on the merits.**

21

22       Alternatively, Plaintiffs' motion should be denied because they are unlikely to prevail on

23   the merits. The claim that Plaintiffs seek to add to this case through its motion to file a

24   supplemental complaint constitutes an attack on the Secretary's ability to implement a change in

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[2:25-cv-00781-RSM] - 6

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

position and a new Notice of Interpretation.

**A. The Notice complies with the Head Start Act and APA procedures for interpretive rules governing grant programs.**

Even assuming the Notice qualifies as a "final agency action," it did not violate the requirements of the APA. As the Notice states, "post-promulgation notice and immediate effectiveness are consistent with the Administration Procedure Act, pursuant to 553(b)(A) and (d)(2)." The cited provision at 5 U.S.C. § 553(b)(A) excepts interpretive rules from the notice and comment requirements of the APA and the cited provision at 5 U.S.C § 553(d)(2) excepts interpretive rules from the requirement that rules be published 30 days before their effective date.

This Notice is an interpretive rule. An interpretive rule is a rule issued by an agency to advise the public of the agency's construction of the statutes it administers. *Perez v. Mortgage Bankers*, 575 U.S. 92, 96 (2015). The Notice advises the public of the agency's construction of the definition of "Federal public benefit" under PRWORA, 8 U.S.C. § 1611. This approach is consistent with HHS's actions in 1998. Similar to this notice, the 1998 interpretation was issued as a notice with a comment period that was effective on the date of publication. The fact that the previous interpretation was longstanding does not alter the procedural requirements - no additional requirements are necessary to amend an interpretive rule. *See Perez*, 575 U.S. at 103 (rejecting the argument that the rule having been a definitive prior interpretation requires additional procedures.)

Even if the Court were to find the PRWORA notice to be a legislative rule, the notice and comment and effective date requirements would still not apply. Pursuant to the APA at 5 U.S.C. § 553(a)(1), the procedural requirements of the APA do not apply to matters relating to grants. The notice explains how 8 U.S.C. § 1611 applies to HHS grant programs. *See* Johnson Decl., Ex. B.

Nor did the process for changing the interpretation of Federal Public Benefit in PRWORA conflict with the procedures in the Head Start Act. The Head Start Act requires that the Secretary

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[2:25-cv-00781-RSM] - 7

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

by regulation "prescribe the eligibility for the participation of persons in Head Start programs" and then lists certain requirements in the regulation. 42 U.S.C. § 9840. HHS did just as required and issued regulations on eligibility at 45 CFR § 1302.12. But nothing in the language requiring HHS to issue regulations prohibits Congress from prescribing other eligibility requirements for the Head Start program through other laws.    As for the consultation requirements in 42 U.S.C. § 9836A(a)(1)-(2), these only apply to modification of the Head Start regulations. It would not apply as here to the interpretation of a separate applicable statute.

**B. Head Start is accurately described as providing "another similar benefit" under PRWORA.**

The notice announced that it will interpret the phrase "any other similar benefit" in line with plain meaning: any other benefit that is "alike in substance or essentials" to or that "[has] characteristics in common" with "retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, [or] unemployment benefit[s]." *Merriam-Webster.com Dictionary,* Merriam-Webster, *https://www.merriam-webster.com/dictionary/similar.* (Accessed 13 Apr. 2025), 8 U.S.C. § 1611(c)(1)(B); s*ee also United States* v. *Raynor,* 302 U.S. 540, 547 (1938) ("Similarity is not identity, but resemblance between different things."). The notice went on to state that this approach is fully consistent with the canon of *ejusdem generis:* "Where general words follow specific words in a statutory enumeration, the general words are usually construed to embrace" "objects *similar in nature* to those objects enumerated by the preceding specific words." *Yates* v. *United States,* 574 U.S. 528, 545 (2015) (alterations omitted, emphasis added); *See* Johnson Decl., Ex. B, pg. 13-14.

`        Based on this interpretation of "any other similar benefit," HHS believes that Head Start is a "similar benefit" to a welfare benefit. While the term "welfare" is not defined in PRWORA, it can be given a fair reading in its plain meaning and agency usage. The broad sweep of "welfare"

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[2:25-cv-00781-RSM] - 8

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

described in the preamble in section 400 of PRWORA, 8 U.S.C. § 1601, supports a broad reading of "welfare" and any "similar benefit", as do other laws enacted around the same time. The Administration for Children and Families also defines "welfare" specifically in the context of services that help children: "Child welfare is a continuum of services designed to ensure that children are safe and that families have the necessary support to care for their children successfully." The Head Start Program is, at minimum, a program that provides benefits similar to those provided under the aforementioned welfare programs, which also provide means-tested assistance to families and individuals. *See* Johnson Decl., Ex. B at 14-15.

The Plaintiffs improperly focus their arguments around whether Head Start should be considered to provide welfare or another similar benefit on the idea that welfare only means cash payments. This ignores the fact that the Temporary Assistance for Needy Families (TANF), the replacement program for Aid to Families with Dependent Children (AFDC) which was commonly referred to as 'welfare' is much more than just cash payments. Jurisdictions have considerable flexibility with TANF funds to implement programs to best serve their communities. *See* https://acf.gov/ofa/programs/temporary-assistance-needy-families-tanf.

Plaintiffs also ignore that Head Start is not just an educational program. It is an anti-poverty program that provides for school readiness, it also provides low-income children and their families with "health, educational, nutritional, and social and other services, that are determined based on family needs assessment, to be necessary." 42 U.S.C. §§ 9831, 9833. Further, it may serve as childcare for parents of young children. These benefits provided by the Head Start program are "similar" to "welfare" benefits. *See* Johnson Decl., Ex. B at 15.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[2:25-cv-00781-RSM] - 9

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

**C.  Head Start provides services to individuals' children and their families and thus provides benefits that fit into the definition of "Federal Public Benefit."**

Plaintiffs argue that Head Start is not a "Federal Public Benefit" because it delivers programs to communities rather than individuals, households, or family eligibility units. As an initial matter, programs for communities are not an exception within the text of PRWORA. Nor would it make much sense if it were, because many grant programs provide funding to state, local governments and non-profit organizations that then provide services in local communities. But the question is not whether the grants serve a community, but whether there are specific individuals, households, or family eligibility units meeting certain criteria who receive the actual benefits. For Head Start, the health, educational, nutritional, social, and other services are provided to children and their families who meet certain eligibility criteria. 42 U.S.C. §§ 9831, 9840. These children are the individuals, households, and family eligibility units that receive the Head Start benefits.

**D.  The Notice does not conflict with the Head Start Act since PRWORA applies notwithstanding all other laws.**

Plaintiffs argue that the Notice creates a direct conflict between PRWORA and the Head Start Act, specifically Congress' directive that certain children shall be eligible for Head Start. However, the PRWORA eligibility prohibitions exist "notwithstanding any other provision of law." 8 U.S.C § 1611. "As a general proposition[,]…statutory 'notwithstanding' clauses broadly sweep aside potentially conflicting laws." *Washington v. Devos*, 2020 WL 4275041, at *5 (E.D. Wash. July 24, 2020) (quoting *United States v. Novak*, 476 F.3d 1041, 1046 (9th Cir. 2007)). Although a notwithstanding any other law clause can be overridden by other statutory clauses, Congressional intent to override the clause must be clear. *Id*. The Head Start Act provisions prescribing eligibility for certain children based on income or homelessness does not manifest an intention to repeal the PRWORA requirements on eligibility based on immigration status. Nor

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[2:25-cv-00781-RSM] - 10

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

does the cannon that a more specific statute controls over a more general one apply here. *See Morton v. Mancari*, 417 U.S. 535 (1974). It is not clear which statute is more specific. The Head Start governs overall eligibility for the Head Start Act, but PRWORA governs specific eligibility for immigrants in Federal programs. The best way to reconcile PRWORA and the Head Start Act is to assume that the eligibility criteria in the Head Start Act apply in addition to the criteria in PRWORA. Moreover, where, as here, an act is both later in time and more specific, the "specific policy embodied in a later federal statute should control our construction of the [earlier] statute." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) (quoting *United States v. Estate of Romani*, 523 U.S. 517, 530 (1998)).

E.  **The Notice is not arbitrary or capricious.**

The Administrative Procedure Act, which sets forth the full extent of judicial authority to review executive agency action for procedural correctness, permits the setting aside of agency action that is "arbitrary" or "capricious." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (internal citations omitted); 5 U.S.C. § 706(2)(A). Under this "narrow" standard of review, an agency must "examine the relevant data and articulate a satisfactory explanation for its action." *Id.* (citing *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983)). However, "a court is not to substitute its judgment for that of the agency," and should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* at 513-14 (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 286 (1974)).

In *Fox*, the Supreme Court considered the application of the APA to agency decisions to change position and held that an agency must provide a "reasoned explanation" for its action. *Id.* at 514-15. The Ninth Circuit has determined that "[a] policy change complies with the APA if the

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[2:25-cv-00781-RSM] - 11

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

agency (1) displays 'awareness that it is changing position;' (2) shows that 'the new policy is permissible under the statute;' (3) 'believes' the new policy is better, and (4) provides 'good reasons' for the new policy, which, if the 'new policy rests upon factual findings that contradict those which underlay its prior policy,' must include 'a reasoned explanation ... for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Organized Village of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015) (quoting *Fox*, 556 U.S. at 515-16).

The agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *Fox*, 556 U.S. at 515 (emphasis in original).

Here, HHS has met all the *Fox/Kake* requirements to comply with the APA. First, it has displayed awareness that it is changing position. Second, it has shown the new interpretation is permissible under the statute. Third, HHS believes the new interpretation is better than the old policy. And fourth, HHS has provided good reasons, including a detailed and reasoned explanation, for the new interpretation.

*Displayed awareness that it is changing its position.* The notice is very clear that HHS has changed its position. It states, "[to] be clear, the Department hereby explicitly 'display[s] awareness that it is changing position.'" Johnson Decl., Ex. B, pg. 20 (citing *Fox*, 556 U.S. at 515). But HHS explains that it believes the change is necessary because it believes that the previous interpretation was inconsistent with the plain text of PRWORA. *Id.*

*Shown that the new policy is permissible under the statute.* As the notice explains in detail,

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[2:25-cv-00781-RSM] - 12

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

the new interpretation adheres closely to the plain language of the statute.  The agency determined that Head Start is similar to a welfare benefit because it provides means tested assistance to families and individuals including "health, educational, nutritional, and social and other services" to meet the needs of families. *See* Johnson Decl., Ex. B, pgs. 5-16. Further, the notice looked carefully at the text of PRWORA regarding individual, household, or eligibility unit and determined that benefits are Federal public benefits "as long as they are provided on either a per-individual, per household, or per 'family eligibility unit' basis." *Id.*

*HHS believes the new policy is better than the old policy.* The conscious change of course adequately indicates that HHS believes the new policy is better than the old. *Fox*, 556 U.S. at 515. And HHS's reasons supporting its belief that the new interpretation is better are adequately detailed in the Notice. *Id.* at pgs. 2-24.

*HHS has provided good reasons, including a detailed and reasoned explanation, for the new policy.*   In its notice, HHS provided a detailed explanation of why it believes that this interpretation is the best and therefore the only permissible interpretation of PRWORA.  *Id.*

### F.  **Plaintiffs' motion for a TRO should be denied because they have failed to show a likelihood of irreparable harm.**

Plaintiffs are unlikely to suffer irreparable harm. As to harm, Plaintiffs do not identify concrete injury with particularity. PWRORA, as a threshold matter, does not require non-profits to verify immigrations status. 8 U.S.C. § 1642(d). Plaintiffs gloss over this exception in their motion, yet many of Plaintiffs' member organizations would likely fall into this category. Plaintiffs' failure to address this issue and establish harm is fatal to their motion for a TRO.

Plaintiffs again amplify alleged harm through imprecise language when they use the word "immigrant" throughout their brief. Plaintiffs, for example, state that the Notice "communicates

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[2:25-cv-00781-RSM] - 13

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

that immigrants are not permitted in Head Start programs" Dkt. 79, pg. 14. This is simply incorrect as a matter of fact and as a matter of law. The Notice, of course, does not use the word "immigrant." The Notice uses the term "qualified alien" because that is the term set forth in section 401 of PRWORA. The Notice uses the language employed by Congress and makes no reference—be it broad, chilling, or otherwise— to "immigrants." To the extent Plaintiffs dispute the legal term, their issue is not with Defendants here.

Not only is the "harm" abstract, is it also not imminent. It is telling that Plaintiffs allege harm to all "immigrants," and then allege this harm is imminent and irreparable on the basis of two studies, one of which is almost half a decade old and the other which is over two decades' old. Dkt. 79, pg. 14, n.7. It is also misleading and exaggerates any alleged harm. U.S. Citizens and qualified aliens may also be immigrants, so it is blatantly false to say that Head Start will no longer accept immigrants.

Plaintiffs also claim that a loss of Head Start services will mean sudden and major disruption to children's early education. This is also inaccurate. Once a child is enrolled, the Head Start Act provides for continued eligibly for the duration of the program. 42 U.S.C. § 9840(a)(1)(B)(v). Defendants have made no indication that currently enrolled children will be removed from the program, so there would not be any "sudden and major disruption."

Plaintiffs claim that they will suffer funding losses based on reduced enrollment. Dkt. 79, pg. 16. However, Plaintiffs fail to inform the court that there is an extensive process in the Head Start Act to reduce funding based on under-enrollment. *See* 42 U.S.C. § 9836A(h) and Johnson Decl., Ex. E (FEI IM detailing the process to reduce a grant including appeal rights). The process to reduce and recapture funding based on under-enrollment would take, at a minimum, 16 months plus additional time if a program decides to appeal. Plaintiffs' arguments also fail to note that there

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[2:25-cv-00781-RSM] - 14

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

are millions of eligible US Citizens and Qualified Aliens who also do not get Head Start services because of availability of spots. Most programs should be able to fill any empty spots with US Citizen children or qualified aliens who could otherwise not be served.

G. **The equities and public interest weigh against relief.**

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. These factors tilt decisively against granting a TRO here. Granting a TRO would disrupt HHS's efforts to comply with the Executive Order, which is a duly promulgated directive of the Executive Branch, and which the American people have entrusted with the power to direct the activities of Executive Departments. The public has an interest in seeing that power carried out effectively. It also has an interest in permitting the Secretary to decisively implement policy priorities for HHS. Entering any sort of preliminary relief would displace and frustrate the Secretary's decision about how to best address issues. *See Heckler*, 470 U.S. at 831-32.

Plaintiffs argue that HHS will not be harmed by an injunction against an unlawful practice and that the public interest favors carrying out statutory functions. Dkt. 79, pgs. 31-32. But, as explained above, HHS intends to continue to perform its statutory duties. And the relief Plaintiffs seek goes beyond merely ensuring statutory functions are carried out. Agencies are permitted to weigh many variables involved in the proper ordering of agency priorities without judicial overview of their discretionary decisions. Yet Plaintiffs' requested relief would hamstring HHS and force it to operate as if a new administration was never elected. Not only would this deprive HHS of its flexibility on how to execute its broad statutory mandates; it would also compel work that is otherwise discretionary and may not be consistent with Administration priorities.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[2:25-cv-00781-RSM] - 15

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    In sum, Plaintiffs' proposed relief would inflict severe constitutional harms on the

2    Executive branch and run contrary to the public interest. It would frustrate the public interest in

3    having the Executive Branch effectuate the President's policy priorities through lawful direction.

4    The equities and the public interest disfavor such sweeping and intrusive relief.

5    **IV.    Any TRO should be limited, accompanied by security, and be stayed.**

6    If the Court concludes that Plaintiffs are entitled to an injunction, the relief granted "should

7    be no more burdensome to the defendant than necessary to provide complete relief to the

8    plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted). The

9    expansive relief Plaintiffs seek flouts these well-established principles and should be significantly

10    narrowed, if awarded at all.

11    Any preliminary injunction should do no more than necessary to alleviate the irreparable

12    harm to any specific Plaintiff that the Court finds to have established such harm. Extending relief

13    that is broader either in substance or scope would violate the foundational Article III principle that

14    judicial remedies "must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*,

15    585 U.S. 48, 73 (2018). The Court should order only relief sufficient to address any funding or

16    services to which it determines Plaintiffs have established an entitlement.

17    Any preliminary injunction should also require Plaintiffs to post security. The Court may

18    issue a preliminary injunction "only if the movant gives security" for "costs and damages

19    sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ.

20    P. 65(c). The Court should require Plaintiffs to post an appropriate bond commensurate with the

21    scope of any injunction issued. The bond amount should consider that the relief Plaintiffs request

22    will hinder HHS's ability to process funding requests and reorganize HHS in a manner consistent

23    with the President's policies. If Plaintiffs fail to comply with Rule 65(c), the Court should deny or

24

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER
[2:25-cv-00781-RSM] - 16

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    dissolve the requested injunctive relief.

2          Finally, to the extent the Court issues any injunctive relief, Defendants request that such

3    relief be stayed pending any appeal, or at a minimum that such relief be administratively stayed

4    for a period of seven days to allow Defendants to seek an emergency, expedited stay from the

5    Court of Appeals if an appeal is authorized.

6                                            **CONCLUSION**

7          For the foregoing reasons, Defendants respectfully requests that the Court deny Plaintiffs'

8    motion for a TRO.

9
          DATED this 23rd day of July, 2025.
10

11                                    Respectfully submitted,

12                                    TEAL LUTHY MILLER
                                      Acting United States Attorney
13

14                                    *s/ Kristin B. Johnson*
                                      KRISTIN B. JOHNSON, WSBA #28189
15                                    Assistant United States Attorney
                                      United States Attorney's Office
16                                    700 Stewart Street, Suite 5220
                                      Seattle, Washington 98101-1271
17                                    Telephone No. (206) 553-7970
                                      Fax No. (206) 553-4073
18                                    Email: kristin.b.johnson@usdoj.gov

19                                    Attorneys for Defendants

20                                    I certify that this memorandum contains 4,888 words, in
                                      compliance with the Local Civil Rules.
21

22

23

24