The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASHINGTON STATE ASSOCIATION OF HEAD START AND EARLY CHILDHOOD ASSISTANCE AND EDUCATION PROGRAM; ILLINOIS HEAD START ASSOCIATION; PENNSYLVANIA HEAD START ASSOCIATION; WISCONSIN HEAD START ASSOCIATION; FAMILY FORWARD OREGON; and PARENT VOICES OAKLAND,<br><br>                    Plaintiffs,<br><br>        v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ANDREW GRADISON, in his official capacity as Acting Assistant Secretary of the Administration for Children and Families; ADMINISTRATION FOR CHILDREN AND FAMILIES; OFFICE OF HEAD START; and TALA HOOBAN, in her official capacity as Acting Director of the Office of Head Start,<br><br>                    Defendants. | Case No. 2:25-cv-00781-RSM<br><br>DEFENDANTS' SUPPLEMENTAL BRIEFING ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

DEFENDANTS' SUPPLEMENTAL BRIEFING ON
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[2:25-cv-00781-RSM] - 1

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

Pursuant to this Court's Order (Dkt. 95), Defendants provide the Court with the following supplemental briefing on Plaintiffs' Motion for Preliminary Injunction (Dkt. 37).

**A. The effect of HHS' July 2025 Grant Policy Statement on this matter, as well as any changes to HHS, ACF, or OHS administrative or national policy requirements.**

Plaintiffs' Motion for Preliminary Injunction seeks to enjoin HHS' implementation of two agency actions implementing the Executive Order on removing diversity, equity and inclusion (DEI) initiatives: (1) the March 14, 2025 letter to Head Start grant recipients; and (2) the April 16, 2025 Grants Policy Statement. Dkt. 37, pg. 12. The Grants Policy Statement has since been revised to remove the DEIA certification and any potential False Claims Act implications Plaintiffs seek to challenge.[1] Thus, the only agency action before the Court is the March 14, 2025 letter providing guidance to Head Start recipients that the OHS will not approve the use of federal funding for any expenditures that promote or take part in DEI initiatives, consistent with the nondiscrimination provisions of the Head Start Act.

Plaintiffs are not likely to succeed on their claims challenging the guidance in this letter. They have not identified a concrete and particularized harm that is actual or imminent, which can be redressed by an injunction. At most, they allege a fear of what may happen if they potentially run afoul of the guidance. While Plaintiffs argue that they do not know what conduct may run afoul of the guidance, they have no due process right to Head Start grants to demand more precision from the government under the Fifth Amendment. *See Ohio Head Start Ass'n, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 873 F. Supp. 2d 335 (D.D.C. 2012), *aff'd*, 510 F. App'x 1 (D.C. Cir. 2013).

Even if Plaintiffs could identify a property or liberty interest protected by the Fifth

---

[1] There have been no further changes to ACF/OHS administrative or national policy requirements.

DEFENDANTS' SUPPLEMENTAL BRIEFING ON
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[2:25-cv-00781-RSM] - 2

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1  Amendment, the guidance in the letter is not unconstitutionally vague. The constitution does not
2  require the precision Plaintiffs demand when the Government is acting as a patron, not as a
3  sovereign in regulating activity. *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 589
4  (1998) (finding that the terms in a funding provision were undeniably opaque, and if they appeared
5  in a criminal statute or regulatory scheme, they could raise substantial vagueness concerns. But
6  "when the Government is acting as patron rather than as sovereign, the consequences of
7  imprecision are not constitutionally severe."); *Meriwether v. Hartop*, 992 F.3d 492, 518 (6th Cir.
8  2021) ("There is substantially more room for imprecision in regulations bearing only civil, or
9  employment, consequences, than would be tolerated in a criminal code." (citation omitted)); *Nat'l
10 Urb. League v. Trump*, 2025 WL 1275613, at *19 (D.D.C. May 2, 2025) (Indeed, "when the
11 Government is acting as patron rather than as sovereign," the effects "of imprecision are not
12 constitutionally severe." (citation omitted)); *Chicago Women in Trades v. Trump*, 2025 WL
13 1114466, at *14 (N.D. Ill. Apr. 14, 2025) (Because the Termination Provision of EO 14,151 simply
14 involves the government engaging in funding, as opposed to regulating, the vagueness concerns
15 fall away as well).

16       Here, the Government is acting as a patron in providing Head Start grants, which Plaintiffs
17 are not entitled to, and which are subject to termination. The government does not violate the
18 Constitution by providing recipients with guidance on how it will implement the Executive Order,
19 simply because the guidance is not as precise as Plaintiffs demand.

20       Furthermore, Plaintiffs have recourse through the administrative procedures provided to
21 grant recipients to challenge any potential enforcement or action. They are free to defend
22 themselves by maintaining that their conduct is lawful. They will also be given an opportunity to
23 correct matters before any termination of a grant were to take place. And they can challenge any
24

DEFENDANTS' SUPPLEMENTAL BRIEFING ON  
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION  
[2:25-cv-00781-RSM] - 3

**UNITED STATES ATTORNEY**  
700 Stewart Street, Suite 5220  
Seattle, Washington 98101-1271  
206-553-7970

potential future grant termination in the normal course via the Departmental Appeals Board. Plaintiffs will also maintain their funding while pursuing these administrative procedures. *See* 42 U.S.C. §§ 9836a(c) and (e), 9841(a)(3); 45 C.F.R. §§ 1304.2, 1304.5; 45 C.F.R. §§ 16.22, 1304.5(c)(2).

Thus, Plaintiffs have no cognizable injury-in-fact that is ripe for review and are not likely to succeed on merits of their claim challenging the agency's issuance of the March 14, 2025 guidance to recipients.

**B. The effect of the Office of the Attorney General's Memorandum on "Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination" on this matter.**

The July 29, 2025 Office of the Attorney General's Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination states that it is meant to identify best practices and provide non-binding suggestions.[2] Most of the examples and discussions in the Guidance are not applicable to childcare and pre-school programs that Head Start grants support. The potentially applicable portion of the Guidance - that recipients of federal funds may not grant preferential treatment or benefits based on a protected class - is already prohibited by the Head Start Act's nondiscrimination provision, which does not allow Head Start funding to be used to discriminate or to exclude participation in the Head Start program. 42 U.S.C. § 9849.

**C. The effect of the District of Rhode Island court's preliminary injunction in Case No. 1:25-cv-00196-MRD-PAS on this matter.**

The D.R.I. court's preliminary injunction enjoins HHS from further implementing RIFs at the Administration for Children and Families' (ACF) Office of Head Start (OHS) and its Regional Offices. HHS is complying with the order and has stayed implementation of RIFs involving

---

[2] HHS has not developed or implemented any independent policies based on the Attorney General's Guidance.

DEFENDANTS' SUPPLEMENTAL BRIEFING ON
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[2:25-cv-00781-RSM] - 4

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

ACF/OHS, or at the OHS Regional Offices. *See State of New York v. Kennedy*, 1:25-cv-00196-MRD-PAS, Dkt. 74 (Preliminary Injunction Compliance Instructions).[3] The Solicitor General has authorized Defendants to appeal and seek a stay of the D.R.I. court's injunction, and Defendants intend on filing a notice of appeal in short order. *Id.* at Dkt. 78, n.1. The government has also filed a motion to dismiss in the D.R.I. case.

Until and unless the D.R.I. court's injunction is lifted or stayed, HHS will not implement RIFs within ACF/OHS, or at the OHS Regional Offices, which covers all the challenges in the pending Motion for Preliminary Injunction with respect to "OHS mass layoffs and closures."

The D.R.I court's basis for issuing the injunction, however, is not particularly instructive here because that court considered the impacts that HHS' RIFs have allegedly had on its ability to carry out functions across numerous sub-agencies, not just within ACF/OHS, and ACF/OHS has been able to continue to carry out its critical functions despite RIFs. Additionally, the D.R.I. court's injunction was issued after the Supreme Court issued a stay involving agency RIFs clearing the way for agencies to implement their RIFs and reorganization plans. This indicates the Supreme Court's assessment that the Government has the better argument about the scope of Executive authority to reorganize Executive agencies.

The D.R.I. court considered RIFs that occurred across nine sub-agencies and programs within HHS including: (1) the Centers for Disease Control and Prevention (CDC); (2) the Food and Drug Administration's Center for Tobacco Products (CTP); (3) the Administration for Children and Families' (ACF) Office of Head Start (OHS) and Regional Offices; and (4) the

---

[3] HHS did provide RIF notices and start implementation of ARRPs at ACF, OHS, and in the Regional Offices on April 1, 2025. These actions were stayed upon entry of a Temporary Restraining Order in *American Federation of Government Employees v. Trump*, 3:25-cv-3698 (N.D. Cal.) (*AFGE 2*) on May 9, 2025. Although the subsequent preliminary injunction in *AFGE 2* was stayed by the Supreme Court on July 8, 2025, the preliminary injunction entered by the D.R.I. was entered July 1, 2025. Thus, HHS has not implemented any RIFs at OHS and the OHS Regional Offices since the original TRO in *AFGE 2* was entered on May 9, 2025.

DEFENDANTS' SUPPLEMENTAL BRIEFING ON
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[2:25-cv-00781-RSM] - 5

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

Assistant Secretary for Planning and Evaluation (ASPE). *See State of New York v. Robert F. Kennedy, Jr.*, 2025 WL 1803260, at *3 (D.R.I. July 1, 2025). Most of the reasons the Court relied on to find that Plaintiffs had standing and satisfied the other requirements for a preliminary injunction were based on activities wholly separate from those conducted by ACF/OHS.

For example, to find standing, the D.R.I. court cited "informational injuries" and identified statutes that require HHS to make information publicly available such as Pregnancy Risk Assessment Monitoring (PRAMS) data from the CDC. *Id.* at *6-7. The court also cited "services-related injuries" and identified an instance where the CDC was unable to process a grant extension and was unable to conduct STD/STI testing. *Id.* at *7. The court also found the plaintiff states' injuries were "sufficiently imminent and substantial" because the RIFs had eliminated the Women's Health and Fertility Branch and the PRAMS data by the CDC. *Id.* The court did not identify any actual or imminent injury-in-fact regarding the impact of RIFs at ACF/OHS.

Similarly, to find a likelihood of success on the merits of the plaintiffs' APA claim, the D.R.I. court cited NIOSH occupational research programs and mine safety research programs that had effectively been discontinued because of the RIFs. *Id.* at *13. Additionally, the court also noted that congressionally mandated functions had either been stopped, or that HHS was unable to fulfill, because of the RIFs; these included NIOSH's Occupational Safety Research, CDC National Center on Birth Defects and Developmental Disabilities, FDA Center for Tobacco Products, Lead Poisoning Programs, Reproductive and Maternal Health Programs, HIV and STD Prevention Programs and Federal Poverty Guidelines. *Id.* at *15-16. Notably, the government argued that no such statutory obligations exist in the case of Head Start, and the D.R.I. court recognized that Head Start site visits are discretionary and failure to perform them is not necessarily contrary to law. *Id.* at *17 n.12.

DEFENDANTS' SUPPLEMENTAL BRIEFING ON
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[2:25-cv-00781-RSM] - 6

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

At bottom, the D.R.I. court based its injunction on impacts to other HHS sub-agencies, not at ACF/OHS. Critical functions at ACF/OHS, including health and safety monitoring, centralized communication between OHS and grantees, grant funding, and application processing have continued, albeit in different forms and sometimes on different timelines than prior to the RIFs. Thus, the D.R.I. court's injunction is not instructive.

Furthermore, the D.R.I. court relied on now-stayed decisions of the First and Ninth Circuits in *AFGE 2* and *McMahon*. *See Trump v. Am. Fed'n of Gov't Emps.*, 606 U.S. __, 2025 WL 1873449 (July 8, 2025) (Mem.) (AFGE 2) (granting stay "[b]ecause the Government is likely to succeed on its argument that the Executive Order and Memorandum are lawful."); *McMahon v. New York*, 606 U.S. __, 2025 WL 1922626 (July 14, 2025) (Mem.) (granting stay in matter raising question of "[w]hether the Supreme Court should stay a district court order requiring the government to reinstate Department of Education employees fired as part of a reduction in force."). The stays in those two cases make clearer than ever the infirmity of sweeping preliminary injunctions against discretionary exercises of core Executive authority.[4]

Such decisions "on the interim legal status of" Executive activities are entitled to great weight: they "will often constitute a form of precedent (de jure or de facto) that provides guidance throughout the United States during the years-long interim period until a final decision on the merits." *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2570 (2025) (Kavanaugh, J., concurring); *see also Trump v. Boyle*, 606 U.S. __, 145 S. Ct. 2653, 2654 (2025) ("Although our interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases.").

---

[4] The Government moved to vacate the D.R.I. court's preliminary injunction, or in the alternative, for a stay pending appeal based on the recent Supreme Court stays. Dkt. 78. The D.R.I. court denied the motion. Dkt. 81.

DEFENDANTS' SUPPLEMENTAL BRIEFING ON
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
[2:25-cv-00781-RSM] - 7

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1        The *McMahon* and *AFGE 2* stays provide particularly weighty guidance here. They support the Government's ability to proceed with reforming and streamlining Executive agencies during the pendency of litigation. Indeed, those stays necessarily reflect the Supreme Court's conclusions both that the Government is likely to succeed on merits arguments similar or identical to those it is pressing here and that the balance of harms and the equities favor the Government. *See Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010).

       This Court should follow the Supreme Court's guidance and decline to issue a preliminary injunction. The cases cited above reflect the Supreme Court's conclusions that the Government's likelihood of success on the merits, "the equities," and the public interest—factors that also guide a district court's preliminary-injunction analysis—support implementation of the RIFs at issue pending resolution of the appellate process in each case. *See McMahon*, 2025 WL 1922626, at *5 (Sotomayor, J., dissenting); *Labrador v. Poe*, 144 S. Ct. 921, 929 n.2 (2024) (Mem.) (Kavanaugh, J., concurring); *Hollingsworth*, 558 U.S. at 190. Because the facts and legal issues are so similar to those presented here, this Court should decline to issue a preliminary injunction.

       DATED this 15th day of August, 2025.

                                      Respectfully submitted,

                                      TEAL LUTHY MILLER
                                      Acting United States Attorney

                                      *s/ Kristin B. Johnson*
                                      KRISTIN B. JOHNSON, WSBA #28189
                                      Assistant United States Attorney
                                      United States Attorney's Office
                                      700 Stewart Street, Suite 5220
                                      Seattle, Washington 98101-1271
                                      Telephone No. (206) 553-7970
                                      Fax No. (206) 553-4073
                                      Email: kristin.b.johnson@usdoj.gov

                                      Attorneys for Defendants

DEFENDANTS' SUPPLEMENTAL BRIEFING ON           **UNITED STATES ATTORNEY**
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION       700 Stewart Street, Suite 5220
[2:25-cv-00781-RSM] - 8                                       Seattle, Washington 98101-1271
                                                                             206-553-7970