The Honorable Ricardo S. Martinez

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

WASHINGTON STATE ASSOCIATION OF
HEAD START AND EARLY CHILDHOOD
ASSISTANCE AND EDUCATION PROGRAM,
ILLINOIS HEAD START ASSOCIATION,
PENNSYLVANIA HEAD START
ASSOCIATION, WISCONSIN HEAD START
ASSOCIATION, FAMILY FORWARD OREGON,
and PARENT VOICES OAKLAND,

*Plaintiffs,*

v.

ROBERT F. KENNEDY, JR., in his official
capacity as Secretary of Health and Human
Services; U.S. DEPARTMENT OF HEALTH
AND HUMAN SERVICES; ANDREW
GRADISON, in his official capacity as Acting
Assistant Secretary of the Administration for
Children and Families; ADMINISTRATION FOR
CHILDREN AND FAMILIES; OFFICE OF
HEAD START; and TALA HOOBAN, in her
official capacity as Acting Director of the Office of
Head Start,

*Defendants.*

Case No. 2:25-cv-00781-RSM

**PLAINTIFFS'
SUPPLEMENTAL BRIEFING
ON PLAINTIFFS' MOTION
FOR PRELIMINARY
INJUNCTION**

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 1
2:25-CV-00781-RSM

ACLU OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 7

ARGUMENT ................................................................................................................... 8

I.   Neither the GPS Modification Nor the DOJ Memo Diminish Plaintiffs' Need for
     Preliminary Relief. ................................................................................................ 8

   A.  The Unexplained Modification of the GPS Does Not Change the Substance, Scope,
       or Consequences of the DEIA Ban. ................................................................... 8

      1.  The July 24 Certification Still Prohibits "DEIA" in All Grantee Activities and
          Subjects Plaintiffs' Members to Risk of Irreparable Harm. ................................ 9

      2.  Even if the July GPS Had Materially Changed the DEIA Certification, Relief is
          Necessary Because Defendants Could Re-implement the Prior Version at any
          Time. ...................................................................................................... 11

      3.  Defendants' DEIA Ban and DEI Letter Remain Unchanged and Apply Beyond
          Federal Antidiscrimination Law. ................................................................. 13

   B.  The DOJ Memo Does Not Cure the Impermissible Vagueness of the DEIA Ban. ..... 15

   C.  The DOJ Memo Also Confirms Defendants' Arbitrary and Unsupported
       Interpretation of Existing Antidiscrimination Laws. ....................................... 16

II.  Plaintiffs' Entitlement to Injunctive Relief is Strongly Supported by the Rhode Island
     District Court's Injunction in *New York v. Kennedy*. ....................................... 18

CONCLUSION ............................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Fed. of Teachers v. Dep't of Educ.*,

    No. 1:25-cv-00628-SAG (D. Md. Aug. 14, 2025), ECF No. 83 ..................................... 10, 14

*Am. Public Health Ass'n v. Nat'l Institutes of Health*,

    No. 1:25-cv-10787, 2025 WL 1822487 (D. Mass. July 2, 2025) ........................................... 9

*Backpage.com, LLC v. McKenna*,

    881 F.Supp.2d 1262 (W.D. Wash. 2012) ............................................................................. 13

*Batalla Vidal v. Nielsen*,

    279 F. Supp. 3d 401 (E.D.N.Y. 2018), *vacated in part and rev'd in part on other*

    *grounds*, *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1 (2020) ......... 19

*California v. Health & Hum. Servs.*,

    390 F. Supp. 3d 1061 (N.D. Cal. 2019), *vacated and remanded on other grounds*, 977

    F.3d 801 (9th Cir. 2020). ............................................................................................. 19, 20

*California v. U.S. Dep't of Health & Hum. Servs.*,

    941 F.3d 410 (9th Cir. 2019), *rev'd on other grounds sub nom. Little Sisters of the*

    *Poor Saints Peter & Paul Home v. Penn*, 591 U.S. 657 (2020). ........................................ 19

*Casa De Maryland, Inc. v. Trump*,

    414 F. Supp. 3d 760 (D. Md. 2019) ..................................................................................... 19

*Chicago Women in Trades v. Trump*,

    778 F. Supp. 3d 959 (N.D. Ill. 2025) ................................................................................... 10

*City of Philadelphia v. Sessions*,

    280 F. Supp. 3d 579 (E.D. Pa. 2017) ................................................................................... 19

*Cook Cnty. v. McAleenan*, 417 F. Supp. 3d 1008 (N.D. Ill. 2019), *aff'd on other grounds*

    *sub. nom. Cook Cnty. v. Wolf*, 962 F.3d 208 (7th Cir. 2020) ................................................ 19

*F.T.C. v. Affordable Media*,

    179 F.3d 1228 (9th Cir. 1999) ............................................................................................. 12

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 3
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

*Fed. Bureau of Investigation v. Fikre*,

   601 U.S. 234 (2024) ................................................................................................ 12

*Forsyth Cnty., Ga. v. Nationalist Movement*,

   505 U.S. 123 (1992) ........................................................................................ 11, 15

*Grayned v. City of Rockford*,

   408 U.S. 104 (1972) ................................................................................................ 14

*Hunt v. City of Los Angeles*,

   638 F.3d 703 (9th Cir. 2011) ................................................................................. 16

*Martin Luther King, Jr. Cnty. v. Turner*,

   No. 2:25-cv-814, 2025 WL 2322763 (W.D. Wash. Aug. 12, 2025) ..................... 7, 10, 14, 18

*Mayor & City Council of Baltimore v. Azar*,

   392 F. Supp. 3d 602 (D. Md. 2019) ....................................................................... 20

*McMahon v. New York*,

   145 S.Ct. 2643 (2025) ............................................................................................ 21

*Merrill v. Milligan*,

   142 S.Ct. 879 (2022) .............................................................................................. 21

*Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*,

   779 F.Supp.3d 149 (D.N.H. 2025) ........................................................................ 16

*New York v. Kennedy*,

   25-cv-196-MRD-PAS, 2025 WL 1803260 (D.R.I. July 1, 2025) ................................. 7, 8, 18

*New York v. Kennedy*, No. 25-cv-196-MRD-PAS, Dkt. 81 (D.R.I. July 18, 2025) .................... 21

*Ortega Gonzalez v. Noem*,

   No. 6:25-cv-00622-MC, 2025 WL 1355272 (D. Or. May 9, 2025) ....................... 12

*Pennsylvania v. DeJoy*,

   490 F. Supp. 3d 833 (E.D. Pa. 2020) .................................................................... 19

*Perfect 10, Inc. v. Amazon.com, Inc.*,

   508 F.3d 1146 (9th Cir. 2007) ................................................................................. 8

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 4
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

*R.I. Coal. Against Domestic Violence v. Bondi*,

    No. 25-279-WES, 2025 WL 2271867 (D.R.I. Aug. 8, 2025) ................................. 16

*Rosebrock v. Mathis*,

    745 F.3d 963 (9th Cir. 2014) ........................................................................... 12

*Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump*,

    508 F.Supp.3d 521 (N.D. Cal. 2020) ............................................................... 13

*Shilling v. United States*,

    773 F. Supp. 3d 1069 (W.D. Wash. 2025) ....................................................... 19

*Stockman v. Trump*,

    No. EDCV-17-1799-JGB, 2017 WL 9732572 (C.D. Cal. Dec. 22, 2017) ............ 19

*Trump v. American Federation of Government Employees*,

    145 S.Ct. 2635 (2025) ..................................................................................... 21

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*,

    485 F. Supp.3d 1 (D.D.C. 2020) ..................................................................... 19

**Statutes**

42 U.S.C. § 9843 ..................................................................................................... 17

42 U.S.C. 9836a .............................................................................................. 14, 17

**Other Authorities**

ACF, HHS, *Using Cultural Competence to Solve Problems*, https://headstart.gov/culture-

    language/learning-module/using-cultural-competence-solve-problems .............................. 17

*Cultural Competence*, Cambridge Dictionary,

    https://dictionary.cambridge.org/us/dictionary/english/cultural-competence ........................ 17

Ending Illegal Discrimination and Restoring Merit-Based Opportunity, Exec. Order No.

    14173, 90 Fed. Reg. 8633 (Jan. 21, 2025) ........................................................ 11

Ending Radical and Wasteful Government DEI Programs and Preferencing, Exec. Order

    No. 14151, 90 Fed. Reg. 8339 (Jan. 20, 2025) ................................................. 13

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 5
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

Improving Oversight of Federal Grantmaking, Exec. Order No. 14332, 90 Fed. Reg. 38929 (Aug. 7, 2025) ................................................................................................ 11, 14

Memorandum from Pam Bondi, Attorney General, U.S. Dep't of Justice, *Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination* (July 29, 2025), https://www.justice.gov/ag/media/1409486/dl?inline=&utm_mediumemail&utm_source=govdelivery. ........................................................................................... *passim*

Memorandum from Todd Blanche, Deputy Attorney General, U.S. Dep't of Justice (May 19, 2025), https://perma.cc/N9WX-VQY7 ........................................................... 11

U.S. Dep't of Health & Hum. Servs., *Fiscal Year 2026 Budget in Brief* (May 2025), https://www.hhs.gov/sites/default/files/fy-2026-budget-in-brief.pdf. ................... 14

U.S. Dep't of Health & Hum. Servs., HHS Grants Policy Statement (July 24, 2025), https://www.hhs.gov/sites/default/files/hhs-grants-policy-statement-july-2025.pdf. ..... *passim*

**Regulations**

45 C.F.R. § 1302.11 ................................................................................................ 18

45 C.F.R. § 1302.33 ................................................................................................ 17

45 C.F.R. § 1302.90 ................................................................................................ 17

45 C.F.R. § 1302.91 ................................................................................................ 17

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 6
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

**INTRODUCTION**

The Court requested supplemental briefing regarding the effects of (1) HHS' July 2025 Grants Policy Statement ("July GPS")[1], as well as any changes to HHS, ACF, or OHS administrative or national policy requirements; (2) the Office of the Attorney General's Memorandum on "Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination" (July 29, 2025)[2] ("DOJ Memo"); and (3) the Rhode Island district court's July 1, 2025 preliminary injunction in *New York v. Kennedy*, No. 25-cv-196-MRD-PAS, 2025 WL 1803260 (D.R.I. July 1, 2025). Plaintiffs address each in turn.

**Modification to GPS.** The July GPS continues to require a certification ("July 24 Certification") that leaves intact the prior DEIA Certification's key defects. July GPS at 19. As another court in the Western District of Washington recently found, the removal of the express reference to "DEIA" in the most recent version of the GPS did not cure the Certification's violations of the Constitution or the Administrative Procedure Act (APA). *Martin Luther King, Jr. Cnty. v. Turner*, No. 2:25-cv-814, 2025 WL 2322763, at *8, *15 (W.D. Wash. Aug. 12, 2025) (*MLK*). Moreover, even if HHS had removed the Certification from the GPS altogether, the DEI Letter and HHS's broader policy of banning "DEIA" remain in effect and are being broadly enforced beyond the scope of federal antidiscrimination law.

**DOJ Memo.** The DOJ Memo, which only purports to "clarify" instances where funding recipients have violated antidiscrimination law, does not provide Plaintiffs with meaningful guidance because the DEIA Ban is broader in scope and prohibits activities that do not violate antidiscrimination law. In fact, the Memo exacerbates the DEIA Ban's constitutional and statutory deficiencies because the examples it provides of "unlawful conduct," such as consideration of "cultural competence" and recruitment of individuals from particular cultural or ethnic

---

[1] U.S. Dep't of Health & Hum. Servs., HHS Grants Policy Statement (July 24, 2025), https://www.hhs.gov/sites/default/files/hhs-grants-policy-statement-july-2025.pdf.
[2] Memorandum from Pam Bondi, Attorney General, U.S. Dep't of Justice, *Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination* (July 29, 2025), https://www.justice.gov/ag/media/1409486/dl?inline=&utm_mediumemail&utm_source=govdelivery.

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 7
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

backgrounds, are inconsistent with existing and longstanding interpretation of antidiscrimination laws and the obligations of the Head Start Act.

***New York v. Kennedy***. The decision in *New York v. Kennedy*, No. 25-cv-196-MRD-PAS, 2025 WL 1803260, strongly supports Plaintiffs' showing on all the preliminary injunction factors to enjoin Defendants' mass layoffs and office closures at the Office of Head Start ("Mass Cuts"). Because injunctions entered in other cases do not confer any rights to relief or provide sufficient certainty for Plaintiffs and their members, Plaintiffs are entitled to a decision on their motion based on the particular facts and arguments that they raised. Indeed, courts routinely grant overlapping injunctions in cases challenging unlawful federal action.

## ARGUMENT

## I.    Neither the GPS Modification Nor the DOJ Memo Diminish Plaintiffs' Need for Preliminary Relief.

No party has taken the position that the DEIA Ban has changed since Plaintiffs filed their motion for a preliminary injunction on May 16, 2025. As the Court noted, Defendants recently modified the HHS GPS, and DOJ issued a new memorandum on "Unlawful Discrimination." Dkt. 95. While both actions occurred prior to Defendants' filing their Notice of Supplemental Authority on July 30, 2025, Dkt. 89, and oral argument on August 5, 2025, Defendants did not raise either action with the Court as evidence disproving any of Plaintiffs' bases for preliminary injunctive relief. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007) ("[O]nce the moving party has carried its burden of showing a likelihood of success on the merits, the burden shifts to the non-moving party to show a likelihood that its affirmative defense will succeed.") (citation omitted). In fact, neither development undermines Plaintiffs' claims; to the contrary, these subsequent actions illustrate and exacerbate Plaintiffs' irreparable harms.

### A.    The Unexplained Modification of the GPS Does Not Change the Substance, Scope, or Consequences of the DEIA Ban.

On July 24, 2025, without any notice or explanation, HHS modified the DEIA Certification, which appeared in the April 16, 2025 GPS. The July GPS now includes a "'Civil

Rights Assurance' clause [that] provides that HHS grant 'recipients certify compliance with all federal antidiscrimination laws[,]' that this 'is a material condition of receiving federal funding streams[,]' and '[r]ecipients are responsible for ensuring subrecipients, contractors, and partners also comply.'" Dkt. 95 at 3-4 (quoting July GPS at 19). The July 24 Certification does not change the substance, scope, or consequences of the prior Certification and should not affect the Court's analysis of whether the DEIA Ban is likely unlawful. And, as explained below, even if the Court disagrees and finds that the unexplained modifications meaningfully changed requirements for grantees, injunctive relief is still appropriate because the challenged conduct is likely to recur.

Moreover, the Court need not rely on the prior DEIA Certification to find that the broader DEIA Ban and the DEI Letter are likely unlawful. The prior DEIA Certification is one discrete component of Defendants' DEIA Ban: it is both an action implementing HHS's broader policy banning "DEIA" *and* an independent and final agency action. Plaintiffs challenged Defendants' DEIA Ban both as a whole and the discrete agency actions that make up the Ban under the Constitution and the APA. *See Am. Public Health Ass'n v. Nat'l Institutes of Health*, No. 1:25-cv-10787, 2025 WL 1822487, at *14 (D. Mass. July 2, 2025) ("The Challenged Directives, as a whole, constitute final agency actions at the macro-level, and the resultant, downstream individual terminations and other effects are also independent final agency action as to each of the affected grants."). Regardless of whether the Court considers the DEIA Certification, therefore, the other components of the DEIA Ban—including the DEI Letter and the agency's enforcement of the DEIA Ban—remain unaltered and make clear that the Ban continues to be interpreted expansively beyond the scope of existing antidiscrimination laws.

### 1. The July 24 Certification Still Prohibits "DEIA" in All Grantee Activities and Subjects Plaintiffs' Members to Risk of Irreparable Harm.

HHS's removal of the express reference to DEIA in the GPS does not change its meaning given Plaintiffs must certify compliance with antidiscrimination laws which, as the DOJ Memo confirms, Defendants have unilaterally reinterpreted to prohibit "DEIA." *See infra* Section I.C.; *see also Am. Fed. of Teachers v. Dep't. of Educ.*, No. 1:25-cv-00628-SAG, at 49 n.10 (D. Md.

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 9
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

1   Aug. 14, 2025), ECF No. 83 ("*AFT*") (interpreting certification requirement in light of the

2   agency's letter providing "overbroad" interpretations of antidiscrimination law). Recently,

3   another court in this district reached just that conclusion. In *MLK*, the court held that plaintiffs are

4   likely to prevail on their claim that HHS's Grants Policy Statement's certification violates the

5   separation of powers and exceeds statutory authority even after the July 24 update to the 2025

6   HHS GPS "removing express references to DEI." 2025 WL 2322763, at *8, *15; *id.* at *23

7   (enjoining "HHS Grant Conditions" including certifications required by both April and July GPS).

8   In rejecting the government's argument that the challenged conditions merely require compliance

9   with existing federal laws, the court explained that the DOJ Memo, and similar memos, show that

10  "Defendants interpret federal antidiscrimination laws in a manner that is inconsistent with well-

11  established legal precedent," *id* at *12, and "demonstrate[s] that Plaintiffs are at the mercy of

12  Defendants' interpretation of federal antidiscrimination laws, regardless of how those laws are

13  interpreted by the courts." *Id.* at *13.

14      Additionally, the text of the July 24 Certification shows that it suffers from the same key

15  defects as the prior DEIA Certification. First, the July GPS leverages funding to regulate speech

16  about diversity, equity, inclusion, and accessibility outside the contours of the federal program,

17  which is one of the ways that Defendants violate the First Amendment. *See* Dkt. 37 at 19; Dkt. 65

18  at 15. Like the prior version, the July 24 Certification is not limited to the conduct within the

19  contours of the federally-funded program but instead makes the recipient's "compliance . . . a

20  material condition of receiving federal funding streams." DOJ has conceded that the executive

21  order implemented by the July 24 Certification "attempts to regulate grantees' speech outside of

22  their federally-funded programs." *Chicago Women in Trades v. Trump*, 778 F. Supp. 3d 959, 984

23  (N.D. Ill. 2025). In fact, the July GPS appears to go even further by making recipients

24  "responsible" for the compliance of their "partners." July GPS at 19. Indeed, the President's latest

25  executive order on federal grant funding continues to require agencies to use grantmaking to

26  "demonstrably advance the President's policy priorities" and broadly prohibits any awards that

27  could be used to not just fund—but also "promote, encourage, subsidize, or facilitate . . . initiatives

that . . . promote anti-American values."[3] A prior executive order stated that "Illegal DEI and DEIA…undermine the traditional American values."[4] And Defendants' enforcement of the DEIA Ban shows that it applies outside the federally funded program. Dkt. 37 at 20; Dkt. 65 at 15. *See Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 131 (1992) (considering "implementation and interpretation of it" of challenged ordinance).

Second, the July 24 Certification continues to impose severe penalties for violation, including those under the False Claims Act (FCA) which is one of the ways that the DEIA Ban imperils HSA Plaintiffs' liberty interests, *see* Dkt. 65 at 14, and causes irreparable harm, Dkt. 37 at 16, Dkt 65 at 8-9. The July 24 Certification implements the President's mandate that agencies require a "recipient to certify that it does not operate any programs promoting DEI that violate any applicable Federal antidiscrimination laws" and that this Certification "is material" for purposes of the FCA.[5] *See* Dkt. 97 at 36:7-17 (explaining that through the DEIA Ban, "HHS is implementing the Executive's priorities…Simply put, the President has got his priorities, and through his executive orders, HHS is trying to implement them."); Ryan Supp. Ex. B ("award is subject to Executive Orders."). The July 24 Certification facilitates DOJ's plan to use the FCA as a "weapon" to stop "diversity, equity, and inclusion (DEI) programs," including through the creation of the "Civil Rights Fraud Initiative" in collaboration with DOJ's Criminal Division and HHS, and by "strongly encourag[ing]" private parties to bring FCA lawsuits.[6]

## 2. Even if the July GPS Had Materially Changed the DEIA Certification, Relief is Necessary Because Defendants Could Re-implement the Prior Version at any Time.

Even if the July 24 Certification no longer required agencies to, in effect, certify that they were not violating Defendants' prohibition on DEIA, preliminary relief preventing Defendants

---

[3] Improving Oversight of Federal Grantmaking, Exec. Order No. 14332, 90 Fed. Reg. 38929 (Aug. 7, 2025).
[4] Ending Illegal Discrimination and Restoring Merit-Based Opportunity, Exec. Order No. 14173, 90 Fed. Reg. 8633, 8633 (Jan. 21, 2025).
[5] 90 Fed. Reg. at 8634.
[6] Memorandum from Todd Blanche, Deputy Attorney General, U.S. Dep't of Justice (May 19, 2025), https://perma.cc/N9WX-VQY7.

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 11
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

from requiring such certification would still be warranted. Without this injunctive relief, Defendants would be able to re-implement the prior Certification, or implement a substantially similar new Certification, at any time, and Defendants have not provided any evidence that they would not, in fact, take this course of action. *See Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) (under the doctrine of voluntary cessation, Defendants have the "formidable burden" to prove that "no reasonable expectation remains that it will return to its old ways.") (internal citation and quotation marks omitted) (cleaned up); *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1237 (9th Cir. 1999) (preliminary injunction appropriate despite defendant's voluntary cessation where defendant did not show it was "'absolutely clear' that their wrongful activities are not reasonably likely to recur." (internal citation omitted)). Indeed, even as they now argue for the first time (despite two prior opportunities to do so) that the July GPS removed the DEIA Certification, Defendants do not argue that their policy has changed, much less attempt to meet the standard for voluntary cessation, Dkt. 98 at 2.[7]

Further, although voluntary cessation can be relevant to a plaintiff's ability to demonstrate likelihood of irreparable harm, the unexplained change to the GPS has not ameliorated Plaintiffs' harms, especially given Defendants' continued enforcement of the DEIA Ban and reinterpretation of antidiscrimination law, *infra* Sections I.A.3; I.C. *See Ortega Gonzalez v. Noem*, No. 6:25-cv-00622-MC, 2025 WL 1355272, at *5 (D. Or. May 9, 2025) (irreparable harm likely despite voluntary cessation where defendants "have not repudiated the prior decisions," explained, or justified prior policy). Defendants, and the President whose priorities they aim to implement, have made clear that their goal is to eradicate DEIA in all its forms. Thus, to the extent the Court finds that they have changed their DEIA Certification, it is likely to be imposed again.

---

[7] In any event, the Ninth Circuit factors for considering voluntary cessation do not support mootness: any change is not "unequivocal," does not address all of Plaintiffs' objections, officials have continued to engage in similar conduct, and it could be "easily abandoned or altered in the future." *See Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014) (internal citation and quotation marks omitted).

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 12
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

### 3. Defendants' DEIA Ban and DEI Letter Remain Unchanged and Apply Beyond Federal Antidiscrimination Law.

Even if the Court finds that the prior DEIA Certification is moot, however, preliminary relief is still warranted because Defendants' general policy banning the undefined terms of DEIA and the DEI Letter implementing that policy remain in effect. The text of the DEI Letter, Defendants' statements about the DEIA Ban, and Defendants' enforcement of the Ban all confirm how broadly the Ban sweeps, far beyond the scope of federal antidiscrimination statutes.

The text of the DEI Letter—which Defendants have not revised or withdrawn—instructs Head Start agencies that they cannot "promote or take part in diversity, equity, and inclusion (DEI) initiatives." *See* Dkt. 97 at 33:24-25 ("The DEI Letter from ACF says no DEI program will be approved."). Nothing in the DEI Letter limits its prohibition to initiatives that violate antidiscrimination laws, and the government's repeated assertions that it is so limited are "flatly wrong." *Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump*, 508 F.Supp.3d 521, 546 (N.D. Cal. 2020) (rejecting government's description that conflicts with the text of an order); *see Backpage.com, LLC v. McKenna*, 881 F.Supp.2d 1262, 1280 (W.D. Wash. 2012) (rejecting defendants' argument that "the statute reaches only offers to engage in illegal conduct," explaining the text of the "statute criminalizes more than offers to engage in illegal transactions").

Defendants' own statements regarding the DEIA Ban confirm that its prohibitions extend beyond existing antidiscrimination law. Through the DEIA Ban, "HHS is implementing the Executive's priorities…. Simply put, the President has got his priorities, and…HHS is trying to implement them." *See* Dkt. 97 at 36:7-17. The executive orders and the President's priorities make plain their goal is to prohibit all DEIA initiatives, even when required by federal laws, like the Head Start Act, and without regard to the constraints of existing antidiscrimination law. *See, e.g.*, "Ending Radical and Wasteful Government DEI Programs and Preferencing" (January 20, 2025) (directing agencies to "terminate…'equity-related' grants")[8]; "Improving Oversight of Federal

---

[8] Ending Radical and Wasteful Government DEI Programs and Preferencing, Exec. Order No. 14151, 90 Fed. Reg. 8339 (Jan. 20, 2025).

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 13
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

Grantmaking" (Aug. 7, 2025) (prohibiting promotion of "anti-American values.")[9]; HHS Budget in Brief at 4, 29 (in Head Start "HHS will also focus on program oversight, including removing Diversity, Equity, and Inclusion").[10] Other courts have rejected similar arguments that anti-DEIA policies merely require compliance with antidiscrimination law. *AFT*, 1:25-cv-00628-SAG, at 65 (explaining "the government's primary defense is that the Letter merely reiterates that discrimination is illegal. That defies logic,"..."if the government has been clear in any respect, it has stated over and over that it disfavors its concept of 'DEI' and wishes to end it altogether."); *MLK*, No. 2025 WL 2322763, at *12–13. Defendants' statement that the DEIA Ban's purpose is to implement the President's priorities underscores its breadth.

Defendants' statements during the August 5 hearing also establish that their DEIA Ban is not simply coextensive with existing antidiscrimination law. For example, while the Head Start Act's requirement that programs serve at least ten percent of children with disabilities does not violate antidiscrimination laws, Defendants stated they could not confirm that a Head Start program maintaining this requirement would be complying with the DEIA Ban. *See* Dkt. 97 at 34:13-20. Similarly, the Head Start Act's requirement that programs provide "culturally and linguistically appropriate instructional services," 42 U.S.C. 9836a(B)(x), does not violate antidiscrimination laws, but Defendants could not confirm that a program that hires "cultural and language experts" would be complying with the DEIA Ban. *See* Dkt. 97 at 34:13-20.[11]

Moreover, Defendants' implementation and enforcement of the DEIA Ban through the grant administration process, by which Defendants renew grant funding to agencies already designated to provide Head Start, demonstrate the DEIA Ban's broad reach. *See AFT*, 1:25-cv-00628-SAG at 36–37 (considering government's conduct and implementation to determine scope of agency action); *see Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (meaning of

---

[9] 90 Fed. Reg. at 38929.
[10] U.S. Dep't of Health & Hum. Servs., *Fiscal Year 2026 Budget in Brief* (May 2025), https://www.hhs.gov/sites/default/files/fy-2026-budget-in-brief.pdf.
[11] Defendants' uncertainty about whether the Ban prohibits otherwise lawful initiatives is not only an admission that the Ban extends beyond enforcement of existing antidiscrimination laws, but also illustrates the impossible bind that HSA Plaintiffs face. If the government does not know the answer to fundamental questions about how agencies should structure their staff and classes under its own DEIA Ban, then it is difficult to imagine who does.

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 14
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

challenged ordinance determined by its "words" and "the interpretation of the statute given by those charged with enforcing it"); *Forsyth Cnty., Ga.*, 505 U.S. at 131 (considering county's own "implementation and interpretation" of ordinance); *see also* Dkt. 37 at 13; Dkt. 65 at 9. Enforcement of the DEIA Ban has not changed since Plaintiffs' prior submission. In one recent example, OHS staff required that to keep their designation as a Head Start agency, Illinois HSA members had to sign an attestation that they would not promote or take part in DEI initiatives.[12] The attestation was not limited to a commitment to comply with antidiscrimination law. In fact, OHS staff instructed one Illinois HSA member to disband an internal DEIA committee and terminate its cultural awareness training.[13] In another example, just this week, OHS rejected a grant application from a Washington HSA member because "terms within [the] application...may be construed to reference...DEI terms."[14] The offending terms are: (1) "Respect and acceptance for all: recognizing, valuing, encouraging and supporting community and individual differences and perspectives," and (2) "Ensure the unique qualities of each family are affirmed as strengths and staff experience a program where everyone belongs."[15] Another Washington HSA member was told by OHS to remove the word "pregnant" from programming materials for pregnant people and other documents.[16] Notably, in each case, OHS put agencies to a Hobson's choice between complying with the DEIA Ban (and making substantive changes to their program) or risking their designation as a Head Start agency or delay or elimination of further funding. By requiring that agencies agree to these changes in this manner, Defendants are circumventing the very processes on which they argue HSA Plaintiffs' members should rely. Dkt. 98 at 4; *see* Dkt. 65 at 13.

## B. The DOJ Memo Does Not Cure the Impermissible Vagueness of the DEIA Ban.

The DOJ Memo does not make the meaning of the DEIA Ban any less vague. It purports only to "clarif[y] the application of federal antidiscrimination laws" to programs that receive federal funding. DOJ Memo at 2. Because the DEIA Ban admittedly prohibits activities

---

[12] *See* Morrison-Frichtl Supp. ¶4.
[13] *Id.* ¶¶4-5.
[14] Ryan Supp. ¶¶3-5; *id.* at Ex.A.
[15] *Id.* ¶¶3-5.
[16] *See id.* ¶9.

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 15
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

permissible under antidiscrimination law, *supra* Section I.A.3, the Memo thus describes DOJ's view of a floor—not a ceiling—of what is prohibited under the DEIA Ban.

By its own terms, the DOJ Memo offers a "non-exhaustive list" of "unlawful practices that could result in the revocation of federal funding." It provides agencies with no assurance that activities not listed will fall outside the scope of enforcement, and notably offers no guidance as to what is *not* a violation. Failing to clearly define what activities recipients "can do" and "can't do," the DOJ Memo exacerbates rather than resolves the DEIA Ban's vagueness. *See R.I. Coal. Against Domestic Violence v. Bondi*, No. 25-279-WES, 2025 WL 2271867, at *10 (D.R.I. Aug. 8, 2025) (holding grant condition prohibiting "illegal DEI" "would unfairly require the Coalitions to guess at what formerly unobjectionable activities are now proscribed" and "that uncertainty, created by the Office, comes with serious risks of enhanced and aggressive False Claims Act prosecutions"); *Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*, 779 F.Supp.3d 149, 190 (D.N.H. 2025) (explaining that agency letter that "fails to give reasonable notice of the Department's understanding of *how* DEI programs unlawfully discriminate and the ways in which such programs could be operated to avoid running afoul of Title VI" was impermissibly vague, and that FAQ document purporting to provide examples of unlawful DEI "does not ameliorate the opacity of the 2025 Letter, but rather, exacerbates it"); *Hunt v. City of Los Angeles*, 638 F.3d 703, 713 (9th Cir. 2011) ("[S]imply reciting this legal standard" from a prior Ninth Circuit case "does not offer the City a per se safe harbor from a vagueness challenge.").

## C.    The DOJ Memo Also Confirms Defendants' Arbitrary and Unsupported Interpretation of Existing Antidiscrimination Laws.

The DOJ Memo provides further support that the DEIA Ban violates the separation of powers, Due Process Clause, and First Amendment; conflicts with the Head Start and Rehabilitation Act; and is arbitrary and capricious. While the Memo does not address the full universe of conduct proscribed by the DEIA Ban, it confirms that the government's interpretations of existing antidiscrimination laws are impermissibly broad and untethered from well-established interpretations. The Memo's list of "unlawful conduct" provides additional evidence that the

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 16
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

government's unprecedented and unsupported interpretation of antidiscrimination laws are also inconsistent with other federal laws.[17] Far from clarifying the meaning of the DEIA Ban, the DOJ Memo illustrates and exacerbates the impossible double-bind Defendants' Ban imposes on HSA Plaintiffs' members. *See* Dkt. 37 at 12-14, 23-25, 28; Dkt. 65 at 16, 18; Dkt. 38 at Ex.39.

For example, the DOJ Memo lists "cultural competence," "lived experience," "geographic or institutional targeting" and "diversity statements" as "examples of potentially unlawful proxies." DOJ Memo at 5; *see id.* at 7 ("[R]equiring a certain percentage of finalists to be from 'diverse' backgrounds" is an "example of unlawful practices."). But under the Head Start Act, both Defendants and HSA Plaintiffs' members are obligated to "develop and implement a program of outreach to recruit and train professionals from diverse backgrounds to become Head Start teachers," 42 U.S.C. § 9843(c), and to provide "culturally and linguistically appropriate instructional services," *id.* § 9836a(B)(x). Agencies must "ensure" that all their staff "are familiar with the ethnic backgrounds and heritages of families in the program and are able to serve and effectively communicate." 45 C.F.R. § 1302.90(d)(1); *see id.* § 1302.33(c)(2)(iii) (those who "conduct[] the screening or assessment know and understand the child's language and culture"); *id.* § 1302.91(e)(6)(ii) (home visitors must "[d]emonstrate competency…to build respectful, culturally responsive, and trusting relationships with families"). In other words, the Head Start Act requires HSA Plaintiffs' members to hire staff with "cultural competence." *See* Cambridge Dictionary, [18] (defining "cultural competence" as "a set of skills that allow a person to communicate effectively with someone from a different culture"); *see, e.g.*, ACF, HHS, *Using Cultural Competence to Solve Problems*, https://headstart.gov/culture-language/learning-module/using-cultural-competence-solve-problems (defining "cultural competence" as "a set of congruent behaviors, attitudes, and policies that come together in a system, agency, or among professionals that enables effective work in cross-cultural situations.").

---

[17] *See* Morrison-Frichtl Supp. ¶6.
[18] *Cultural Competence*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/cultural-competence.

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 17
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

The DOJ Memo also states that a "best practice" is to evaluate performance metrics "without reference to race, sex, or other protected traits." DOJ Memo at 1, 9. But the Head Start Act requires HSA Plaintiffs' members complete an assessment for which they "collect and utilize data that describes community strengths, needs, and resources and include, at a minimum: Relevant demographic data about eligible children and expectant mothers, including: Race and ethnicity." 45 C.F.R. § 1302.11(b)(2). Annually, HSA Plaintiffs' members "update the community assessment to identify any significant shifts in community demographics, needs, and resources that may impact program design and service delivery" and must consider "how the program addresses equity, accessibility, and inclusiveness in its provision of services." *Id*. § 1302.11(b)(5).

Ultimately, while the DEIA Ban plainly prohibits conduct beyond the scope antidiscrimination laws, *see supra* Section I.A.3, given the DOJ Memo's expansive, unprecedented, and vague interpretation of these laws, Plaintiffs need relief even if the DEIA Ban were supposedly limited to enforcement of existing antidiscrimination law. *See MLK*, 2025 WL 2322763, at \*12-13 (the DOJ Memo "is inconsistent with well-established legal precedent," and "demonstrates that Plaintiffs are at the mercy of Defendants' interpretation of federal antidiscrimination laws, regardless of how those laws are interpreted by the courts").

## II.    Plaintiffs' Entitlement to Injunctive Relief is Strongly Supported by the Rhode Island District Court's Injunction in *New York v. Kennedy*.

The Rhode Island district court's decision in *New York v. Kennedy* strongly supports Plaintiffs' entitlement to relief in this case. In granting a preliminary injunction, the Rhode Island district court rejected many of the same arguments made by Defendants in their Opposition in this case, and held the plaintiffs' claims were justiciable; that interruption of services, imminent closure of programs, uncertainty about grant status, and loss of technical assistance and training— all of which HSA Plaintiffs' members face here—constitute irreparable harms; and that the balance of equities and public interest weigh heavily in the plaintiffs' favor. *New York v. Kennedy*, 2025 WL 1803260, at \*8–9, 12–14, 18–20; *see also* Pls. Mot. 15–16, 26–27, 29–30. Most critically, the existing injunction does not preclude or render unnecessary Plaintiffs' request for

preliminary injunctive relief in this case, nor does it relieve this Court of "exercising its duty" to the parties before it. *California v. Health & Hum. Servs.*, 390 F. Supp. 3d 1061, 1065 (N.D. Cal. 2019), *vacated and remanded on other grounds*, 977 F.3d 801 (9th Cir. 2020). This is especially true where Plaintiffs have asserted several unique harms and issues that were not addressed by the Rhode Island district court, and where Plaintiffs and their members remain vulnerable to further irreparable injuries if the existing injunction is stayed, modified, or overturned.

As a preliminary matter, this Court has authority to grant injunctive relief to Plaintiffs notwithstanding the injunction issued by the Rhode Island district court. *California v. U.S. Dep't of Health & Hum. Servs.*, 941 F.3d 410, 421-23 (9th Cir. 2019), *rev'd on other grounds sub nom. Little Sisters of the Poor Saints Peter & Paul Home v. Penn*, 591 U.S. 657 (2020). Indeed, "overlapping injunctions appear to be a common outcome of parallel litigation, rather than a reason for the Court to pass on exercising its duty to determine whether litigants are entitled to relief." *California*, 390 F. Supp. 3d at 1066. This is especially true where, as here, Defendants have not argued at any time that an existing injunction in another case weighs against Plaintiffs' request for relief. *See Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp.3d 1, 60 (D.D.C. 2020).

Accordingly, "courts routinely grant follow-on injunctions against the Government, even in instances when an earlier nationwide injunction has already provided plaintiffs in the later action with their desired relief." *Id.* at 60; *see also California*, 390 F. Supp. 3d at 1065–66; *Pennsylvania v. DeJoy*, 490 F. Supp. 3d 833, 892 (E.D. Pa. 2020); *Cook Cnty. v. McAleenan*, 417 F. Supp. 3d 1008, 1030 (N.D. Ill. 2019), *aff'd on other grounds sub. nom. Cook Cnty. v. Wolf*, 962 F.3d 208 (7th Cir. 2020); *Casa De Maryland, Inc. v. Trump*, 414 F. Supp. 3d 760, 767 n.2, 787-88 (D. Md. 2019); *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 435 (E.D.N.Y. 2018), *vacated in part and rev'd in part on other grounds*, *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1 (2020); *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 599-600, 659 (E.D. Pa. 2017); *Stockman v. Trump*, No. EDCV-17-1799-JGB, 2017 WL 9732572, at *6–7 (C.D. Cal. Dec. 22, 2017); *Shilling v. United States*, 773 F. Supp. 3d 1069, 1107–08 (W.D. Wash. 2025) ("The fact

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 19
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

there are two other district courts adjudicating similar cases, one of which has already issued a preliminary injunction, provides an additional basis for issuing a nationwide injunction here.").

While this injunction provides some relief for now, Plaintiffs should not be forced to rely solely on that protection here. The "existence of another injunction . . . does not negate [the plaintiffs'] claimed irreparable harm." *California*, 390 F. Supp. 3d at 1066. Moreover, the injunction remains subject to partial or complete stays, modification, or reversal. In fact, the parties are presently litigating cross-motions to clarify the scope of the order—and the government seeks to limit the geographic scope to the states represented in the case. *See* ECF 75 (filed July 11, 2025), ECF 83 (filed July 25, 2025), No. 1:25-cv-00196. If the government succeeds, Plaintiffs and their members—and particularly Plaintiff Pennsylvania HSA and its members—would face immediate injuries. And while the government's arguments for narrowing the injunction are misplaced, Plaintiffs' relief should not be subject to what may happen in another lawsuit in which they are not parties and cannot act directly to protect their constitutional and statutory rights or the interests of their members. *See Mayor & City Council of Baltimore v. Azar*, 392 F. Supp. 3d 602, 618–19 (D. Md. 2019); *see also California*, 390 F. Supp. 3d at 1066. Plaintiffs require relief in *this* case to protect themselves and their members.

As Defendants acknowledge, Dkt. 98 at 5-7, this case also raises issues not considered by the Rhode Island district court. First, this case was brought by entirely different set of plaintiffs, who face several unique harms. Moreover, despite the existing injunction, Plaintiffs and their members have continued to suffer ongoing injuries, including program disruptions and delays in funding, as a result of Defendants' Mass Cuts, yet have no recourse or ability to assert those harms or their rights or otherwise challenge any noncompliance with the injunction in the Rhode Island case. Additionally, the plaintiff-states in *New York* challenge the Mass Cuts as applied to a wide range of HHS sub-agencies, while this case narrowly targets them as related to the administration of Head Start. The Rhode Island district court also did not reach the constitutional arguments, to which Plaintiffs have devoted substantial briefing for this motion. Pls. Mot. 25–26; Reply 19–20.

Contrary to Defendants' arguments, Dkt. 98 at 7–8, the Supreme Court's recent stays in

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 20
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

two cases have no bearing here. In *Trump v. American Federation of Government Employees*, the Supreme Court considered different arguments than the ones in this case, and made clear that it "express[ed] no view on the legality" of the agency restructuring and reductions in force at issue. 145 S.Ct. 2635, 2635 (2025). Similarly, the Supreme Court's paragraph-long decision in *McMahon v. New York* is devoid of any reasoning or guidance concerning the issues presented in *that* case—much less those here. 145 S.Ct. 2643, 2643 (2025). Moreover, this case turns on the unique nature of the Head Start program as designed by Congress, with local agencies unable to operate *at all* to provide the early education services Congress created and funded, without the involvement of a federal agency that has now been decimated. Defendants' congressionally created role is to be actively involved in almost all aspects of Head Start programs—and Defendants' approval is required for almost everything agencies do—from purchasing a vision screening machine, to fixing an unsafe playground, to hiring someone to fill a vacant role. Dkt. 37 at 15. Moreover, by statute, 80 percent of agencies' funding comes from HHS, and agencies must spend withdrawn funds within three days—a combination that makes them uniquely vulnerable when Defendants fail to fulfill their statutorily required role.

In any case, a stay order "is not a decision on the merits." *Merrill v. Milligan*, 142 S.Ct. 879, 879 (2022) (Kavanaugh, J., concurring). Indeed, following these stay orders, the Rhode Island district court reaffirmed its injunction, explaining that it would not interpret the "Supreme Court's shadow docket summary orders (issued without any reasoning or explanation) as definitive indications as to how either the Supreme Court or the Circuit Court of Appeals might rule on a motion to stay or on the merits of this case." *New York v. Kennedy*, No. 25-cv-196-MRD-PAS, Dkt. 81 at 2 (D.R.I. July 18, 2025).

## CONCLUSION

For the reasons stated above, and in the record, Plaintiffs respectfully request that the Court grant their motion for a preliminary injunction as to Defendants' DEIA Ban and Mass Cuts.

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 21
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

Dated: August 15, 2025

Ming-Qi Chu (*pro hac vice*)
Jennesa Calvo-Friedman (*pro hac vice*)
Linda S. Morris* (*pro hac vice*)
*admitted in State of Maryland*
Sania Chandrani (*pro hac vice*)
AMERICAN CIVIL LIBERTIES
        UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
mchu@aclu.org

Michelle Fraling (*pro hac vice*)
AMERICAN CIVIL LIBERTIES
        UNION FOUNDATION
915 15th Street NW, 6th Floor
Washington DC, 20005
Tel: (917) 710-3245
michelle.fraling@aclu.org

Laboni A. Hoq (*pro hac vice*)
HOQ LAW APC
AMERICAN CIVIL LIBERTIES
        UNION FOUNDATION
        (Cooperating Attorney)
P.O. Box 753
South Pasadena, CA 91030
Tel: (213) 977-9004
laboni@hoqlaw.com

S. Starling Marshall (*pro hac vice*)
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212)223-4000
SMarshall@crowell.com

Skye Mathieson (*pro hac vice*)
Lucy Hendrix (*pro hac vice* forthcoming)
Emily P. Golchini (*pro hac vice*)
CROWELL & MORING LLP

Respectfully submitted,

By:     /s/   La Rond Baker
La Rond Baker (WSBA No. 43610)
Brent Low (WSBA No. 61795)
David Montes (WSBA No. 45205)
AMERICAN CIVIL LIBERTIES
        UNION OF WASHINGTON
P.O. BOX 2728
Seattle, Washington 98111-2728
Tel: (206) 624-2184
baker@aclu-wa.org

Kevin M. Fee (*pro hac vice*)
Allison Siebeneck (*pro hac vice*)
ROGER BALDWIN FOUNDATION OF
        ACLU, INC.
150 N. Michigan Ave, Suite 600
Chicago, IL 60601
Tel: (312) 201-9740
kfee@aclu-il.org

Lindsay Nako (*pro hac vice*)
Lori Rifkin (*pro hac vice*)
Fawn Rajbhandari-Korr (*pro hac vice*)
Meredith Dixon (*pro hac vice*)
Megan Flynn (*pro hac vice*)
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Tel: (510) 845-3473
lrifkin@impactfund.org

Edward T. Waters (*pro hac vice*)
FELDESMAN LEIFER LLP
1129 20th Street NW, 4th Floor
Washington, DC 20036
Tel: (202) 466-8960
ewaters@feldesman.com

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 22
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

1001 Pennsylvania Ave NW
Washington, DC 20004
Tel: (202)624-2500
SMatheison@crowell.com

PLAINTIFFS' SUPPLEMENTAL BRIEFING
ON MOTION FOR PRELIMINARY INJUNCTION - 23
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184