The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASHINGTON STATE ASSOCIATION OF HEAD START AND EARLY CHILDHOOD ASSISTANCE AND EDUCATION PROGRAM; et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., et. al.,<br><br>Defendants. | Case No. 2:25-cv-00781-RSM<br><br>DEFENDANTS' REPLY |

**I.      Plaintiffs' Challenges to HHS's DEIA Certification are Moot.**

The April 2025 Grants Policy Statement (GPS), which contained the DEIA Certification Plaintiffs challenge in their Second Amended Complaint (SAC), has since been revised. In the July 2025 revision, as well as the most current October 2025 revision, HHS removed any reference to DEI, leaving only a prohibition against promoting violations of applicable Federal anti-discrimination law. *See* Dkts. 98, 118.

The April 2025 GPS required grant recipients to certify that "[t]hey do not, and will not

DEFENDANTS' REPLY
[2:25-cv-00781-RSM] - 1

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

during the term of this financial assistance award, operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws." The October 2025 GPS requires grant recipients to certify "compliance with all federal antidiscrimination laws." Thus, the agency action Plaintiffs challenged in the SAC no longer exists and Plaintiffs' claims are moot. *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010).

Plaintiffs now seek to challenge the October 2025 GPS, but this claim is not properly before the Court. *Quinlan v. City of Seattle*, 2023 WL 9750576, *5 (W.D. Wash. Dec. 22, 2023) (It is improper to raise new claims in response to a summary judgment motion). While Plaintiffs' challenges to the March 14, 2025 DEI Letter remains, they have not obtained leave to amend to challenge the October 2025 GPS.

Plaintiffs argue that the voluntary cessation doctrine defeats mootness. Dkt. 125, pg. 11. But cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar actions by private parties. *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010). Specifically, "unlike in the case of a private party, [courts] presume the government is acting in good faith." *Id.* at 1180. There is no evidence to rebut this presumption, especially when the GPS has been amended twice since the April 2025 version and both times HHS did not reimpose a DEI certification.

**II.    Plaintiffs Lack Standing and their Claims are not Ripe for Review.**

It has now been eight months since the challenged actions occurred and Plaintiffs and their members still have not suffered a single grant termination, loss of funding, or program closure. Their predicted and feared disruption of statutorily mandated programs or grant denials has not materialized and there is no evidence these feared harms are imminent or impending.

Plaintiffs concede that no terminations or loss of funding has occurred. Instead, they

DEFENDANTS' REPLY
[2:25-cv-00781-RSM] - 2

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

argue that out of the nearly 200 agency members they represent that *one* program was "forced to close" because HHS did not respond regarding their funding status in the time they required. Dkt. 125, pg. 15. That one program voluntarily chose to close its doors instead of awaiting funding, which Plaintiffs do not allege was unlawfully terminated or delayed, but because they did not hear back as quickly as they wanted is not an injury redressable under the APA.

"The only agency action that can be compelled under the APA is action legally required." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (*SUWA*). Plaintiffs' allegations of a delay in receiving information regarding their funding are insufficient. There is no statutorily required timeline for making designation and funding decisions for Head Start grants.

Plaintiffs also cite "degraded services," but they do not and cannot allege that essential services are not being provided. Dkt. 125, pg. 15. They allege "diversion of staff time and resources" and "changes to trainings, program goals, hiring criteria." *Id.* at pgs. 15-16. But these are natural things that come with adapting to changes in policies that all federal grant recipients experience. They are not cognizable injuries in fact that require judicial intervention beyond the administrative remedies Congress has provided for through the Departmental Appeals Board.

**III.    The Civil Service Reform Act ("CSRA") Precludes Jurisdiction.**

Several courts that have considered challenges to agency RIFs and reorganization plans have held that the CSRA provides the exclusive means for review of personnel actions taken against federal employees. *See AFGE v. Trump (AFGE)*, 929 F.3d 748, 754-61 (D.C. Cir. 2019); *Am. Fed. of Gov't Emps., AFL-CIO v. Ezell*, 2025 WL 470459, at *2 (D. Mass. Feb. 12, 2025) (*AFGE 2*); *Nat'l Treasury Emps. Union v. Trump (NTEU)*, 2025 WL 561080, at *7 (D.D.C. Feb. 20, 2025); *American Foreign Service Association v. Trump*, 2025 WL 573762, at *8-10 (D.C.

DEFENDANTS' REPLY
[2:25-cv-00781-RSM] - 3

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

Cir. Feb. 21, 2025) (*AFSA I*); *Maryland v. U.S. Dep't. of Agriculture (Maryland)*, 2025 WL 1073657, at *1 (4th Cir. May 22, 2025).

Furthermore, the Supreme Court has stayed decisions of the First and Ninth Circuits relating to agency reorganization plans and RIFs. *See Trump v. Am. Fed'n of Gov't Emps.*, 606 U.S. __ 2025 WL 1873449 (July 8, 2025) (Mem.) (*AFGE 2*); *McMahon v. New York*, 606 U.S. __, 2025 WL 1922626 (July 14, 2025) (Mem.). Plaintiffs argue that the Supreme Court's decisions actually "supports the conclusion that Defendants' channeling argument is meritless." Dkt. 125, pgs. 12-13. But in *AFGE 2*, although the Court did not opine on the legality of any specific restructuring plan, *see* 145 S. Ct. at 2635, its reasoning and result indicate that the Supreme Court likely would side with the Government on core issues relating to the scope of Executive authority to reorganize Executive agencies. *AFGE 2*, 145 S. Ct. at 2635.

**IV. Plaintiffs Fail to State a Claim Under the APA.**

**A. Plaintiffs Do Not Challenge a Discrete, Final Agency Action.**

Plaintiffs essentially seek to challenge HHS's administration of the Head Start program from soup to nuts – from personnel and staffing decisions, to grant processing timing and funding decisions, to enforcement and compliance actions. The APA forbids this kind of broad programmatic attack against agency operations. The APA does not permit Plaintiffs to "seek wholesale improvement" of agency management "by court decree" - even in the face of allegations of "rampant" violations of law. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). "Because 'an on-going program or policy is not, in itself, a "final agency action" under the APA,' [a court's] jurisdiction does not extend to reviewing generalized complaints about agency behavior." *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) (citation omitted).

***RIFs and Restructuring.*** HHS's plans and decisionmaking for its RIFs and restructuring

DEFENDANTS' REPLY
[2:25-cv-00781-RSM] - 4

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

remain ongoing and are an evolving process. Plaintiffs argue that by beginning to implement RIFs "surely marks the culmination of the Agency's decisionmaking." Dkt. 125, pg. 17. But that contradicts the express language in the Secretary's March 27 Press Release and Fact Sheet which describe "specific contents of the restructuring plan that have been announced so far," and what HHS "will" do going forward. Dkt. 38, Ex. 8. The actions taken so far reflect a decision by HHS leadership that agency functions need to be streamlined and reorganized. HHS has begun taking steps to address that need. Those steps are "preliminary" in nature and "not directly reviewable."

**DEI/Anti-Discrimination Conditions**. The DEI Letter identifies HHS's funding priorities. Dkt. 38, Ex. 5. Similarly, the Anti-Discrimination conditions in the October 2025 GPS require grant recipients to certify "compliance with all federal antidiscrimination laws." Neither have legal consequences that flow directly from them.

Plaintiffs argue that the recipients are required to certify compliance with federal antidiscrimination laws under the False Claims Act, which constitutes legal consequences. Dkt. 125, pg. 18. But any legal consequences flow from the False Claim Act not the GPS.

**PRWORA Notice.** Although this Court has determined that Plaintiffs will likely succeed in showing that the Notice is a legislative rule rather than an interpretive rule, Dkt. 120, pg. 8, the government disagrees. The Notice is an interpretive rule that simply "reflects" HHS's interpretation of PRWORA and does not "modif[y] or add[] to a legal norm based on the agency's own authority." *Syncor Intern. Corp. v. Shalala*, 127 F.3d 90, 94-95 (D.C. Cir. 1997).

**B. HHS's Actions Are Not Arbitrary and Capricious.**

Judicial review under the arbitrary and capricious standard is "deferential," *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021), and a court must "uphold [even] a decision of less than ideal clarity if the agency's path may reasonably be discerned." *FCC v. Fox*

DEFENDANTS' REPLY
[2:25-cv-00781-RSM] - 5

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

*Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009) (citation omitted). Here, there is nothing arbitrary or capricious about requiring federal grantees to comply with federal antidiscrimination laws that they are already subject to, or to certify that they are doing so. Given HHS's significant discretion to impose appropriate terms and conditions on the receipt of federal funds, and general grantmaking requirements that the recipients of such funds follow federal law, the adoption of grant conditions that require recipients to certify their compliance with executive orders and federal anti-discrimination laws is not arbitrary or capricious.

***RIFs and Restructuring.*** HHS has acted reasonably in developing its RIFs and reorganization plans by focusing on reduction of wasteful spending, increased efficiency, increased responsiveness, coordinating chronic care and disease prevention programs, and combating waste, fraud, and abuse. Dkt. 38, Exs. 8-9. HHS aims to reduce redundancy and perform its core functions more efficiently "without impacting critical services" and statutorily mandated programs. *Id.*

Plaintiffs argue that HHS failed to consider how "OHS staff would fulfill their statutory obligations" and the "confusion, instability, and stress" they claim to experience because of the RIFs. Dkt. 125, pg. 19. But there is no evidence that OHS staff has not met a statutory obligation or that critical functions including health and safety monitoring, centralized communication between OHS and grantees, grant funding, and application processing have not continued. The fact that they may be in different forms or on different timelines does not equate to arbitrary and capriciousness.

"As the Supreme Court has 'repeated time and again, an agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities.'" *Scarborough Citizens Protecting Resources v. U.S. Fish and Wildlife Service*,

DEFENDANTS' REPLY
[2:25-cv-00781-RSM] - 6

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

674 F.3d 97, 101 (1st Cir. 2012) (quoting *Massachusetts v. EPA*, 549 U.S. 497, 527 (2007)). Thus, this Court must review only to ensure "that the agency has acted within a zone of reasonableness[.]" *Prometheus*, 592 U.S. at 423. HHS's actions satisfy this deferential review.

*DEI/Anti-Discrimination Conditions.* HHS acted reasonably in posting the March 14, 2025 letter to grant recipients to inform them of the Agency's funding priorities and to revise the GPS to include an Anti-Discrimination condition, which has always been true. Plaintiffs argue that HHS failed to consider that the "vague prohibitions" would conflict with other laws. Dkt. 125, pg. 20. But there is no evidence that the DEI Letter creates any legal rights or responsibilities or consequences or conflicts with any other laws standing alone. If HHS takes an action that does conflict with another law, Plaintiffs can seek recourse based on that action, if available. Furthermore, the anti-discrimination certification is simply certifying recipients are complying with existing law, it does not *conflict* with existing law.

*PRWORA Notice.* Although this Court has determined that Plaintiffs will likely succeed in establishing that Defendants failed to consider reliance interests when issuing the Notice, Dkt. 120, pg. 14, the government disagrees. *DHS v. Regents of the University of California*, 591 U.S. 1, 60 (2020) is distinguishable from this case and that it is not arbitrary or capricious for an agency to decline to adopt an incorrect reading of a statute merely because the correct reading of the text comes with practical costs. *See Rust v. Sullivan*, 500 U.S. 173, 187 (1991).

**C. There is No Agency Action Unlawfully Withheld.**

Plaintiffs do not identify any "specific, unequivocal command" to which HHS is subject such that the Court could "order[] . . . a precise, definite act." *SUWA*, 542 U.S. at 63 (citations omitted). Plaintiffs argue that the Head Start Act requires HHS to assure the financial assistance will not be suspended unless the agency has been given notice and an opportunity to be heard.

DEFENDANTS' REPLY  
[2:25-cv-00781-RSM] - 7

UNITED STATES ATTORNEY  
700 Stewart Street, Suite 5220  
Seattle, Washington 98101-1271  
206-553-7970

Dkt. 125, pg. 18. But they have not shown that any of their member agencies have had financial assistance suspended, let alone without notice and an opportunity to be heard. Plaintiffs' citation to a GAO report finding that HHS withheld appropriated funds from disbursement does establish that any of Plaintiff's 200 agency members had funds suspended such that this Court could compel agency action unlawfully withheld under the APA.

**D. HHS was not required to engage in rule making.**

First and foremost, grants are explicitly excluded from APA rule making requirements. 5 U.S.C. § 553(a)(2). The rule making requirements under the APA do not apply to "a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts." *Id.*

*DEI/*Anti-Discrimination Conditions.* The DEI Letter is not a rule. Rather, it is a notice to grant recipients published on its website informing them of funding priorities, which the OHS regularly does to communicate with the grant recipient community. Plaintiffs argue that the Head Start Act requires notice and comment for rules, regulations, and application forms and it should apply equally to OHS communications with grant recipients. Dkt. 125, pg. 21. This is incorrect. OHS regularly puts out sub-regulatory guidance documents, program instructions, information memorandum, etc., all in an effort to clarify requirements or give grant recipients more information about the program. The DEI letter does not impose new requirements on grant recipients, it simply gives information on funding priorities and gives notice that in future applications, OHS will not approve DEI program expenditures.

*PRWORA Notice.* Although this Court has determined that Plaintiffs will likely succeed in showing that the Notice is a legislative rule rather than an interpretive rule, Dkt. 120, pg. 8, the government disagrees. The PRWORA Notice is an interpretive rule, and the procedural

DEFENDANTS' REPLY
[2:25-cv-00781-RSM] - 8

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

requirements for rulemaking under the APA, do not apply to "interpretative rules." *Shalala v. Guernesy Memorial Hosp.*, 514 U.S. 87, 99 (1995); *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 97 (2015).

### E. HHS's Actions are in Accordance with Law and Within Statutory Authority.

The Executive Orders that the challenged agency actions are based on require that they be implemented consistent with applicable law and statutory authority. EO 14,151 § 4(b); EO 14,173 § 8(b); EO 14210 §§ 3(b)(1); 3(c); 5(b); Memorandum §§ II; IV(2). Plaintiffs have failed to show that the steps HHS has taken to begin to implement these Orders violates, or will imminently violate, a specific statutory requirement.

*RIFs and Restructuring.* Plaintiffs argue that the RIFs and restructuring "contradict Congress's directives" that Head Start must operate at the current capacity. Dkt. 125, pg. 23. But there is no statutory mandate requiring the ACF or the OHS to maintain a certain staff level or a certain number of divisions. Plaintiffs also argue that the RIFs and reorganization plans have caused "delay, uncertainty and confusion" about the status of their funding. *Id.* But again, there is no statutorily required timeline for making designation and funding decisions for Head Start grants and Plaintiffs have no entitlement to these grants.

*PRWORA.* Although this Court has determined that Plaintiffs are likely to succeed on their claim that the Notice is contrary to law and in excess of statutory authority, Dkt. 120, pgs. 10-13, the government disagrees. HHS's Notice interpreting PRWORA is consistent with Congressional intent and a plain reading of the statute.

### IV.     Plaintiffs Fail to State a Claim Under Separation-of-Powers or Spending Clause Principles.

The Supreme Court rejected the notion that "every action by the President, or by another executive official, in excess of his statutory authority is ipso facto in violation of the Constitution."

DEFENDANTS' REPLY  
[2:25-cv-00781-RSM] - 9

UNITED STATES ATTORNEY  
700 Stewart Street, Suite 5220  
Seattle, Washington 98101-1271  
206-553-7970

*Dalton v. Specter*, 511 U.S. 462, 472 (1994). HHS's imposition of routine requirements that recipients of Head Start grants comply with various provisions of federal law does not exceed the Agency's statutory authority. The Court should dismiss Plaintiffs' attempt to constitutionalize their garden-variety statutory claim. *See*, *e.g.*, *Building and Const. Trades Dept., AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.D.C. July 12, 2002).

*RIFs and Restructuring.* HHS has not refused to spend appropriated funds on statutorily required programs or withhold funds. Rather, HHS has decided to save taxpayer money by consolidating functions and reducing personnel redundancy, which is not inherently inconsistent with spending appropriated funds. Plaintiffs argue that the RIFs and reorganization plans have caused "uncertainty, delays and interruptions in services, and even program closures." Dkt. 125, pg. 25. But they have not and cannot allege that HHS has imposed additional conditions on appropriate funds or refused to spend appropriated funds. Again, disruptions in services does not equate to a refusal to spend appropriated funds.

*DEI/Anti-Discrimination Conditions.* HHS has made an *allocation* choice about *what* the funding should be spent on, which can be made without explicit congressional approval. *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993). The allocation choice reflected in the DEI Letter is not at odds with the Head Start Act or appropriations.

Plaintiffs argue that the allocation decision conflicts with the Head Start Act because programs will not be able to meet the diverse needs of the population served. Dkt. 125, pg. 25. But the DEI Letter does not state that Head Start agencies cannot serve or recruit from diverse populations, offer services to children with diverse backgrounds, or meet the diverse needs of the population served. Plaintiffs are reading restrictions into the Letter that are simply not there.

*PRWORA Notice.* The Notice does not impose new funding conditions on grantees.

DEFENDANTS' REPLY  
[2:25-cv-00781-RSM] - 10

UNITED STATES ATTORNEY  
700 Stewart Street, Suite 5220  
Seattle, Washington 98101-1271  
206-553-7970

Plaintiffs argue that it limits eligibility based on immigration status thereby imposing a new funding condition on grantees. Dkt. 125, pg. 26. But rather than imposing new funding conditions, the Notice describes funding conditions that were unambiguously outlined by Congress in PRWORA at the time of the statute's enactment.

### V.    Plaintiffs Fail to State a Fifth Amendment Claim.

Plaintiffs argue that they have a property interest in Head Start grants because it could lead to loss of existing designation and funding. Dkt. 125, pgs. 28-29. But Plaintiffs fail to establish a protectable property interest. "The procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit': 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire'" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756 (2005) (citation omitted). The narrow set of government benefits that are afforded protected under the Due Process Clause are entitlement-like benefits. This protection has never been extended to "'ordinary' or 'routine' government contracts." *See generally Eloyan v. United States*, 2020 WL 7382316, at *5-6 (C.D. Cal. Oct. 21, 2020). Such an extension would be particularly inappropriate in the grant context where agencies, by regulation, may generally terminate a grant at any time if they determine the grant "no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4).

Plaintiffs also argue that the DEI Letter fails to define its terms and conflicts with the Head Start Act's mandate to meet the diverse needs of the community. Dkt. 125, pg. 27. First, as discussed above, the Letter does not state that Head Start agencies cannot serve or recruit from diverse populations, offer services to children with diverse backgrounds, or meet the diverse needs of the population served.

DEFENDANTS' REPLY
[2:25-cv-00781-RSM] - 11

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

Second, that level of strict scrutiny is not applicable in grant funding. The Due Process Clause's vagueness doctrine - which traditionally "guarantees that ordinary people have 'fair notice' of the conduct *a statute* proscribes," *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018) (plurality op.) (emphasis added) - has no application here in a case about take-them-or-leave-them federal funding conditions. When courts have applied the doctrine outside of the statutory context, they have done so with respect to direct regulation of primary conduct. *See Fox Television*, 567 U.S. at 253. That is because the Due Process Clause prohibits uneven enforcement of coercive sanctions, not the discretion to affirmatively fund the work of grant recipients. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 589 (1998).

Finally, although Plaintiffs argue that a violation of the DEI Letter could lead to False Claims Act violations and loss of funding, they do not and cannot cite an instance where this has happened. Dkt. 125, pgs. 27-28. The facial nature of Plaintiffs' claims make them particularly ill-suited for the vagueness doctrine. As the Supreme Court has emphasized, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a [regulation] when it is surely valid in the vast majority of its intended applications." *Hill v. Colorado*, 530 U.S. 703, 733 (2000). Because "[o]bjections to vagueness under the Due Process clause rest on the lack of notice," they may "be overcome in any specific case where reasonable persons would know that their conduct is at risk," *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988), and the Court should decline to award sweeping relief in this pre-enforcement posture.

Ultimately, the Supreme Court has already made clear that Plaintiffs' concerns about the ability to use grant funds to meet the diverse needs of their communities do not render the DEI Letter and the anti-discrimination certification void for vagueness. Even when the government

DEFENDANTS' REPLY
[2:25-cv-00781-RSM] - 12

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

uses "opaque" language in its funding conditions that would raise "substantial vagueness concerns" in the context of a "criminal statute or regulatory scheme," *Finley*, 524 U.S. at 588, so long as the government "is acting as patron rather than as sovereign, the consequences of imprecision are not constitutionally severe." *Id.* at 589.

### VI. Plaintiffs Fail to State a First Amendment Claim.

Plaintiffs challenge the DEI Letter on its face rather than as applied. *See National Urban League v. Trump (NUL)*, 2025 WL 1275613, at *13-16 (D.D.C. May 2, 2025). "Even in the First Amendment context, facial challenges are disfavored." *Moody v. NetChoice*, LLC, 603 U.S. 707, 744 (2024). Plaintiffs fail to establish that the DEI Letter "prohibits a substantial amount of protected speech relative to [their] plainly legitimate sweep," as required to establish facial unconstitutionality. *United States v. Hansen*, 599 U.S. 762, 770 (2023) (citation omitted).

Plaintiffs argue that the DEI Letter is not limited to federally funded activities. Dkt. 125, pg. 30. But, similar to the Executive Orders related to DEI, the DEI letter simply identifies funding priorities and does not prohibit grant recipients from doing equity-related work outside their contracts or promoting gender ideology with non-federal funds. *See NUL*, 2025 WL 1275613, at *21-22. In this way, the provisions do not "prohibit[ ] the recipient from engaging in the protected conduct outside the scope of the federally funded program" or contract. *Id.* The provisions, in other words, are part of a government effort "to fund one activity to the exclusion of another"—or to contract for certain purposes to the exclusion of others—which does not amount to "discriminat[ion] on the basis of viewpoint." *Rust v. Sullivan*, 500 U.S. 173, 193 (1991).

The DEI Letter pertains to the Government's sponsorship rather than regulation of speech. It is well established that the Government's spending is not subject to traditional First-

DEFENDANTS' REPLY
[2:25-cv-00781-RSM] - 13

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

Amendment scrutiny. "The Government can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest. . . . In so doing, the Government has not discriminated on the basis of viewpoint; it has merely chosen to fund one activity to the exclusion of the other." *Id.* Thus, "[a]s a general matter, if a party objects to a condition on the receipt of federal funding, its recourse is to decline the funds. This remains true when the objection is that a condition may affect the recipient's exercise of its First Amendment rights." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013) (collecting cases) ("*Open Society*").

HHS's DEI Letter does not impose an unconstitutional condition on Plaintiffs' speech. Rather, as permitted under *Rust* and *Open Society*, the provisions align the Government's sponsorship of activities with its policy priorities. The Letter does not prohibit grant recipients from engaging in protected speech on their "own time and dime." *Open Society*, 570 U.S. at 218. As the Supreme Court has repeatedly held, the Government does not penalize, prohibit, restrict, or otherwise infringe on speech simply because it chooses not to pay for it. *See, e.g.*, *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358 (2009); *United States v. Am. Libr. Ass'n*, 539 U.S. 194, 212 (2003); *Leathers v. Medlock*, 499 U.S. 439, 450 (1991). Simply put, the Government is permitted to have policy priorities, and the Government does not violate the First Amendment by declining to fund programs that do not align with those policies.

//
//
//
//
//

DEFENDANTS' REPLY
[2:25-cv-00781-RSM] - 14

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1 | DATED this 19th day of November, 2025.

Respectfully submitted,

CHARLES NEIL FLOYD
United States Attorney


*s/ Kristin B. Johnson*
KRISTIN B. JOHNSON, WSBA #28189
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone No. (206) 553-7970
Fax No. (206) 553-4073
Email: kristin.b.johnson@usdoj.gov

*Attorneys for Defendants*

I certify that this memorandum contains 4,120 words, in compliance with the Local Civil Rules

DEFENDANTS' REPLY
[2:25-cv-00781-RSM] - 15

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970