The Honorable Ricardo S. Martinez

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

WASHINGTON STATE ASSOCIATION OF HEAD START AND EARLY CHILDHOOD ASSISTANCE AND EDUCATION PROGRAM, ILLINOIS HEAD START ASSOCIATION, PENNSYLVANIA HEAD START ASSOCIATION, WISCONSIN HEAD START ASSOCIATION, FAMILY FORWARD OREGON, and PARENT VOICES OAKLAND,

*Plaintiffs*,

v.

ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ANDREW GRADISON, in his official capacity as Acting Assistant Secretary of the Administration for Children and Families; ADMINISTRATION FOR CHILDREN AND FAMILIES; OFFICE OF HEAD START; and TALA HOOBAN, in her official capacity as Acting Director of the Office of Head Start,

*Defendants*.

Case No. 2:25-cv-00781-RSM

**MOTION TO SUPPLEMENT THE RECORD ON PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

NOTE ON MOTION
CALENDAR: December 26, 2025

MOTION TO SUPPLEMENT THE RECORD
ON PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION -- 1
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

Plaintiffs move for leave to supplement the record in support of Plaintiffs' pending Motion for a Preliminary Injunction, ECF No. 37, with two declarations and related exhibits. In the last three weeks, Plaintiffs have been made aware of additional evidence of the scope of and ongoing harm caused by Defendants' DEIA Ban, including an extraordinary six-page list of content that Defendants no longer permit Head Start agencies to include in their program funding applications. This evidence decisively demonstrates that the Ban extends far beyond the scope of existing anti-discrimination laws and that noncompliance puts programs' funding at immediate risk, directly contradicting Defendants' repeated assertions to the contrary. It is further evidence that the Ban violates the rights of Plaintiffs' members, and forces Head Start Association Plaintiffs' members to make the impossible choice between their obligations under the Head Start Act and those under the Ban. *See* Roe; Ryan Second Supp. Because this new evidence is relevant, offered in good faith, and does not unfairly prejudice Defendants, Plaintiffs respectfully request the Court grant the motion to supplement the record.

### FACTUAL BACKGROUND

Since the government reopened on November 12, 2025, Head Start Association Plaintiffs' members have informed Plaintiffs that Defendants are rejecting non-competitive grant applications for violating the Defendants' DEIA Ban because of aspects of their applications that are required by the Head Start Act and Head Start Program Performance Standards.

First, Defendant Office of Head Start (OHS) rejected the non-competitive grant application of Mary Roe's Head Start Agency, a member of Plaintiff Wisconsin Head Start Association, on November 19, 2025. *See* Roe ¶¶ 9-10. A Program Specialist[1] from Defendants' OHS instructed Roe's Head Start Agency that in order to have its non-competitive grant processed, it had to remove the following words from the application: "Racism," "Race," "Racial," "marginalized," "institutional," "historically," "bias," "Equity," "equitable,"

---

[1] The name of the Program Specialist has been redacted to protect the privacy of the individual employee as the individual's identity is not material to the relevance of the evidence.

MOTION TO SUPPLEMENT THE RECORD
ON PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION -- 2
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

"diversity," "diverse," "belonging," "inclusion," "inclusivity," "gender," "chestfeeding," "pregnant people," or "LGBTQIA 25+." Roe ¶ 10; *id.* Ex. B. Further, Defendants' Program Specialist sent Roe an email with a six-page attachment setting forth "the complete list of words to make sure are not in [its] applications." Roe ¶¶ 11-12; *id.* Ex. C. This list contains 197 banned words and concepts, including, but not limited to, "advocate," "Black," "cultural competence," "culturally appropriate," "disability," "discrimination," "diverse," "equal opportunity," "female," "feminism," "gender," "health disparity," "[H]ispanic minority," "identity," "immigrants," "inclusion," "inclusive," "intersectional," "indigenous community," "Latinx," "LGBTQ," "mental health," "multicultural," "Native American," "people centered," "race," "sense of belonging," "socioeconomic," "trauma," "tribal," "underrepresented," "victim," "vulnerable populations," and "women." *Id.* Ex. C.

As Roe explains in her declaration, without being able to use some of the banned words, the program is unable to accurately describe the results of its community needs assessment, which is a foundational part of both the grant application and the development and ongoing improvement of the program's services. Roe ¶ 15. And the program is unable to appropriately describe how it meets the requirements of the Head Start Act and the Head Start Performance Standards—or even respond according to the Application Instructions, each of which use many of the words that have been banned. Roe ¶¶ 14-18. Unless Roe's Head Start Agency complies with the Defendants' DEIA Ban, its application will not move forward; it has no option to appeal. Roe ¶ 13. But by complying with the DEIA Ban, Roe's application risks being out of compliance with the application's own instructions, the Head Start Act, and the Head Start Performance Standards. *See, e.g.*, 45 C.F.R. § 1304.5(a) ("Grounds to terminate financial assistance or deny a grant recipient's application for refunding" include "[t]he grant recipient has failed to comply with requirements in the Act"). Thus, the program is put in an impossible double-bind: both options put its ability to continue to provide Head Start services to its community at imminent risk. Roe ¶ 20.

MOTION TO SUPPLEMENT THE RECORD
ON PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION -- 3
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

Moreover, the extraordinary list of banned words and concepts has a profound chilling effect on the speech and substantive services of HSA Plaintiffs' members. For example, if Roe's Head Start Agency is not permitted to include a description of services that the program provides for children with disabilities in its application, it suggests the program may also be prohibited from continuing to offer these services. Roe ¶ 19. It also suggests that if Roe's Head Start Agency continues to use its speech to convey to the public that it offers these services may make the Agency a target, chilling their speech. *Id.* The Defendants' clear message is that any services or speech that touch on the 197 disfavored words and concepts are a basis for penalty or termination.

Second, Defendant OHS returned the grant application of a member of Washington State Association of Head Start and Early Childhood Assistance and Education Program (Washington HSA), which operates an American Indian and Alaska Native (AIAN) program on a Native American reservation. Ryan Second Supp. ¶¶ 4-5. The e-mail from Defendants' Program Specialist[2] directed the AIAN Head Start program that they "must" (1) "Remove the Eligibility and Selection Criteria document from [their] application package"; (2) "Revise [their] Training and Technical Assistance (T/TA) Plan to remove all Diversity and Inclusion-related activities"; and (3) "Resubmit the corrected application once the revisions were complete." Ryan Second Supp. Ex. A. Revisions were required in order to "resubmi[t]" the application. *Id.*

Defendants' direction that Plaintiff Washington HSA's member must remove the "Eligibility and Selection Criteria" requires the program operated by a tribe on a reservation eliminate enrollment prioritization for tribal members and descendants from their "application package"—selection criteria explicitly authorized by the Head Start Act and important to the program's ability to meet the needs of its community. Ryan Second Supp. ¶¶ 10-13. The Head Start Act provides that "an Indian tribe that operates a Head Start program may, at its discretion, establish selection criteria, including criteria to prioritize children in families for which a child, a

---

[2] The name of the Program Specialist has been redacted to protect the privacy of the individual employee as the individual's identity is not material to the relevance of the evidence.

MOTION TO SUPPLEMENT THE RECORD
ON PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION -- 4
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

family member, or a member of the same household, is a member of an Indian tribe, to enroll children who would benefit from the Head Start program." Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, § 238, 138 Stat. 460, 681 (2024), https://www.congress.gov/bill/118th-congress/house-bill/2882; *see* ACF, ACF-OHS-PI-24-03, New Eligibility Provisions for American Indian and Alaska Native Programs (2024).

The "Training and Technical Assistance" which Plaintiff Washington HSA's member was required to remove is: (a) professional development for staff on providing trauma-informed instruction, which was added at the request of parents and staff members, and is essential to retain the trust of families on reservations and meet the specific needs of the community, Ryan Second Supp. ¶¶ 15-16,  and (b) professional development for staff on working with children with autism spectrum disorder, who make up more than 10% of the program, and is necessary for the program to provide effective education and equal opportunity to children with disabilities, *id.* ¶¶ 17-20. Forced to remove this professional development from the grant application, the Washington HSA member does not know how it will be able to provide staff with the tools that they need to meet the needs of the children in their program nor how they will comply with their obligations under the Head Start Act and Section 504. Ryan Second Supp. ¶¶ 11, 16, 20, 21.

Both declarations attest that the respective Head Start programs understand these recent instructions from OHS employees to be conditions of continued funding and operation of Head Start program for the 2026 program year.  Roe ¶ 13; Ryan Second Supp. ¶ 23.

## LEGAL STANDARD

The district court has discretion in deciding whether to grant a motion to supplement the record. *See Resilient Floor Covering Pension Tr. Fund Bd. of Trs. v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1088 (9th Cir. 2015) ("[w]e review for abuse of discretion a district court's denial of a motion to supplement the record." (quoting *E.E.O.C. v. Peabody W. Coal Co.*, 773 F.3d 977, 982 (9th Cir. 2014))).

MOTION TO SUPPLEMENT THE RECORD
ON PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION -- 5
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

"In determining whether to grant a motion to supplement the record, district courts consider: (1) whether the evidence the party is seeking to admit is relevant; (2) whether the motion is made in good faith; and (3) whether supplementation would unfairly prejudice the non-moving party." *Shijiazhuang Hongray Grp. v. World Trading 23 Inc.*, No. 5:21-CV-00972-FWS-KK, 2023 WL 6370924, at *2 (C.D. Cal. Aug. 14, 2023); *see also Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 696 n.14 (9th Cir. 2023) (en banc) (holding district court's denial of motion to supplement the preliminary injunction record was an abuse of discretion where the proffered evidence was "highly probative"); *George v. Nw. Mut. Life Ins. Co.*, 2011 WL 3881476, at *4 (W.D. Wash. Sept. 1, 2011) (granting a motion to supplement where the new evidence was "directly relevant to the central issues in this matter," "disregard[ing] it simply because it was discovered outside the discovery period would not serve the interests of justice," and there was no evidence that the moving party "acted in bad faith in failing to bring the [evidence] to the Court at an earlier date").

## ARGUMENT

The Court should exercise its discretion to allow Plaintiffs to supplement the record in support of their Motion for a Preliminary Injunction, ECF No. 37, because the evidence is highly relevant, offered in good faith, and does not unfairly prejudice the non-moving party.

Relevance. The evidence contradicts Defendants' repeated assertions about the scope of the DEIA Ban and confirms the plain meaning and effect of the March 2025 Letter to ban all activities that "promote" "diversity, equity, and inclusion (DEI) initiatives," without regard to whether such activities are currently proscribed by anti-discrimination law. *See* Calvo-Friedman Exs. 5, 6 (ECF Nos. 38-5, 38-6). In their Motion for a Preliminary Injunction, Plaintiffs challenge Defendants' DEIA Ban and seek an order enjoining Defendants from enforcing or implementing the DEIA Ban. ECF No. 37, 37-1. The supplemental evidence Plaintiffs offer is directly relevant to the scope of the DEIA Ban and Defendants' arguments about the ripeness of the challenge and whether Plaintiffs are suffering irreparable harm. *See* Fed. R. Evid. 401 ("Evidence is relevant if:

MOTION TO SUPPLEMENT THE RECORD
ON PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION -- 6
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

First, in opposing Plaintiffs' motion for a preliminary injunction, Defendants have argued the DEIA Ban only "emphasizes," "remind[s]," "prioritizes," "highlights," and "reinforces," compliance with "preexisting legal obligations" under anti-discrimination laws. Opp. 12, 15, 19, 22, 27-29, 32 (ECF No. 59). The additional evidence clearly establishes that the meaning and scope of the DEIA Ban extend far beyond enforcement of anti-discrimination law. Defendants' list of prohibited words and concepts provides additional evidence that their DEIA Ban imposes extraordinarily broad restrictions on the very content and programs required by the Head Start Act. *Compare* Opp. 27 (DEIA Ban "do[es] not prevent Head Start agencies from serving and recruiting from diverse populations, offering services to children with diverse backgrounds, or meeting the diverse needs of the population served") *with* Ryan Second Supp. Second Supp. ¶¶ 10-21 (required by Defendants to remove from grant application policies and programing necessary to meet the needs of population served, namely Native American families and children with disabilities); Roe ¶¶ 15-20 (required by Defendants to remove portions of application that enable it to serve and recruit children most in need of their services and to provide services to meet the needs of children with diverse backgrounds).

Second, the supplemental evidence also demonstrates that, contrary to Defendants' repeated (and unsupported) assertions that Plaintiffs' claims are not ripe and Plaintiffs are not currently being subjected to irreparable harm, Defendants are currently implementing and enforcing the DEIA Ban through the grant administration process, by which Defendants renew grant funding to agencies already designated to provide Head Start. If Head Start agencies do not make the changes Defendants demand, funding and operation of their Head Start programs will be put at immediate risk. Ryan Second Supp. ¶¶ 22-23; Roe ¶ 13. When a grant application is returned to a Head Start program, they do not have any option to appeal that decision. Their only

MOTION TO SUPPLEMENT THE RECORD
ON PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION -- 7
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

options are to either comply with the instructions from Defendants or have their renewal applications not move forward.

The supplemental evidence also shows that Defendants' implementation and enforcement of the DEIA Ban are causing current irreparable harm, including "actual, substantive programmatic changes with consequences that money cannot remedy." *S.F. Unified Sch. Dist. v. AmeriCorps*, No. 25-CV-02425-EMC, 2025 WL 974298, at *3 (N.D. Cal. Mar. 31, 2025) (internal quotations omitted); *see Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 519 (N.D. Cal. 2017). The imminent degradation of critical services because of substantive programmatic changes required by the DEIA Ban also causes the Parent Plaintiffs' irreparable harm. *See* ECF No. 65 at 9. Additionally, Plaintiffs are forced to modify their speech, including communications to the communities they serve, to comply with the Ban. *See* ECF No. 37 at 29; ECF No. 65 at 10. Moreover, HSA Plaintiffs' members are put to a "Hobson's choice," which will result in "a very real penalty" regardless of how they proceed. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009). Complying with making the changes that Defendants' have instructed are required by the DEIA Ban risks penalties for non-compliance with the requirements of the Head Start Act and application instructions. *See* 45 C.F.R. § 1304.5(a); Roe Ex. A. Failing to comply with the DEIA Ban would at the very least delay funding needed to continue with Head Start operations and risks funding and designation status being eliminated. Ryan Second Supp. ¶¶ 22-23; Roe ¶ 13; *see* ECF No. 37 at 28; ECF No. 65 at 8.

Good Faith. Plaintiffs make this motion in good faith because the newly discovered evidence is highly relevant to the issues presented in their pending Motion for a Preliminary Injunction. Plaintiffs have been diligent both in obtaining additional evidence and in promptly presenting this evidence to the Court. Plaintiffs have filed this motion to supplement less than three weeks after the events described in the supplemental evidence. *See Udd v. City of Phoenix*, No. CV-18-01616-PHX-DWL, 2020 WL 1904638, at *3 (D. Ariz. Apr. 17, 2020) (finding the

MOTION TO SUPPLEMENT THE RECORD
ON PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION -- 8
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

moving party was diligent where party moved to supplement less than a month after discovering new evidence).

No Unfair Prejudice. Defendants will not be unfairly prejudiced by the supplementation of the record because it is evidence of the Defendants' own words and instructions, and thus is already known to Defendants. *See George*, 2011 WL 3881476, at *5 (finding no prejudice when opposing party was aware of the evidence).

**CONCLUSION**

Because the supplemental evidence is relevant to Plaintiffs' Motion for Preliminary Injunctive relief, is made in good faith, and would not unfairly prejudice Defendants, Plaintiffs respectfully request the Court grant its motion to supplement the record in the Court's consideration of Plaintiffs' pending Motion for a Preliminary Injunction.

\*\*\*

The undersigned certifies that this motion contains 2,491 words, in compliance with the Local Civil Rules.

Dated: December 5, 2025

Ming-Qi Chu (*pro hac vice*)
Jennesa Calvo-Friedman (*pro hac vice*)
Linda S. Morris* (*pro hac vice)*
*admitted in State of Maryland*
Viviana Bonilla López (*pro hac vice*)
Lee Gelernt (*pro hac vice* forthcoming)
Omar Jadwat (*pro hac vice* forthcoming)
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
mchu@aclu.org

Laboni A. Hoq (*pro hac vice*)
HOQ LAW APC
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION

Respectfully submitted,

By:    /s/    David Montes
David Montes (WSBA No. 45205)
La Rond Baker (WSBA No. 43610)
Brent Low (WSBA No. 61795)
AMERICAN CIVIL LIBERTIES
    UNION OF WASHINGTON
P.O. BOX 2728
Seattle, Washington 98111-2728
Tel: (206) 624-2184
baker@aclu-wa.org

Kevin M. Fee (*pro hac vice*)
Allison Siebeneck (*pro hac vice*)
ROGER BALDWIN FOUNDATION OF
    ACLU, INC.
150 N. Michigan Ave, Suite 600
Chicago, IL 60601

MOTION TO SUPPLEMENT THE RECORD
ON PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION -- 9
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

(Cooperating Attorney)
P.O. Box 753
South Pasadena, CA 91030
Tel: (213) 977-9004
laboni@hoqlaw.com

S. Starling Marshall (*pro hac vice*)
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212)223-4000
Smarshall@crowell.com

Skye Mathieson (*pro hac vice*)
Lucy Hendrix (*pro hac vice* forthcoming)
Emily P. Golchini (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave NW
Washington, DC 20004
Tel: (202) 624-2500
Smathieson@crowell.com

Tel: (312) 201-9740
kfee@aclu-il.org

Lindsay Nako (*pro hac vice*)
Lori Rifkin (*pro hac vice*)
Fawn Rajbhandari-Korr (*pro hac vice*)
Meredith Dixon (*pro hac vice*)
Megan Flynn (*pro hac vice*)
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Tel: (510) 845-3473
lrifkin@impactfund.org

Edward T. Waters (*pro hac vice*)
FELDESMAN LEIFER LLP
1129 20th Street NW, 4th Floor
Washington, DC 20036
Tel: (202) 466-8960
ewaters@feldesman.com

MOTION TO SUPPLEMENT THE RECORD
ON PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION -- 10
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184