The Honorable Ricardo S. Martinez

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| WASHINGTON STATE ASSOCIATION OF HEAD START AND EARLY CHILDHOOD ASSISTANCE AND EDUCATION PROGRAM, ILLINOIS HEAD START ASSOCIATION, PENNSYLVANIA HEAD START ASSOCIATION, WISCONSIN HEAD START ASSOCIATION, FAMILY FORWARD OREGON, and PARENT VOICES OAKLAND, *Plaintiffs,* v. ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ANDREW GRADISON, in his official capacity as Acting Assistant Secretary of the Administration for Children and Families; ADMINISTRATION FOR CHILDREN AND FAMILIES; OFFICE OF HEAD START; and TALA HOOBAN, in her official capacity as Acting Director of the Office of Head Start, *Defendants.* | Case No. 2:25-cv-00781-RSM<br><br>**SECOND SUPPLEMENTAL DECLARATION OF JOEL RYAN IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |
|---|---|



A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

I, Joel Ryan, hereby attest as follows:

1. I am over eighteen years old, and I have personal knowledge of the facts set forth below. If called to testify about them, I could and would be able to do so competently.

2. I am the Executive Director of the Washington State Association of Head Start and Early Childhood Assistance and Education Program (Washington HSA), which represents Head Start providers and families.

3. I incorporate all of the facts and allegations contained in my previously submitted declarations in this case.

4. On November 21, 2025, one of the members of Washington HSA contacted me because its recent grant application was returned with specific instructions to remove certain content from its application.

5. The member that contacted me is one of Washington HSA's American Indian and Alaska Native (AIAN) member programs. The Head Start program is operated by a tribe on a Native American reservation.

6. As a Head Start Program operated by "an Indian tribe," under the Head Start Act it "may, at its discretion, establish selection criteria, including criteria to prioritize children in families for which a child, a family member, or a member of the same household, is a member of an Indian tribe, to enroll children who would benefit from the Head Start program." Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, § 238, 138 Stat. 460, 681 (2024).

7. To serve the needs of the community on the reservation, this program has selection criteria that prioritize tribal members and descendants. It also preserves and promotes cultural traditions and community.

8. The program fears retaliation from the current administration, as well as harassment and threats from members of the public, for challenging the policies and practices of the Trump administration related to the DEIA Ban and therefore wishes to remain anonymous.



A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

9. The Program Director received an email on November 20, 2025, stating that its grant application was "returned" for "containing language that is not allowable under current federal guidance," which they understood to be a reference to the ban on Diversity, Equity, Inclusion, and Accessibility. The e-mail is attached as **Exhibit A** (redacted only to remove identifying information). The email told the AIAN Head Start program that it "must" (1) "Remove the Eligibility and Selection Criteria document from [their] application package"; (2) "Revise [their] Training and Technical Assistance (T/TA) Plan to remove all Diversity and Inclusion-related training activities"; and (3) "Resubmit the corrected application once the revisions [we]re complete." *Id.* Revisions were required in order to "resubmi[t]" the application. *Id.* Based on the e-mail and conversations from the U.S. Department of Health and Human Services, Administration for Children and Families, Office of Head Start Program Specialist, the AIAN Head Start program was forced to make three substantial changes to its application.

10. First, the program removed the Eligibility and Selection Criteria Document from the grant application, including the selection criteria that prioritize tribal members and their descendants for enrollment. It was shocking to this program, that is located on a reservation and is an important part of the community, that they are forced to remove this selection criteria that is expressly authorized by the Head Start Act. *See* Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, § 238, 138 Stat. 460, 681 (2024).

11. Based on these instructions from the Office of Head Start, the program does not know what criteria it is supposed to use to determine enrollment for the program going forward. The program fears that if it continues to use its selection criteria after removing the "Eligibility and Selection Criteria document from your application package," it will be penalized during a monitoring review.

12. Currently, approximately 70 percent of children enrolled in this program are tribal members and their children. This number will likely be significantly lower if the program is not permitted to prioritize enrolling tribal members and their children.



A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

13. Changing their selection criteria to remove a preference for tribal members and their children will significantly damage the relationship between the families and the program, resulting in fewer parents enrolling their children in the program.

14. Second, based on the November 20, 2025, email and subsequent phone conversations, the program was forced to remove professional development for staff on providing trauma-informed instruction.

15. The training on providing trauma-informed instruction was added to the program's professional development offerings at the request of multiple parents and staff members. The program's enrollment contains a very high number of students who have lost family members due to physical and emotional abuse, death, drug/alcohol abuse, abandonment, and even murder. Additionally, the program has a significant number of children who no longer live with their parents. Therefore, it is imperative that the staff know how to best support these children and their families. Trauma-informed training helps staff understand what is needed, physical and emotional safety, trustworthiness and transparency, choice, collaboration, and empowerment.

16. For this Head Start program, providing early education services using trauma informed practices is essential to retain the trust of the families that they serve. Therefore, training on trauma informed instruction is necessary to meet the program's duty under the Head Start Act to provide services that meet the specific needs of their community. *See* 42 U.S.C. 9836(d)(2)(L); 45 C.F.R. 1302.11(b). Forced to remove this professional development from the grant application, the Program Director does not know how to provide staff with the tools that they need.

17. Third, based on the November 20, 2025 email and subsequent phone conversations, the program was forced to remove professional development for staff on working with children with autism spectrum disorder (autism).

18. Staff members had specifically requested training on working with children with autism, since more than ten percent of the students in their program have autism.



A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

19. Since autism is multifaceted and so different from child to child, training is necessary to help teachers learn about appropriate practices and opportunities for inclusion, and how to provide the best learning environment for *all* children in their classrooms. As just one example, the Program Director has identified that staff need training in how to best help children who are non-verbal develop verbal skills and alternate forms of communication. Without this training, teachers are left to guess about approaches and opportunities.

20. Training on working with children with autism is necessary for staff to provide effective education to their students and effectively manage their classrooms, as well as to comply with their obligations to provide equal opportunity to children with disabilities required by Section 504 of the Rehabilitation Act and the Americans with Disabilities Act. Forced to remove this professional development from the grant application, the Program Director does not know how it will be able to provide staff with the tools that they need to meet the needs of these children.

21. Because the program has been forced to remove these professional development plans from their Head Start grant application, they will not be able to provide this necessary training, as staff time may only be used on activities that are approved as part of a program's grant application. Additionally, the program fears that if it attempts to provide these services, it will be penalized if during a monitoring review they are found to have provided professional development that they were forced to remove from their grant application.

22. Based on the November 20, 2025 email and subsequent conversations with their Program Specialist, the Program Director believes that complying with these instructions from the Office of Head Start is a condition of grant renewal. In other words, if they do not comply, the program's funding will not be renewed, and they will be unable to continue offering Head Start services in their community.

23. When the application was returned, the program was given no option to appeal. As the Program Director explained to me: "It was clear that if we didn't comply, the grant



A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

would not move forward. No choice . . . if we don't remove the DEIA portions, the money will not be unlocked."

24. The program is thus being forced to choose between meeting the needs of its community and its obligations under the Head Start Act, on the one hand, or complying with the Defendants' DEIA Ban, on the other hand.

Pursuant to 28 U.S.C. § 1786, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 5, 2025

/s/ Joel Ryan

Joel Ryan



A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184