The Honorable Ricardo S. Martinez

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| WASHINGTON STATE ASSOCIATION OF HEAD START AND EARLY CHILDHOOD ASSISTANCE AND EDUCATION PROGRAM, ILLINOIS HEAD START ASSOCIATION, PENNSYLVANIA HEAD START ASSOCIATION, WISCONSIN HEAD START ASSOCIATION, FAMILY FORWARD OREGON, and PARENT VOICES OAKLAND, <br><br> *Plaintiffs*, <br><br> v. <br><br> ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ANDREW GRADISON, in his official capacity as Acting Assistant Secretary of the Administration for Children and Families; ADMINISTRATION FOR CHILDREN AND FAMILIES; OFFICE OF HEAD START; and TALA HOOBAN, in her official capacity as Acting Director of the Office of Head Start, <br><br> *Defendants*. | Case No. 2:25-cv-00781-RSM <br><br> **PLAINTIFFS' EMERGENCY MOTION TO ENFORCE PRELIMINARY INJUNCTION** <br><br> NOTE ON MOTION CALENDAR: February 3, 2026 |

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION -- 1
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

Plaintiffs move for an order enforcing the preliminary injunction the Court issued on January 6, 2026, Dkt. 141 (the "Order"). The Government has failed to comply with the Order by (1) continuing to require Head Start agencies to certify compliance with the DEIA Ban, and (2) providing substantively flawed notice to Head Start agencies regarding the Order and failing to file a copy of this insufficient notice on the docket. Defendants' noncompliance is causing confusion among Head Start agencies and impacting their current activities and decision making, undermining the Court's Order. Plaintiffs respectfully request that the Court enforce its Order.

## FACTUAL BACKGROUND

### A. The Court's Order

On January 6, 2025, the Court granted Plaintiffs' motion for preliminary injunction, holding that Plaintiffs are likely to succeed on the merits of claims under the Administrative Procedures Act, 5 U.S.C. § 706(2)(A). Dkt. 141. Relevant to this motion, the Court enjoined Defendants from "enforcing and/or implementing any portion of the DEI Letter of DEIA Certification," including by "[r]equiring any Head Start agency to make 'certifications' or other representations pursuant to the DEIA Certification or other similar requirement." Dkt. 141 at 24-25. Additionally, the Order postponed the effective date of the DEIA Ban under 5 U.S.C. § 705. *Id.* at 25.

The Court also ordered that "Defendants' counsel shall provide written notice of this Order within 72 hours of entry to all Defendants and their officers, agents, servants, employees, contractors, representatives, and any other persons who are in active concert or participation with them, and to all Head Start agencies," and that "Defendants shall file a copy of the notice on the docket at the same time, as well as a Status Report documenting the actions they have taken to comply with this Order." *Id.* at 25.

### B. Defendants are Requiring Head Start Agencies to Make Certifications Pursuant to the DEIA Ban.

Defendants continue to require Head Start agencies to make a DEIA certification, in

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION -- 2
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

violation of this Court's Order postponing the effective date of the DEIA Ban, enjoining Defendants from implementing the Ban, and explicitly prohibiting Defendants from requiring Head Start agencies to certify their compliance with the Ban. Dkt. 141 at 24-25. Even after this Court issued its order, Defendants continue to include in Notice of Awards to Head Start agencies the HHS Grants Policy Statement as one of the terms and conditions. Declaration of Joel Ryan in support of Plaintiffs' Emergency Motion to Enforce ("Ryan Decl.") ¶¶ 11-12, Ex. 2. The Grants Policy Statement continues to require that: "recipients certify compliance with all federal antidiscrimination laws and these requirements and that complying with those laws is a material condition of receiving federal funding streams. Recipients are responsible for ensuring subrecipients, contractors, and partners also comply." Ryan Decl. ¶ 11, Ex. 2, at 21 (available at https://www.hhs.gov/sites/default/files/hhs-grants-policy-statement-oct-2025.pdf)[1] Additionally, pursuant to the HHS Grants Policy Statement, all Head Start agencies are required to certify that they are "compliant with Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. §§ 1681 et seq., including the requirements set forth in Presidential Executive Order 14168 titled Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq., and [] will remain compliant for the duration of the Agreement." *Id.* at 21-22. Consequences for violating this certification expressly include "liability under the False Claims Act, 31 U.S.C. § 3729, and/or criminal liability, including under 18 U.S.C. §§ 287 and 1001." *Id.* at 22.

As of the date of this filing, the HHS Grants Policies & Regulations webpage advises that the HHS Grants Policy Statement "provides information about the legal and regulatory rules that apply to your award and *will* be used for *enforcement* purposes." Declaration of Jennesa Calvo-Friedman in support of Plaintiffs' Emergency Motion to Enforce ("Calvo-Friedman Decl.") ¶ 13, Ex. 10 (emphasis added) (available at https://www.hhs.gov/grants-contracts/grants/grants-

---

[1] As Plaintiffs argued, Dkt. 99 at 8-9, and this Court found, Defendants failed to show that HHS' amendments to the April 16, 2025, DEIA certification "changes the intent or meaning behind certifying compliance, or Defendants' efforts to execute the DEIA ban," Dkt. 141 at 15.

EMERGENCY MOTION TO ENFORCE　　　　　　　　　　　　　　A.C.L.U. OF WASHINGTON
PRELIMINARY INJUNCTION -- 3　　　　　　　　　　　　　　　PO BOX 2728 SEATTLE, WA 98111-2728
2:25-CV-00781-RSM　　　　　　　　　　　　　　　　　　　　(206) 624-2184

policies-regulations/index.html). Not only does the Grants Policy Statement continue to require a DEIA certification by Head Start agencies in violation of the Order, but this webpage also falsely tells Head Start agencies that Defendants will enforce the DEIA related certifications and restrictions, which is also expressly prohibited by this court's Order.[2]

### C. Defendants Failed to Comply with Notice Requirements of the Order.

The Order requires that "Defendants' counsel shall provide written notice of this Order within 72 hours of entry to all Defendants…and to all Head Start agencies," and requires Defendants to "file a copy of the notice on the docket at the same time." Dkt. 141 at 24-25. Defendants failed to meaningfully comport with this obligation because they issued a vague and misleading notice to Head Start agencies regarding the Order and failed to file a copy of the notice that they sent to Head Start agencies with the Court. Defendants have refused to provide a clarifying notice to Head Start agencies despite repeated requests by Plaintiffs' counsel to simply e-mail the same language Defendants already posted on one of their websites to Head Start agencies.

Defendants provided a substantively different notice to the Deputy General Counsel of HHS than to Head Start agencies. The notice to the Deputy General Counsel of HHS states that the Court's order specifically enjoins the agency from "enforcing or implementing any portion of the DEI letter, DEI certification, all agency-wide directive implementing or effectuating the DEIA ban, and any changes made pursuant to the DEIA ban, or otherwise similar actions that enforce or implement Executive Orders No. 14,151, 90 Fed. Reg. 8339 (Jan. 29, 2025) or No. 14,173, 90 Fed. Reg. 8633 (Jan. 31, 2025) against any Head Start agencies, program providers, student or family participants, or other similar persons or entities." Dkt. 142-1 at 1.

---

[2] Notices of Award also direct Head Start agencies to HeadStart.gov for "[a]dditional program guidance," where the March 14 DEI Letter was posted without any information regarding the Order until approximately January 20, 2026. As discussed below, Defendants updated this webpage with a notice of the Order following Plaintiffs' request to do so. See Calvo-Friedman Decl. ¶ 8, Ex. 6. Defendants similarly updated one other webpage with postings about the DEIA Ban to include notice of the Order following Plaintiffs' requests discussed below. See Calvo-Friedman Decl. ¶ 14, Ex. 11 (available at: https://acf.gov/ohs/news/federal-funding-restrictions-diversity-equity-and-inclusion-initiatives). However, a Head Start agency that reviews the "Supplemental Terms and Conditions" included in its Notice of Award, Ryan Decl. ¶¶ 11-12, Ex. 2, are not given a notice of the Order.

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION -- 4
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

1  In contrast, Defendants' notice to Head Start agencies states vaguely that "effective 1/6/2026 *certain DEIA actions*, as well as reductions in force (RIFs) as they pertain to Head Start agencies and the Office of Head Start, have been preliminarily enjoined until further notice . . ." *See* Ryan Decl. ¶ 5, Ex.1 (emphasis added). Defendants did not clarify, in the notice or elsewhere, what is included in "certain DEIA actions." *See id.* Head Start agencies cannot tell, based on this notice, what DEIA actions are enjoined. Ryan Decl. ¶¶ 6-9. The notice has caused confusion among Head Start agencies about their obligations under the DEIA ban, and as a result, many agencies are still afraid to engage in lawful activities that might be considered to promote "DEIA" for fear of losing funding, False Claims Act penalties, or other negative action by Defendants. *See id.*

Defendants filed only a copy of the notice provided to the Deputy General Counsel of HHS on the docket and did not file a copy of the notice provided to Head Start agencies. *See* Dkt. 142-1.

**D. Meet and Confer Efforts**

Plaintiffs first contacted Defendants regarding their noncompliance with the Order via email on January 13, 2026. *See* Calvo-Friedman Decl. ¶ 3, Ex. 1. In this email, Plaintiffs' counsel notified Defendants that the Notices of Award made after January 6, 2026, still incorporate an anti-DEIA certification, and provided a link to the specific anti-DEIA certification language at issue. *See id.* Plaintiffs also notified Defendants that the email notice to Head Start agencies saying only that "certain DEIA actions" have been enjoined does not give programs reasonable notice of what is being enjoined, and even misleadingly suggests that the Court's order halts, rather than lifts restrictions on, "DEIA" activities. *See id.* This email also informed Defendants that they had not filed a copy of the notice sent to Head Start agencies on the docket as required by the Order. *See id.* Plaintiffs requested that Defendants reissue notice within 48 hours specifying the actions enjoined by the Court's order. *See id.*

After discovering that the March 14 DEI Letter remained on HeadStart.gov, Plaintiffs sent a second email on January 13, 2026, informing Defendants that the Notices of Award direct Head

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION -- 5
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

Start agencies to view additional guidance on HeadStart.gov, where the March 14 DEI Letter appeared with no information regarding the Order. *See* Calvo-Friedman Decl. ¶ 4, Ex. 2. Plaintiffs requested that Defendants include a notification on this website providing information about the Order. *See id.* On January 14, Defendants responded agreeing to "post a new statement on the OHS website" but did not respond to the other issues that Plaintiffs raised. *Id.* ¶ 5, Ex. 3. Plaintiffs responded that same day, January 14, stating that a post on the DEI Letter website addressed one concern but that post did not address the issues Plaintiffs raised about the inadequate notice to Head Start agencies nor the continued requirement for Head Start agencies to make a DEIA certification. *Id.* ¶ 6, Ex. 4. On January 16, Defendants conveyed that they were in the process of "obtaining internal approval for some actions that we believe will alleviate your concerns regarding the notice of the PI and enforcement of DEIA in the NOA." *Id.* ¶ 7, Ex. 5.

On January 20, 2026, Defendants informed Plaintiffs via e-mail that the Defendants added a notification about the Order on the HeadStart.gov page containing the March 14 DEI Letter but refused all other requests, contending that they are fully complying with the Order. *See id.* ¶ 8, Ex. 6. Additionally, Defendants contend that the Grants Policy Statement cannot be changed because it is an "agency-wide document." *See id.*

On January 20, 2026, Plaintiffs responded, notifying Defendants that whether the Grants Policy Statement is an "agency-wide document" is irrelevant to whether Defendants, who include HHS, are complying with the Order. *Id.* ¶ 9, Ex. 7. Moreover, Plaintiffs noted that HHS has changed the Grants Policy Statement several times in the last year alone. *See id.* ¶ 9, Ex. 7. Plaintiffs also notified Defendants that even though Defendants posted a notice of the Order on the March 14 DEI Letter press release webpage, a corrected email notice to Head Start agencies is necessary because the prior notice about the Order to was misleading, and Plaintiffs are aware of Head Start agencies expressing confusion about the state of the DEIA Ban. *See id.*; Ryan Decl. ¶¶ 6-9. Plaintiffs reiterated their requests that Defendants send a corrected email notice to Head Start agencies; remove the DEIA Certification from the Grants Policy Statement; and update the HHS Grants Policies & Regulations webpage to inform Head Start agencies that the DEIA

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION -- 6
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

Certification in the Grants Policy Statement cannot be enforced against Head Start agencies, including those with Notices of Award issued between April 16, 2025 and January 6, 2026. *See* Calvo-Friedman Decl. ¶ 9, Ex. 7.

Plaintiffs did not receive a response to the January 20, 2026, email, and sent a follow-up email on January 23, 2026, inquiring about the status of Plaintiffs' requests. *See* Calvo-Friedman Decl. ¶¶ 10-11, Ex. 8. Although Defendants did not respond to the January 20, 2026, or January 23, 2026, emails, Defendants did add the notice regarding the Order to an additional website that posts the DEI Letter in line with one of Plaintiffs' requests. *See* Calvo-Friedman Decl. ¶ 14, Ex. 11.

## ARGUMENT

Federal courts possess inherent power to enforce compliance with their lawful orders. *See Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders . . . ."); *City & Cnty. of San Francisco v. Trump*, 782 F. Supp. 3d 830, 833 (N.D. Cal. 2025) ("It is well-settled that district courts have the power to supervise compliance with an injunction.") (citing *State v. Trump*, 871 F.3d 646, 654 (9th Cir. 2017)). This includes preliminary injunctions. *Pacito v. Trump*, 2025 WL 1397613, at *1 (W.D. Wash. Apr. 11, 2025); *Am. Fed'n of Gov't Emps*., *AFL-CIO v. Noem*, 785 F. Supp. 3d 833, 856 (W.D. Wash. 2025). "'Disagreements with judicial decisions must be resolved through motions, stays, and appeals, not through unilateral noncompliance.'" *Nat'l Treasury Emps. Union v. Vought*, --- F.Supp.3d ----, No. CV 25-0381 (ABJ), 2025 WL 3771192, at *11 (D.D.C. Dec. 30, 2025) (quoting *J.G.G. v. Trump*, No. 25-5124, 2025 WL 3198891, at *2 (D.C. Cir. Nov. 14, 2025)).

Defendants here have violated the express language and clear objectives of the Court's Order by continuing to require Head Start agencies to certify compliance with the DEIA Ban, failing to provide adequate notice to Head Start agencies regarding the Order, and failing to file a copy of the notice provided to Head Start agencies with the Court. Defendants' noncompliance has caused confusion among Head Start agencies and has an ongoing chilling effect on Head Start

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION -- 7
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

agencies' ability to engage in lawful actions that could be considered to promote "DEIA," undermining the purpose of the Court's Order.

**I.      The HHS Grants Policy Statement Violates the Order.**

The Court enjoined Defendants from "requiring any Head Start agency to make 'certifications' or other representations pursuant to the DEIA Certification or other similar requirement" as well as from "enforcement action pursuant to the DEIA Certification." Dkt. 141 at 24-25. Nonetheless, Notices of Award continue to require such certification in direct contradiction of this Court's Order, which held that that certification is part of the Defendants' DEIA Ban, and that a preliminary injunction and 5 U.S.C. § 705 stay of the DEIA Ban—including the DEIA certification—is appropriate. *See* Dkt. 141 at 15, 19, 25.

Incorporated as a term and condition of Head Start agencies' Notice of Awards, the HHS Grants Policy Statement requires the recipient to "certify compliance with all federal antidiscrimination laws and these requirements" and certify that they are "compliant with Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. §§ 1681 et seq., including the requirements set forth in Presidential Executive Order 14168 titled Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq., and [] will remain compliant for the duration of the Agreement." *See* Ryan Decl. ¶ 12, Ex. 2 at 21-22. By requiring Head Start agencies "certify compliance" with the forgoing, Defendants are requiring Head Start agencies to make certifications pursuant to "the DEIA Certification or other similar requirement." *See* Dkt. 141 at 25. Consequences for violating this certification expressly include "liability under the False Claims Act, 31 U.S.C. § 3729, and/or criminal liability, including under 18 U.S.C. §§ 287 and 1001." Ryan Decl. ¶ 12, Ex. 2 at 22.

In response to Plaintiffs' requests, Defense counsel said that they would not change this certification requirement because the Grants Policy Statement is an "agency-wide document," but that is irrelevant to Defendants' compliance with the Court order because the agency—the Department of Health and Human Services—is a defendant in this lawsuit, and the Order applies

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION -- 8
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

to all Defendants. *See* Dkt. 141 at 24-25; Calvo-Friedman Decl. ¶¶ 8-9, Exs. 6-7. Further, Defendant HHS has changed the Grants Policy Statement several times in the last year alone, demonstrating that HHS regularly modifies the Grants Policy Statement language and that it is feasible for HHS to do so to comply with the Order. *See* Calvo-Friedman Decl. ¶ 13, Ex. 10 (showing HHS modified the Grants Policy Statement in April 2025, July 2025, and October 2025).

## II. Defendants' Inadequate Notice Violates the Order.

The notice provided to Head Start agencies does not comport with the Court's order because it does not give reasonable notice of what is being enjoined and does not identify any of the actions that are subject to the Court's order.

As counsel for Defendants acknowledge in the January 8 letter to HHS Deputy General Counsel, the Court's order specifically enjoins the agency from "enforcing or implementing any portion of the DEI letter, DEI certification, all agency-wide directive implementing or effectuating the DEIA ban, and any changes made pursuant to the DEIA ban, or otherwise similar actions that enforce or implement Executive Orders No. 14,151, 90 Fed. Reg. 8339 (Jan. 29, 2025) or No. 14,173, 90 Fed. Reg. 8633 (Jan. 31, 2025) against any Head Start agencies, program providers, student or family participants, or other similar persons or entities." Dkt. 142-1 at 1.

However, the email from the Office of Head Start to programs dated January 9, 2025, states vaguely that "effective 1/6/2026 certain DEIA actions, as well as reductions in force (RIFs) as they pertain to Head Start agencies and the Office of Head Start, have been preliminarily enjoined until further notice . . ." Ryan Decl. ¶ 5, Ex. 1.

The term "DEIA actions" does not give programs reasonable notice of what is being enjoined, and the email does not identify any of the actions—including the March 14, 2025 DEI Letter, the DEIA Certifications in grant awards, or any similar agency-wide actions implementing the President's anti-DEI Executive Orders—that are subject to the Court's Order. To the contrary, the language that "certain DEIA actions . . . have been preliminary enjoined" misleadingly suggests that the Court's order halts DEIA activities, rather than lifts restrictions regarding DEIA

activities. *See id.*

Because the notice provided to Head Start agencies via email on January 9th was confusing and misleading, an email correction to this communication is needed. Although Defendants contended in their January 20 email that the notice published on the Office of Head Start website "should alleviate [] concerns regarding the notice of the Preliminary Injunction," a corrected email notice is still necessary because many Head Start agencies will never see the information Defendants have posted to a particular website regarding the Order. *See* Ryan Decl. ¶ 10. And even if Head Start agencies see the information on the website, it conflicts with the direct, official communication Defendants provided to Head Start agencies via email. Therefore, Head Start agencies need clarification to avoid the same chilling effect the Court's Order is intended to prevent. *See* Ryan Decl. ¶¶ 6-10.

Finaly, Defendants did not "file a copy of the notice on the docket" that was sent to Head Start agencies and failed to include this communication in their status report, as required by the Order. *See* Dkt. 141 at 24-25.

**CONCLUSION**

Defendants are violating the Court's Order because they continue to require a DEIA Certification, have provided an insufficient and misleading notice to Head Start agencies about the Order, and failed to file a copy of the notice provided to Head Start agencies with the Court. Because Defendants have been unwilling to remedy these deficiencies through the meet and confer process, Plaintiffs request that the Court issue an order enforcing the Order by requiring Defendants to:

(1) remove the DEIA certification from the HHS Grants Policy Statement for Head Start agencies;

(2) remove the DEIA certification from Notices of Award issued between January 6 and the date of the order to enforce;

(3) post a notice on webpages that link to the HHS Grants Policy Statement that Defendants are enjoined from enforcing any DEIA certification against Head Start agencies;

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION -- 10
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

(4) review all other terms and conditions, policies, guidance, and other documents that apply to Head Start agencies and confirm that none require a Head Start agency to make a certification or representation that they do not engage DEIA;

(5) reissue the notice to all Head Start agencies within the next 24 hours regarding the Court's order which must state:

    (a) The notice replaces and clarifies the e-mail sent on January 9, 2026

    (b) The Defendants are enjoined from enforcing and/or implementing any portion of its DEIA Ban, including but not limited to:

        i. The March 14, 2025 letter from ACF on federal funding restrictions related to "diversity, equity, inclusion";

        ii. Any certifications or other representation related to the DEIA certification or other similar requirement;

        iii. Any agency-wide directive banning "diversity, equality, inclusion and accessibility";

        iv. Any modifications made to grant terms pursuant to the DEIA ban or similar language;

        v. Any similar action implementing the restrictions on "diversity, equality, inclusion and accessibility" contained in Executive Orders No. 14151, 90 Fed. Reg. 8339 (Jan. 29, 2025) ("Ending Radical and Wasteful Government DEI Programs and Preferencing") or No. 14173, 90 Fed. Reg. 8633 (Jan. 31, 2025) ("Ending Illegal Discrimination and Restoring Merit-Based Opportunity").[3]

    (c) Defendants may not take any enforcement action, including imposing any penalty, on Head Start agencies for participating in or promoting DEIA.

(6) File a status report within 24 hours that includes a statement of all actions the Defendants have taken since January 6, 2026, to comply with the Court's Order and a copy of the

---

[3] The foregoing specifications (i-v) is the exact language that Defendants themselves posted on their website following the parties' meet and confer. See Calvo-Friedman Decl. ¶ 8, 14, Exs. 6, 11.

EMERGENCY MOTION TO ENFORCE  
PRELIMINARY INJUNCTION -- 11  
2:25-CV-00781-RSM  

A.C.L.U. OF WASHINGTON  
PO BOX 2728 SEATTLE, WA 98111-2728  
(206) 624-2184

revised notice sent to Head Start agencies informing them of the Order.

\*\*\*

The undersigned certifies that this motion contains 3,430 words, in compliance with the Local Civil Rules.

Dated: February 3, 2026

Ming-Qi Chu (*pro hac vice*)
Jennesa Calvo-Friedman (*pro hac vice*)
Linda S. Morris\* (*pro hac vice)*
\**admitted in State of Maryland*
Viviana Bonilla López (*pro hac vice*)
Lee Gelernt (*pro hac vice* forthcoming)
Omar Jadwat (*pro hac vice* forthcoming)
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
mchu@aclu.org

Laboni A. Hoq (*pro hac vice*)
HOQ LAW APC
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION
    (Cooperating Attorney)
P.O. Box 753
South Pasadena, CA 91030
Tel: (213) 977-9004
laboni@hoqlaw.com

S. Starling Marshall (*pro hac vice*)
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212)223-4000
Smarshall@crowell.com

Skye Mathieson (*pro hac vice*)
Lucy Hendrix (*pro hac vice* forthcoming)
Emily P. Golchini (*pro hac vice*)

Respectfully submitted,

By:     /s/    La Rond Baker
La Rond Baker (WSBA No. 43610)
Brent Low (WSBA No. 61795)
David Montes (WSBA No. 45205)
AMERICAN CIVIL LIBERTIES
    UNION OF WASHINGTON
P.O. BOX 2728
Seattle, Washington 98111-2728
Tel: (206) 624-2184
baker@aclu-wa.org

Kevin M. Fee (*pro hac vice*)
Allison Siebeneck (*pro hac vice*)
ROGER BALDWIN FOUNDATION OF
    ACLU, INC.
150 N. Michigan Ave, Suite 600
Chicago, IL 60601
Tel: (312) 201-9740
kfee@aclu-il.org

Lindsay Nako (*pro hac vice*)
Lori Rifkin (*pro hac vice*)
Fawn Rajbhandari-Korr (*pro hac vice*)
Meredith Dixon (*pro hac vice*)
Megan Flynn (*pro hac vice*)
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Tel: (510) 845-3473
lrifkin@impactfund.org

Edward T. Waters (*pro hac vice*)
FELDESMAN LEIFER LLP
1129 20th Street NW, 4th Floor
Washington, DC 20036

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION -- 12
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

| | |
|---|---|
| CROWELL & MORING LLP<br>1001 Pennsylvania Ave NW<br>Washington, DC 20004<br>Tel: (202) 624-2500<br>Smathieson@crowell.com | Tel: (202) 466-8960<br>ewaters@feldesman.com |

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION -- 13
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184