The Honorable Ricardo S. Martinez

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| WASHINGTON STATE ASSOCIATION OF HEAD START AND EARLY CHILDHOOD ASSISTANCE AND EDUCATION PROGRAM, ILLINOIS HEAD START ASSOCIATION, PENNSYLVANIA HEAD START ASSOCIATION, WISCONSIN HEAD START ASSOCIATION, FAMILY FORWARD OREGON, and PARENT VOICES OAKLAND,<br><br>                                           *Plaintiffs*,<br>v.<br>ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ANDREW GRADISON, in his official capacity as Acting Assistant Secretary of the Administration for Children and Families; ADMINISTRATION FOR CHILDREN AND FAMILIES; OFFICE OF HEAD START; and TALA HOOBAN, in her official capacity as Acting Director of the Office of Head Start,<br><br>                                           *Defendants*. | Case No. 2:25-cv-00781-RSM<br><br>**DECLARATION OF MARY ROE IN SUPPORT OF PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER**<br><br>**REDACTED** |

DECLARATION OF MARY ROE IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 1
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

Pursuant to 28 U.S.C. § 1746, I, Mary Roe, hereby declare and state:

1. I am over eighteen years old, and I have personal knowledge of the facts set forth below. The information in this declaration is true and correct to the best of my knowledge. If called to testify about it, I could and would be able to do so competently.

2. I am the Executive Director of a Head Start agency in Wisconsin ("my Head Start Agency"). I have served as Executive Director since 2015.

3. On December 5, 2025, I submitted a pseudonymous declaration in support of Plaintiffs' Motion for a Preliminary Injunction. *See* Dkt. 135-1 ("December 5 Declaration"). In that declaration, I described the following communications with my Head Start Agency's program specialist related to the non-competitive grant application that I submitted on September 30 for a new 5-year grant cycle beginning on January 1, 2026.

   a. On November 19, the grant application was returned, and I was instructed to remove certain words (including "Racism," "Race," "Racial," "marginalized," "institutional," "historically," "bias," "Equity," "equitable," "diversity," "diverse," "belonging," "inclusion," "inclusivity," "gender," "chestfeeding," "pregnant people," and "LGBTQIA 25+" from the application. *See* Dkt. 135-1, ¶ 10.

   b. Further, I was contacted by my Head Start Agency's program specialist, who confirmed that the grant application was being returned for the deletion of certain words and concepts. The program specialist provided a list of 197 additional "words to limit or avoid in government documents." Dkt. 135-1, ¶ 12.

4. On December 15, I was contacted by a program supervisor who informed me she was covering the desk for my program specialist, who was "on leave" without any warning or explanation. In my decades of experience, typically, when a program specialist will be out of the office, they share this information with the Head Start agencies they work with or include information about when they will return in an automatic e-mail response.

DECLARATION OF MARY ROE IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 2
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

5. I understand that this program specialist remains on leave to this day. When I asked other Office of Head Start staff when he would return to work, they were unable to provide any information.

6. This was alarming to me because if the Office of Head Start had identified the program specialist who had sent me the e-mails I described and attached to my December 5 Declaration, that meant that they had also identified my Head Start Agency as the agency whose director had submitted a declaration in this lawsuit.

7. On December 31, the last day on my Head Start Agency's existing grant, I was contacted by another program specialist who identified herself as "covering" for our prior assignment. She advised that the application for my Head Start Agency's new non-competitive grant, intended to begin January 1, was being returned again because "[t]here seems to be DEI language present," this time related to our services aimed at engaging fathers and male caregivers, as required under the Head Start Act.

8. On January 9, my Head Start Agency received a Notice of Award for our non-competitive grant, which initiates a new five-year grant cycle.

9. On July 22, 2025, before I submitted my Head Start Agency's application for this new grant, I was informed that—assuming my Head Start Agency was awarded a new non-competitive grant—we would be required to complete a Focus Area 1 Review ("FA1 Review") sometime in 2026 for both the new grant and another, smaller grant entering Year 2 of the grant cycle. The FA1 Review is an intensive process in which a team of contractors conduct a three-day, in-person audit of a Head Start program's facilities and records. It is my understanding that FA1 Reviews typically begin on a Tuesday.

10. When I was notified that my Head Start Agency would be subject to an FA1 Review sometime during FY 2026, I was asked to provide a list of dates when our facilities would be open with children in the classrooms, beginning in January 2026 after our new grant cycle presumably would begin.

DECLARATION OF MARY ROE IN SUPPORT OF  
PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 3  
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON  
PO BOX 2728 SEATTLE, WA 98111-2728  
(206) 624-2184

11. In my experience, FA1 Reviews are not typically conducted during the first week of a new grant cycle. FA1 Reviews require significant preparation by the Head Start agency, including gathering extensive data and documentation on areas ranging from fiscal reporting, to enrollment, to life safety systems. The Office of Head Start FA1 Monitoring Protocol states that Head Start agencies are usually given 45 days' notice for an FA1 Review, and there is typically communication between the agency and the monitoring team before the reviewers arrive on-site.

12. From the time I submitted my Head Start Agency's availability for the FA1 Review until January 13, 2026, I received no further communications regarding the FA1 Review.

13. On Tuesday, January 13, at around 8:00 am, reviewers contracted by OHS arrived unannounced at my Head Start Agency. I spoke to the review lead by phone, and she stated she had a letter informing me of an unannounced federal review which she needed to deliver to me to officially start the review process. Because FA1 Reviews begin on Tuesdays, and we had only received the Notice of Award for our new grant the previous Friday, this was the first possible day my Head Start Agency could have been subject to an FA1 Review.

14. I have worked in the early childhood education field for 25 years, serving families in two different Head Start agencies and as a consultant. I am aware of only one other Wisconsin Head Start program that was subjected to any kind of unannounced monitoring review over the course of my career.

15. █████████████████████████████████████

DECLARATION OF MARY ROE IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 4
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

16. Complying with this unannounced review imposed a substantial burden on my Head Start Agency and our staff. In a standard, announced review, a significant amount of data is sent to the review team in advance. Information that we would typically have over a month to gather and verify had to be produced within days or even hours. This required pulling staff from their usual duties to scramble to locate and assemble the necessary data and records. The monitors visited all of our of our Head Start program locations except one to inspect the physical facilities and observe classrooms, which required time and focus from multiple staff across our locations. We also had to schedule last minute interview meetings with little to no notice for our teachers, family services staff, education managers, parent policy council, board of directors, and program leadership. Based on my past experience, the burden would have been significantly less if the review had been announced.

17. The unannounced monitoring was not simply inconvenient; it was terrifying. A poor FA1 report can have dire consequences. If the monitors identified just two "deficiencies" (for example, incomplete paperwork or information missing from our files), my program could have to recompete for funding or even lose its designation as a Head Start agency, and by extension, our funding. While monitoring reviews are always important and consequential and thus bring some added stress, what made this different was that we were given no opportunity to prepare the documentation that the reviewers would need ahead of time. The design of an unannounced review puts programs at a disadvantage. It is simply harder to perform well without the standard preparation, and also puts significant pressure on the review team to complete their work within the required timeframe. One of the reviewers commented that unannounced reviews tend to be incredibly stressful, and many staff "just break down crying" during the experience.

18. As a testament to the strength of our program and the experience of our staff, the FA1 review appears to have gone well. The reviewers provided us feedback on the last day of the visit and were highly complimentary of our systems, staff, and board members. The reviewers stated repeatedly that no concerns were identified in fiscal, program governance,

DECLARATION OF MARY ROE IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 5
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

human resources health and safety of sites, enrollment, disabilities, education services, family services, or mental health. I and other staff members at my Head Start Agency documented all of this feedback and the fact that we provided all requested information. Still, because the report is not written by the reviewers who conducted the visit, I fear that OHS could unjustly issue a bad report in retaliation for me submitting a declaration in this lawsuit.

19.    I have an experienced leadership team who have successfully navigated many federal reviews, and are not easily rattled under stress. The unannounced review has left many of them with ongoing anxiety, exhaustion, and worry. This experience has taken a devastating toll on me personally, as well.  Since the reviewers arrived unannounced on January 13, I have experienced significant stress, anxiety, nightmares, and trouble sleeping.  As the Executive Director, I feel responsible for our children, families, and staff.  My greatest fear when I submitted the December 5 Declaration was that I would put my program at risk, and that fear was the only reason I considered not submitting it. Since the unannounced review, I struggle with guilt that my participation in this lawsuit has put my program at risk, and I fear that my Head Start Agency—including my colleagues and the children and families we all serve—will be further penalized if I continue to speak up.

20.    Shortly after the FA1 Review was completed, on January 28, I submitted three requests to draw down funds on my Head Start Agency's grants via the Payment Management System ("PMS") for vendor expenses and payroll.  The requests were routine, and I provided the same documentation that I typically submit for processing without issue.  This time, however, one of the requests—for approximately $10,000 for accounts payable—was flagged. I was required to submit "a comprehensive breakdown of all line items" including "each item, service, or expense, along with corresponding costs" before the request would be processed. In my experience, this is an unusual demand for a relatively small draw-down request with appropriate receipts. Moreover, due to the partial government shutdown, all three of my funding requests were frozen until February 4. If my Head Start Agency did not have non-federal funds to utilize, we would have been in a crisis situation with our bank account

DECLARATION OF MARY ROE IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 6
2:25-CV-00781-RSM

A.C.L.U. OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

overdrawn by $600,000. Given my recent experience with the unannounced FA1 Review, I believe this additional level of scrutiny was also targeted and retaliatory.

21. I have not shared the fact that I was the one to submit a pseudonymous declaration with my fellow program directors here in Wisconsin. But now I feel a responsibility to disclose that information so that others understand the risks they may face if they choose to testify or otherwise participate in this lawsuit. On the other hand, I fear that this information will only further deter other program directors and staff from coming forward.

22. Without a protective order, the Board of my Head Start Agency would be much less likely to support submitting evidence in this case in the future. They are very clear in their focus on protecting the legal and financial interest of the agency, and they would be reluctant to put the agency, including our staff and the families we serve, at risk for further harm.

23. I asked to submit my prior declaration under a pseudonym because I was afraid that the Government might retaliate against me or my Head Start Agency for participating in this case. My fear was realized when the monitors showed up unannounced last month.

My Need for *Ex Parte* Review of Paragraph 15

24. I am requesting a single paragraph of my declaration be redacted and reviewed *ex parte* because I fear that if Defendants learn this information was disclosed to me, they will use the information to further retaliate, and that could have further negative consequences on my Head Start Agency and third parties.

Pursuant to 28 U.S.C. § 1786, I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 13, 2026         /s/ Mary Roe
                                 Mary Roe

DECLARATION OF MARY ROE IN SUPPORT OF         A.C.L.U. OF WASHINGTON
PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 7  PO BOX 2728 SEATTLE, WA 98111-2728
2:25-CV-00781-RSM                              (206) 624-2184