The Honorable Ricardo S. Martinez

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

WASHINGTON STATE ASSOCIATION OF HEAD START AND EARLY CHILDHOOD ASSISTANCE AND EDUCATION PROGRAM, ILLINOIS HEAD START ASSOCIATION, PENNSYLVANIA HEAD START ASSOCIATION, WISCONSIN HEAD START ASSOCIATION, FAMILY FORWARD OREGON, and PARENT VOICES OAKLAND,

*Plaintiffs*,

v.

ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ANDREW GRADISON, in his official capacity as Acting Assistant Secretary of the Administration for Children and Families; ADMINISTRATION FOR CHILDREN AND FAMILIES; OFFICE OF HEAD START; and TALA HOOBAN, in her official capacity as Acting Director of the Office of Head Start,

*Defendants*.

Case No. 2:25-cv-00781-RSM

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

NOTE ON MOTION CALENDAR: February 27, 2026

REPLY IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER -- 1
2:25-CV-00781-RSM

ACLU OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

Defendants' opposition to Plaintiffs' motion for a protective order does not rebut Plaintiffs' evidence of retaliation and misconstrues the scope of the targeted relief Plaintiffs seek. Upon learning of Defendants' suspiciously timed unannounced review of Declarant Mary Roe's Head Start agency, Plaintiffs' counsel contacted Defendants' counsel to request information showing that the monitoring visit was not, in fact, retaliatory. Plaintiffs asked for specific information including when Defendants selected Mary Roe's agency to receive an unannounced, rather than announced, review. Defendants refused to provide this information, despite repeated follow-ups by Plaintiffs' counsel in an effort to resolve this matter without court intervention. While Defendants did finally provide some additional information as part of their opposition to Plaintiffs' motion, Defendants did not address key irregularities pointing to retaliation that Plaintiffs cited in their motion. Most importantly, Defendants have not clearly answered the question of when Defendants selected Declarant Mary Roe's Head Start agency to receive an unannounced monitoring visit. As was also true before Plaintiffs filed their motion, Plaintiffs would welcome Defendants offering evidence that establishes that their unannounced review of Roe's agency was nonretaliatory. But, in the absence of that evidence, Plaintiffs continue to request that the Court issue a protective order or order Defendants to show cause as to why such protective order should not be granted.

## ARGUMENT

### I. Defendants Have Failed to Show their Actions Were Not Retaliatory

Given that "evidence regarding the 'proximity in time between the protected action and the allegedly retaliatory'" action can show that "retaliation was a substantial or motivating factor" for the action, and the impact that the appearance of retaliation has on the ability of Plaintiffs to put evidence before the court, Plaintiffs have repeatedly requested that Defendants provide evidence that shows they would have taken this same action absent Roe's protected speech. *See Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) (quoting *Keyser v. Sacramento City Unified Dist.*, 265 F.3d 741, 751 (9th Cir. 2001) (as amended)).

Specifically, in light of the improbability of a Head Start director filing a key declaration

REPLY IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER -- 2
2:25-CV-00781-RSM

ACLU OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

in support of Plaintiffs' preliminary injunction motion, and Defendants' random selection of that same Head Start agency for a highly unusual unannounced in-person monitoring visit just weeks later, ECF 157 (Pinckney Decl.) ¶ 7, Plaintiffs sought information about when Defendants selected Roe's agency for a January 13, 2026 unannounced review. Defendants have now filed the declaration of Acting Deputy Director of the Office of Head Start (OHS) Shawna Pinckney, in which she attests:

> The FY2026 monitoring schedule was set in August 2025. Given the scheduling lead time and number of reviews there are typically calendar adjustments to the original national monitoring schedule and FY2026 was no different. The August 2025 schedule had 14 FAl reviews scheduled to begin January 13, 2026 with four being unannounced. Due to operational adjustments the monitoring calendar was updated in November 2025 for a total of 16 FAl reviews starting January 13, 2026 with three being unannounced. No further scheduling adjustments were made for those three unannounced reviews . . .

ECF 157 (Pinckney Decl.) ¶ 6. Notably, while Acting Deputy Director Pinckney provides the timeline for Defendants' decision about the number of reviews being conducted starting January 13, the declaration does not clarify when Defendants decided which of the 16 agencies scheduled for FA1 reviews on January 13 would receive unannounced reviews. Whether a review is announced or unannounced matters, ECF 152-2 (Roe Decl.) ¶¶ 16-17, and being subjected to a rare unannounced review just after providing testimony is reasonably likely to deter Roe and other potential witnesses from providing relevant testimony in this case. *Cf. Coszalter*, 320 F.3d at 976 (explaining that retaliation that was "reasonably likely to deter" plaintiffs from engaging in protected speech violates the First Amendment).

The obfuscatory language of the declaration reflects similar vagaries in the answers Defendants provided during the meet and confer process. On January 20, Defendants emailed Plaintiffs stating that the national monitoring schedule was finalized summer of 2025 and, therefore, selection and determination of announced or unannounced monitoring visits "*would*

REPLY IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER -- 3
2:25-CV-00781-RSM

ACLU OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

have also happened at that time." *S*ee ECF 149-3 (emphasis added). On January 23, Plaintiffs responded:

> While your email describes the general process for review selection, it does not address whether there were any deviations from this process here. Specifically, it does not answer . . . when each of the 3 programs that received an unannounced FA1 review last week were selected for an unannounced review (as opposed to a scheduled FA1 review).

ECF 149-4. Again, during counsels' February 9, 2026, meet and confer, Plaintiffs' counsel asked if Defendants could provide Plaintiffs specific information about when Roe's program was actually selected for the unannounced review. Defendants declined to provide any additional information. ECF 149 (Calvo-Friedman Decl.) ¶ 13. If the unannounced review was non-retaliatory, such information could show that and would have rendered this motion unnecessary, which is why Plaintiffs repeatedly asked for it. Now, in their opposition to Plaintiffs' motion for protective order, Defendants have once again declined to provide a clear and unambiguous answer to this question.

Defendants also did not address, much less rebut, the evidence Plaintiffs presented contradicting Defendants' continued claim that they did not identify Roe's agency in connection with the declaration submitted. Approximately 10 days after Roe submitted the declaration, she was informed that her Agency's program specialist—who sent the email containing the banned-word list Roe attached to her declaration—was on unexplained leave. *See* ECF 152-2 (Roe Decl.) ¶¶ 4, 6. It is implausible that Defendants would identify the program specialist who sent the e-mail and not the agency to which it was sent. *Cf. Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (judges "are not required to exhibit a naiveté from which ordinary citizens are free") (internal quotation marks omitted)).

REPLY IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER -- 4
2:25-CV-00781-RSM

ACLU OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

## II.  The Court Has Authority to Issue a Protective Order and it is the Appropriate Remedy

The case law clearly establishes that the Court has discretion and authority to grant the protective order Plaintiffs seek. *See, e.g.¸ Bryant v. Am. Seafood Co., LLC*, No. C07-740-RSM, 2008 WL 11450833, at *5 (W.D. Wash. Mar. 27, 2008); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (finding Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."); *Wheeler v. United States,* 640 F.2d 1116, 1123 (9th Cir. 1981) (finding the Court's "inherent power to protect witnesses stems from the indisputably broad powers of the trial judge to ensure the orderly and expeditious progress of a trial. More generally stated, the trial judge has the broad discretion to protect the administration of justice from 'abuses, oppression and injustice.") (cleaned up).[1] Indeed, as Defendants acknowledge, this Court has previously granted a protective order requiring a defendant to "refrain from engaging in any form of communication designed to prevent [the witness] from testifying," even without definitive evidence of threats or intimidating tactics. *Bryant,* 2008 WL 11450833, at *5.

Defendants are also wrong to assert that they do not exercise a sufficient level of control over Plaintiffs' witnesses to make the case law Plaintiffs cited, *see* ECF 148 at 10-12, applicable. For example, Defendants' claim that the Department of Health and Human Services (HHS) "does not exercise significant power over [Plaintiffs' potential witnesses] such that it can inflict mistreatment to prohibit them from participating in this lawsuit" is simply false. ECF 156 at 9. Defendants provide 80% of the funding Head Start agencies rely on to operate their program. *See* ECF 150 (Maunnamalai Decl.) ¶¶ 15-23. Defendants control the account system Plaintiffs must use, sometimes as frequently as weekly, to access those funds. *See id*. Defendants control whether an agency is able to maintain its "designation" as a Head Start agency and continue to provide the

---

[1] Nor is "hearsay" a reason the court should ignore the evidence submitted. "The court may consider hearsay on a motion for protective order." *Johnson v. U.S. Bancorp*, No. C11-02010 RAJ, 2012 WL 6726523, at *1 n. 2 (W.D. Wash. Dec. 27, 2012)

REPLY IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER -- 5
2:25-CV-00781-RSM

ACLU OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

Head Start program to their communities. *See id*. Defendants monitor the Head Start agencies and determine if any "deficiencies" exist that could affect their designation. *See id*. Defendants control whether a designated Head Start agency receives an annual continuation or renewal grant. *See id*. In sum, whether a Head Start agency is able to provide families with access to early childhood education is entirely in Defendants' hands.

### III.  The Scope of Plaintiff's Proposed Protective Order is Limited and Necessary Given Plaintiffs' Evidence of Retaliation and Defendants' Control Over Head Start Agencies

Retaliation often involves entities who have an important supervisory role over the target of the retaliation. Protective orders that prevent those with a legitimate supervisory role from using that power to retaliate do not interfere with the lawful exercise of such an entity's functions. *Cf. AAUP v. Rubio*, 25-cv-10685, ECF 124 (D. Mass. June 10, 2025) (granting protective order and ordering "[n]o noncitizen providing evidence shall, by reason thereof, suffer any adjustment in their immigration Status" despite defendants argument that such a protective order would impede "the government's normal, lawful exercise of its sovereign function" (second quote *id.* ECF 119 at 1)). As Defendants have pointed out, one of the cases Plaintiffs cited to, *Ben David*, involved a prison. *See Ben David v. Travisono,* 495 F.2d 562 (1st Cir. 1974). And even in that instance, where the defendant had a statutorily required "authority to provide for the control and discipline of the inmates," *Morris v. Travisono*, 373 F. Supp. 177, 183 (D.R.I. 1974), *aff'd*, 509 F.2d 1358 (1st Cir. 1975), the Court did not find that a protective order impeded these functions and ordered defendants not to retaliate, 495 F.2d at 565. *Id*.

Plaintiffs have never disputed the importance of Defendants' monitoring role in the Head Start program, nor do Plaintiffs seek to impede HHS's ability to review Head Start agencies. Indeed, Plaintiffs brought claims in this litigation challenging Defendants' Mass Cuts to the HHS Office of Head Start to ensure that OHS has sufficient staffing to carry out all the functions essential to supporting Head Start programs, including monitoring.

However, it is appropriate for Plaintiffs to seek the targeted relief they request through

REPLY IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER -- 6
2:25-CV-00781-RSM

ACLU OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

this motion. Plaintiffs have presented evidence that Defendants used one of their processes to retaliate against a declarant in this case for her protected speech, which Defendants leave unexplained, *see supra* Part I. Plaintiffs have also shown that this retaliation is making potential witnesses afraid to provide testimony in this case. ECF 152-2 (Roe Decl.) ¶¶ 21-22; ECF 150 (Maunnamalai Decl.) ¶¶ 30-31. To address this problem, Plaintiffs seek either a court order preventing Defendants from using their processes for the purpose of retaliation or intimidation, or an order that Defendants show cause why such order should not be issued. Defendants' extensive control over Head Start agencies, described above, makes this motion not only appropriate, but also necessary. And Defendants offer no argument at all that the protective order plaintiffs seek, i.e. one limited to prohibiting Defendants from using their extensive control in retaliation for protected speech, would be burdensome or unworkable.

## CONCLUSION

Plaintiffs repeatedly attempted to resolve this matter without court intervention and would welcome Defendants' production of evidence sufficient to establish that their unannounced review of Roe's agency was nonretaliatory. But because Defendants have not yet provided such evidence, Plaintiffs respectfully ask the court to grant the requested protective order or an order for Defendants to show cause as to why such protective order should not be granted.

*** 

The undersigned certifies that this motion contains 1,936 words, in compliance with the Local Civil Rules.

Dated: February 27, 2026

Ming-Qi Chu (*pro hac vice*)
Jennesa Calvo-Friedman (*pro hac vice*)
Linda S. Morris* (*pro hac vice)*
**admitted in State of Maryland*
Viviana Bonilla López (*pro hac vice*)
Lee Gelernt (*pro hac vice* forthcoming)
Omar Jadwat (*pro hac vice* forthcoming)
AMERICAN CIVIL LIBERTIES

Respectfully submitted,

By:  ___/s/   La Rond Baker___
La Rond Baker (WSBA No. 43610)
Brent Low (WSBA No. 61795)
David Montes (WSBA No. 45205)
AMERICAN CIVIL LIBERTIES
  UNION OF WASHINGTON
P.O. BOX 2728

REPLY IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER -- 7
2:25-CV-00781-RSM

ACLU OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184

UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
mchu@aclu.org

Laboni A. Hoq (*pro hac vice*)
HOQ LAW APC
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION
    (Cooperating Attorney)
P.O. Box 753
South Pasadena, CA 91030
Tel: (213) 977-9004
laboni@hoqlaw.com

S. Starling Marshall (*pro hac vice*)
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212)223-4000
Smarshall@crowell.com

Skye Mathieson (*pro hac vice*)
Lucy Hendrix (*pro hac vice*
forthcoming)
Emily P. Golchini (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave NW
Washington, DC 20004
Tel: (202) 624-2500
Smathieson@crowell.com

Seattle, Washington 98111-2728
Tel: (206) 624-2184
baker@aclu-wa.org

Kevin M. Fee (*pro hac vice*)
Allison Siebeneck (*pro hac vice*)
ROGER BALDWIN FOUNDATION OF
    ACLU, INC.
150 N. Michigan Ave, Suite 600
Chicago, IL 60601
Tel: (312) 201-9740
kfee@aclu-il.org

Lindsay Nako (*pro hac vice*)
Lori Rifkin (*pro hac vice*)
Fawn Rajbhandari-Korr (*pro hac vice*)
Meredith Dixon (*pro hac vice*)
Megan Flynn (*pro hac vice*)
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Tel: (510) 845-3473
lrifkin@impactfund.org

Edward T. Waters (*pro hac vice*)
FELDESMAN LEIFER LLP
1129 20th Street NW, 4th Floor
Washington, DC 20036
Tel: (202) 466-8960
ewaters@feldesman.com

REPLY IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER -- 8
2:25-CV-00781-RSM

ACLU OF WASHINGTON
PO BOX 2728 SEATTLE, WA 98111-2728
(206) 624-2184