UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| STATE OF NEW YORK; STATE OF WASHINGTON; STATE OF RHODE ISLAND; STATE OF ARIZONA; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; THE PEOPLE OF THE STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF VERMONT; STATE OF WISCONSIN, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT F. KENNEDY, JR., in his official capacity as SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> Defendants. | C.A. No. 25-cv-196-MRD-PAS |

## MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

Before the Court is Defendants United States Department of Health and Human Services ("HHS" or "the Agency") and HHS Secretary Robert F. Kennedy's ("RFK, Jr.") (collectively, "Defendants") Motion to Dismiss Plaintiffs' Amended

Complaint, ECF No. 98.[1]  For the foregoing reasons, the Court denies Defendants' Motion to Dismiss.

## I.      BACKGROUND

The Court assumes the reader's familiarity with the background underlying this dispute and the factual backdrop that the Court provided in its July 1, 2025 Memorandum and Order.  *See* ECF No. 73 at 2-11.  As a brief reminder, this action involves a challenge brought by nineteen states and the District of Columbia seeking to invalidate Defendants' decision to overhaul HHS's structure and operations as an administrative agency.  Specifically, Plaintiffs contest Defendants' March 27, 2025 directive (the "March 27 Communiqué") announcing the Agency's goal of drastically reducing the number of employees within it and purporting to eliminate the existence of several sub-agencies within HHS itself.[2]  ECF No. 94 ¶ 2.

Subsequent to the March 27 Communiqué and Defendants' attempt to overhaul HHS, Plaintiffs brought the instant action and moved for a preliminary injunction to prevent HHS from razing itself.  ECF No. 43.  Following the Court's decision granting Plaintiffs' request for a preliminary injunction in part and denying the Defendants' preemptive request for a stay of any injunction ordered, as well as its subsequent order clarifying the scope of its preliminary injunction, Defendants filed a notice of appeal and sought an emergency stay of this Court's preliminary

---

[1] Plaintiffs include nineteen states and the District of Columbia.  This Memorandum and Order refers to them collectively as "Plaintiffs."

[2] The parties refer to the Agency's employee termination notices as reductions in force or "RIFs."  *See* ECF No. 94 ¶ 2.

injunction from the First Circuit.  The Court of Appeals denied the request on September 17, 2025.[3] *New York v. Kennedy*, 155 F.4th 67, 77 (1st Cir. 2025).  Slightly over six weeks later, Defendants voluntarily dismissed their appeal of the preliminary injunction.  Defendants now seek resolution of their motion to dismiss Plaintiffs' Amended Complaint.

As Plaintiffs themselves describe, much of their Amended Complaint remains the same as the initial Complaint they filed.  ECF No. 101 at 27.  Specifically, Plaintiffs' Amended Complaint adds that, among other things, Defendants' post-March 27 Communiqué actions have resulted in: (1) the Food and Drug Administration missing a vaccine application deadline and cancelling a test for the virus that causes bird flu; (2) office closures and layoffs which have required Head Start and Low-Income Home Energy Assistance Program grantees to fend for themselves; and (3) a lack doctors available to certify new illnesses for coverage as required to care for the responders and survivors of the attacks that took place on September 11, 2001.  ECF No. 94 ¶ 3.

Notwithstanding these similarities, the Amended Complaint now only seeks relief against RFK, Jr. and HHS itself and omits HHS's constituent subagencies as defendants.  *See* ECF No. 94 ¶¶ 32-33.  With respect to the Amended Complaint's allegations, Plaintiffs have provided updated information regarding HHS's attempt to restructure itself and the alleged harm that has resulted from it.  Notwithstanding

---

[3] Plaintiffs amended their Complaint and Defendants moved to dismiss it during the pendency of their appeal.

3

these updates, Plaintiffs' Amended Complaint retains its prior claims including the allegations that Defendants' decision to restructure HHS: (1) violates the Constitution's separation of powers doctrine; (2) runs afoul of the Constitution's Appropriations Clause; (3) constitutes an unlawful exercise of the Executive's power and is therefore *ultra vires*; (4) violates the Administrative Procedure Act ("APA") as contrary to law; and (5) violates the APA as arbitrary and capricious. *See id.* ¶¶ 328-77. Although the Court partially granted Plaintiffs' request for a preliminary injunction, Defendants now seek dismissal of Plaintiffs' Amended Complaint pursuant to Rule 12(b)(1) and 12(b)(6).[4]

## II.  LEGAL STANDARD

Although courts typically apply the rule outlined in *Bell Atlantic Corp v. Twombly* and *Ashcroft v. Iqbal* when assessing a defendant's motion to dismiss, Plaintiffs have acknowledged the existence of an alternative standard of review that the First Circuit has used when evaluating a motion to dismiss in the context of the Administrative Procedure Act ("APA"). ECF No. 101 at 28-29. Specifically, Plaintiffs rely on *Atieh v. Riordan*, where the First Circuit vacated and remanded a district court's decision after determining that it improperly applied the *Twombly/Iqbal* standard on a motion to dismiss pursuant to Rule 12(b)(6). 727 F.3d 73, 77 (1st Cir. 2013). In doing so, the First Circuit determined that "[t]he relevant inquiry is—and must remain—not whether the facts set forth in a complaint state a plausible claim

---

[4] The Court thanks the amici and their counsel for their participation in both this proceeding and in the Court's general consideration of the issues involved in this dispute.

but, rather, whether the administrative record sufficiently supports the agency's decision." *Id.* at 76. Notwithstanding the existence of this alternative standard, the Court concludes that it does not govern its review of Defendants' motion here for two primary reasons.

First, the Court determines that this case meets the criteria for the exception created by *Atieh* itself. Although *Atieh* held that the plausibility standard does not apply to a complaint seeking judicial review of a final agency action, it further concluded that courts may nevertheless apply *Twombly/Iqbal* when "the agency claims that the underlying premise of the complaint is legally flawed (rather than factually unsupported)." *Id.* at 76 n.4. Here, Defendants argue that Plaintiffs' Amended Complaint is legally flawed. For example, Defendants contend that Plaintiffs cannot succeed in demonstrating that HHS's actions have violated either the Constitution or the APA because HHS possesses the relevant statutory and Constitutional power to restructure itself and fire its employees. ECF No. 98 at 56-59. As a result of Defendants' decision to attack Plaintiffs' Amended Complaint as legally flawed, the Court determines that this case fits within *Atieh*'s exception.

Second, the Court notes that the First Circuit has declined to explicitly apply *Atieh* when given the opportunity to do so as in the case of *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11 (1st Cir. 2020). In *Wheeler*, the First Circuit reviewed a district court's ruling on a motion to dismiss an APA claim but (1) did not mention the standard established in *Atieh* and (2) used plausibility language instead. *Id.* at 20 ("These allegations *plausibly state claims* for judicial review under the

5

APA.") (emphasis added). The Court's use of this language appears to suggest that the First Circuit may no longer follow *Atieh* in all instances. As a result, this Court will follow the First Circuit's more recent lead and apply the *Twombly/Iqbal* plausibility standard to the portions of Defendants' motion that they have brought pursuant to Rule 12(b)(6).[5]

When evaluating Defendants' argument that, pursuant to Rule 12(b)(1), it must dismiss Plaintiffs' claims based on a lack of subject matter jurisdiction or based on another justiciability doctrine, courts must accept a plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in her favor. *See Valentin v. Hospital Bella Vista*, 254 F.3d 358, 362-63 (1st Cir. 2001) (noting that "[Rule 12(b)(1)] is a large umbrella, overspreading a variety of different types of challenges to subject matter jurisdiction" including "ripeness, mootness, sovereign immunity, and the existence of federal question jurisdiction").

## III. DISCUSSION

### A. Defendants' Jurisdictional Challenge

Similar to their opposition to Plaintiffs' motion for a preliminary injunction, Defendants assert that this Court lacks jurisdiction to decide this dispute. ECF No.

---

[5] For additional context, the Court notes that other Circuits appear to apply the plausibility standard in this context as well. For example, in *Concord Hospital Inc. v. NH Dep't Health and Hum. Servs.*, the District of New Hampshire noted that "[*Atieh*] is in contrast with courts elsewhere. In the D.C. Circuit, for example, courts 'regularly review motions to dismiss APA actions under the plausibility standard.'" 770 F. Supp. 3d 400, 404 n.3 (D.N.H. 2025) (citing *Asante v. Azar*, 436 F. Supp. 3d 215, 222 n.2 (D.D.C. 2020)). Notably, the Court in *Concord Hospital* declined to apply *Atieh* and opted to review that motion to dismiss pursuant *Twombly/Iqbal*'s plausibility standard instead. *Id.* at 404.

98 at 22.  Specifically, Defendants contend that: (1) the Civil Service Reform Act ("CSRA") divests this Court of jurisdiction; (2) Plaintiffs lack standing pursuant to Article III of the Constitution; (3) the Tucker Act requires Plaintiffs to file part of this action in the Court of Federal Claims; and (4) Plaintiff may not challenge the legality of the March 27 Communiqué because it does not constitute a "final agency action" pursuant to the APA.  *Id.* at 22-49.  The Court finds that each of these bases for dismissal are meritless and will address them in turn.[6]

### 1.  Claim Channeling

As they did before, Defendants argue that the Court lacks jurisdiction to decide Plaintiffs' claims because they allegedly seek review of employment decisions made by federal agencies and the CSRA therefore requires Plaintiffs to challenge these decisions before either the Merit Systems Protection Board ("MSPB") or the Federal Labor Relations Authority ("FLSA").  ECF No. 98 at 22-26.   In essence, Defendants argue that HHS's initiative to eliminate its employees and the employees within its subagencies constitutes routine employment decisions that fall within the purview of

---

[6] Although Defendants move to dismiss the Amended Complaint, their motion effectively asks the Court to reconsider several conclusions that it reached when deciding Plaintiffs' request for a preliminary injunction and which the First Circuit indicated it would affirm when it denied Defendants' motion for stay pending appeal. *See New York v. Kennedy*, 155 F.4th 67 (1st Cir. 2025) (considering whether Defendants had made a strong preliminary showing that they were likely to succeed on the merits of their appeal).  What's more, the Court must now review the Amended Complaint pursuant to a *less* demanding standard of review (plausibility, as opposed to strong likelihood of success on the merits).  To be sure, the Court must now assess Plaintiffs' Amended Complaint — as opposed to their original Complaint — but it nevertheless wishes to note the substantial overlap between the issues that it already evaluated, the tip of the First Circuit's hat to the Court's prior analysis, and the issues that Defendants present at this stage of the case.

the MSPB and the FLSA. The Court's review of the Amended Complaint and the arguments presented by Defendants reveal that neither the MSPB nor the FLSA prevent this Court from presiding over this action.

Specifically, the Court emphasizes Defendants' explicit concession that they are making the same arguments rejected by this Court and the First Circuit in support of their claim channeling theory. *Id.* at 26 n.5. Moreover, Defendants have neither presented any new, previously unrejected authority in support of their motion to dismiss nor have they explained how Plaintiffs' Amended Complaint would somehow alter the Court's prior rejection of the CSRA claim channeling argument. As a result, the Court determines that the Court possesses jurisdiction over this dispute and that Plaintiffs are not required to engage in CSRA claim channeling.

2. Standing

Defendants next seek to dismiss this action based on Plaintiffs' alleged lack of standing. *Id.* at 26. Here, Defendants remind the Court that it must review their standing arguments "afresh" because Plaintiffs amended their complaint. *Id.* As a quick reminder:

> To clear the Article III hurdle [and establish standing], the party who invokes a federal court's authority must show that (1) [s]he or []he has personally suffered some actual or threatened injury as a result of the challenged conduct; (2) the injury can fairly be traced to that conduct; and (3) the injury likely will be redressed by a favorable decision from the court.

*N.H. Right to Life Pol. Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996). Notwithstanding their request to review their argument "afresh," the Court's review of Defendants' arguments reveal that they have clearly repeated their prior

8

arguments that both this Court and the First Circuit reviewed and rejected. Overall, Defendants again argue that Plaintiffs lack standing because: (1) they have not suffered a valid informational injury; (2) HHS's failure to provide services does not constitute an injury suffered by Plaintiffs; and (3) for some lapses in services, Plaintiffs fail to allege their "personal stake" in the actions they seek to challenge. ECF No. 98 at 26-42.

With respect to the lack of an informational injury, Defendants appear to argue that they are not required to provide certain information that Plaintiffs allege they lost access to and that, even if Plaintiffs can demonstrate harm stemming from the deprivation of information that they allege an entitlement to receive, Defendants nevertheless maintain their ability to manage HHS from an operational perspective. *Id.* at 28-32. Here, the First Circuit has already determined that the Court "found that plaintiffs alleged clear 'downstream consequences from failing to receive information,'" *Kennedy*, 155 F.4th at 74 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 441-42 (2021)), and Defendants' more granular attempt to argue that various allegations, when viewed in isolation, defeat Plaintiffs' ability to assert Article III standing ignores both the Court's prior findings and the First Circuit's decision affirming them. Moreover, Defendants completely fail to argue how the Court could reach a contrary determination on standing without running afoul of its prior decision or the First Circuit's opinion in this case.

Similarly, Defendants' argument that Plaintiffs have not suffered any injury based on HHS's failure to provide services lacks merit. As this Court has previously

9

found and the First Circuit noted, "the plaintiffs alleged myriad injuries to the states themselves, including the cessation of services on which state agencies -- not just residents of the states -- rely." *Id.* at 73. The Court determines that Defendants have again failed to articulate a cognizable reason why the Court should change its earlier position on this issue or how it could do so given the First Circuit's indication of agreement with it.

Finally, Defendants recycle their prior argument asserting that Plaintiffs have not stated a particularized injury and they therefore lack a personal stake in their challenge to the March 27 Communiqué. ECF No. 98 at 40-42. Once again, this argument lacks force based on the Court's earlier finding of the direct harm faced by the states themselves, the First Circuit's indication of likely approval of that finding, as well as the lack of a material change that would alter this Court's assessment of these circumstances at this juncture. The Court therefore rejects Defendants' attempt to dismiss this case based on a lack of standing.

3. The Tucker Act

The Tucker Act, which requires plaintiffs bringing contractual claims against the government to proceed in the Court of Federal Claims, sometimes divests this Court of jurisdiction. Without acknowledging this Court's or the First Circuit's prior rejection of this argument, Defendants return to this refrain in their motion to dismiss but without explaining how the Court could reach the opposite outcome here. *See Kennedy*, 155 F.4th at 75 n.4 (rejecting Defendants' Tucker Act argument and noting that the inclusion of an allegation regarding HHS's failure to process grants

10

"does not transform their suit into a demand for money damages or an order 'to enforce a contractual obligation to pay money'") (quoting *Department of Educ. v. California*, 604 U.S. 650, 651 (2025)). The Court therefore rejects this argument again here; the Tucker Act does not present an obstacle to the Court exercising its jurisdiction over Plaintiffs' claims, as amended.

### 4. Finality of Agency Action

Finally, Defendants repeat their arguments asserting that the Court may not review HHS' March 27 Communiqué because it does not constitute a final agency action under the APA. Rather than explaining how the Amended Complaint changes the Court's prior rejection of this theory, Defendants instead reuse their prior arguments while noting that "this Court remains free to revisit its earlier determination" given the fact that Plaintiffs have amended their complaint. ECF No. 98 at 45. Based on Defendants' failure to present a materially different argument in support of this position and that nothing in Plaintiff's Amended Complaint would suggest that the Court should deviate from its prior conclusion, the Court relies on its prior analysis, *see* ECF No. 73 at 32-35, to once again determine that the March 27 Communiqué constitutes a final agency action.

Therefore, the Court determines that it possesses jurisdiction over this matter and can properly hear Plaintiffs' claims.

### B. Failure to State a Claim

The Court's July 1 Memorandum and Order evaluated whether Plaintiffs demonstrated a "strong likelihood of success" on the merits of their claims and,

11

because the Amended Complaint alleges the same claims, now only needs to determine whether Plaintiffs' Amended Complaint has plausibly alleged an entitlement to relief.  For the reasons explained below, the Court concludes that Plaintiffs have plausibly alleged an entitlement to relief on each of their five causes of action.

1. <u>Counts I, II, and III – Constitutional Claims (Separation of Powers and Appropriations Clause Violations) and Ultra Vires Claim</u>

Defendants appear to simultaneously assert overlapping arguments in support of dismissing count 1 (a violation of the separation of powers doctrine); count 2 (a violation of the appropriations clause); and count 3 (a request for a determination that the March 27 Communiqué was *ultra vires*):  they argue that litigants lack the ability to bring freestanding constitutional claims when, according to Defendants, Plaintiffs actually seek redress for statutory violations.  ECF No. 98 at 57-58.  The Court reiterates that Article III courts undoubtedly possess the authority to enjoin government actions that violate the Constitution.  *See Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015) ("The ability to sue and enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England.").  Given the existence of this relief and the fact that the Court must accept Plaintiffs' well pleaded allegations as true, the Court determines that they have plausibly alleged HHS and RFK, Jr.'s actions in reorganizing HHS have violated the separation of powers doctrine, the appropriations clause, and that the March 27 Communiqué was *ultra vires*.   Specifically, Plaintiffs allege that HHS's

reorganization has violated explicit statutory mandates, which determine how HHS and its subagencies must operate and these allegations plausibly allege violations of the Constitution and *ultra vires* action on behalf of Defendants. *See* ECF No. 94 ¶ 327 (alleging that "Plaintiff states have not been given access to demographic data required under 42 U.S.C. § 290bb-36c(e)," which has limited their ability to track information related to high-risk populations in conjunction with the Substance Abuse and Mental Health Services Administration).

Relatedly, Defendants seek dismissal of Plaintiffs' *ultra vires* claim based on the idea that Plaintiffs have "failed to show" that HHS has violated the law. ECF No. 98 at 59. However, as the Court determined above, the Amended Complaint contains several plausible allegations regarding HHS's extralegal conduct and constitutional violations, and these allegations are sufficient to withstand Defendants' Motion to Dismiss. For example, Plaintiffs' Amended Complaint alleges that, contrary to federal law, HHS's restructuring has functionally prevented it from operating labs detecting viral Hepatitis, supporting tobacco control, and detecting lead poisoning. ECF No 94 ¶ 347. To the extent that Defendants wish to contradict Plaintiffs' plausible allegations and present evidence of the lawfulness of their actions for the Court's review, the opportunity to do so will come at subsequent stages of this case. As a result, the Court rejects Defendants' attempt to weigh in on how *they* believe HHS's reorganization fulfills all existing statutory mandates and instead determines that Plaintiffs have plausibly alleged that Defendants' actions have violated the Constitution and are otherwise *ultra vires*.

2. <u>Counts IV and V – Violations of the APA (Contrary to Law; Arbitrary and Capricious)</u>

Along with their challenge to Plaintiffs' constitutional claims, Defendants seek dismissal of Plaintiffs' claims asserting that the March 27 Communiqué violated the APA. Specifically, Defendants first argue that Plaintiffs have failed to state a claim for a violation of the APA because they failed to meet the "mandamus-like standard" ostensibly imposed by 5 U.S.C. § 706(1). ECF No. 98 at 49-52. Be that as it may, Plaintiffs' Amended Complaint undoubtedly seeks relief pursuant to § 706(2)—as opposed to § 706(1)—and the Court has already endorsed this theory of relief during the preliminary injunction proceedings. *See* ECF No. 73 at 50 n.13. While Defendants do in fact acknowledge that the Court has previously addressed this issue, they nevertheless reargue it in their motion to dismiss. Notwithstanding their decision to reassert this same argument a second time, Defendants have failed to advance any legitimate basis that would permit the Court to revisit its prior decision on this issue. As a result, the Court rejects it here as well and determines that it will not assess Plaintiffs' APA claims through the lens of § 706(1).

Defendants next argue that the Amended Complaint fails to state a claim that HHS violated the APA by acting arbitrarily and capriciously in its issuance of the March 27 Communiqué. ECF No. 98 at 52-54. In doing so, however, Defendants fail to accept the factual allegations contained in the Amended Complaint as true and instead offer alternative rationales for: (1) why HHS possesses the authority to destroy itself; and (2) why the harms alleged in the Amended Complaint are not as consequential as Plaintiffs allege. *Id.* Although these arguments could have some

14

persuasive force at the summary judgment stage, the Court determines that they are premature at this motion to dismiss stage and fail to demonstrate that Plaintiffs have insufficiently alleged violations of the APA. *See Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 (1st Cir. 2012) (noting that, on a motion to dismiss, the court must "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief"). Here, the Amended Complaint contains sufficient, plausible allegations demonstrating how Defendants' March 27 Communiqué constituted arbitrary and capricious agency action. Specifically, Plaintiffs allege that Defendants failed to provide a reasonable basis in support of dismantling HHS and that they also failed to consider the consequences of their actions. *See* ECF No. 94 ¶¶ 370-74. As a result, the Court rejects Defendants' arguments to the contrary based on their deviation from the applicable standard of review.

Similarly, Defendants next argue that the Court should dismiss Plaintiffs' APA claim seeking redress for HHS's March 27 Communiqué on the basis that it exceeded its statutory authority. ECF No. 98 at 54-56. Specifically, Defendants argue that HHS should receive wide latitude to administer itself and that HHS has made it clear that it will follow its statutory duties. *Id.* As with their opposition to Defendants' arbitrary and capricious claim, these arguments directly contradict the plausible allegations in the Amended Complaint explaining how HHS cannot fulfill its statutory obligations as agency based on the sweeping overhaul that it undertook

15

prior to the Court's intervention. *See Schatz*, 669 F.3d at 55. As a result, the Court rejects this additional basis for dismissal and therefore denies Defendants' Motion to Dismiss.[7]

## IV.  CONCLUSION

Based on the foregoing, the Court concludes that Defendants have not demonstrated their entitlement to dismissal of Plaintiffs' Amended Complaint. As a result, the Court DENIES Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, ECF No. 98.

---

[7] Curiously, the final section of Defendants' memorandum in support of their motion to dismiss provides the Court with a list of subagencies within HHS and an "explanation" of why Plaintiffs have failed to allege claims with respect to the subagencies themselves. ECF No. 98 at 60-67. However, the Court declines Defendants' invitation to make piecemeal rulings concerning the harm stemming from the alleged mismanagement of these subagencies. Plaintiffs have only brought this action against HHS itself and RFK, Jr., ECF No. 94 ¶¶ 32-33, and this action challenges the March 27 Communiqué writ large. Plaintiffs do not seek to contest the daily operations of each subagency and its statutorily mandated duties on an individual basis. Instead, they seek the Court's invalidation of the March 27 Communiqué in an effort to prevent the chaos allegedly taking place as described in the Amended Complaint, throughout all levels of HHS. *See* ECF No. 98 at 104-05 (requesting that the Court "[i]ssue a judicial declaration that the March 27 Directive (as defined above to include the RIF and reorganization) and any implementation is unlawful because it violates the United States Constitution and the Administrative Procedure Act."). The Court therefore rejects Defendants' attempt to seek dismissal on this basis. Similarly, the Court has considered and rejects Defendants' notices of factual developments as an attempt to alter its outcome here based on HHS's decision to partially rescind the RIFs sent out after the immediate aftermath of the March 27 Communiqué. *See* ECF Nos. 111 & 112.

16

IT IS SO ORDERED.

_____

Melissa R. DuBose
United States District Judge


April 7, 2026